UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOROTHA KLUGEL                    )
      Plaintiff,                )
                                )
v.                                )  Civil Action No. 06-1886 (RJL)
                                )
LAWRENCE M. SMALL, et al.         )
      Defendant.                )

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

      Pursuant to LCvR 7, Plaintiff Dorotha Klugel, hereby files her Opposition to the

Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.  In

opposition to this motion, your Plaintiff states as follows:

<u>INTRODUCTION</u>

      Plaintiff Dorotha Klugel (hereinafter "Plaintiff" or "Ms. Klugel") is a former

employee of at the Smithsonian Environmental Research Center (hereinafter "SERC").

The Defendant is Lawrence M. Small, in his capacity as the head of the Smithsonian

Institution (hereinafter "Defendant" or "Agency").  The other Defendants are Tuck Hines

and Jerry Roy.  Ms. Klugel alleges that she was discriminated against and harassed by her

employer and subjected ultimately to a constructive discharge on the basis of gender and

disability in violation of Title VII and the Rehabilitation Act of 1973. (Count I and II).

Ms. Klugel further alleges she was retaliated against for invoking and attempting to

invoke federal anti-discrimination laws (Count III).  She also alleges she was the victim

of Invasion of Privacy and Defamation (Counts IV and V) by Defendants Roy and Hines

who were intent upon driving her from the Agency.  For these latter claims, Ms. Klugel

seeks redress under the Federal Tort Claims Act, and alternatively, against the Defendants Roy and Hines in their personal capacities.

## SUMMARY OF ARGUMENT

This case arises out of claims of discrimination, retaliation and reprisal based on gender and actual and perceived disability by the Smithsonian Institution against Ms. Klugel. Ms. Klugel a longstanding employee of the Smithsonian's Environment Research Centre (SERC) and has filed suit alleging violations of Title VII and the Rehabilitation Act of 1973 and for torts for Invasion of Privacy and Defamation. The latter torts are against the Smithsonian and Defendants Roy and Hines.

The Agency has filed a hybrid Rule 12(b)(6)/Rule 56 Motion seeking to dismiss Ms. Klugel's Complaint on the grounds of failure to administrative exhaust and claims of preclusion because Defendants Roy and Hines properly acted in the scope of his authority and because the government is sovereignly immune.

The Agency is wrong as to the facts and the law as explained below. Most significantly, the issues asserted by the Agency involve issues of disputed material facts that can not be disposed of at this stage of the proceedings.

## STANDARD OF REVIEW

## I.    12(b)(6) MOTION SHOULD BE DENIED AS PLAINTIFF'S PLEADING SETS OUT PROPER THEORIES

There is no proper basis cited for Rule 12(b)(6) motion, since the Agency has yet to answer or deny the allegations set forth in Plaintiff's Complaint, and thus, they are deemed true. Fed. R. Civ. Pro. 8(d). This is significant since "[g]iven the Federal Rules' simplified standard of pleading, [a] court may dismiss a Complaint only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the

allegations" <u>Prince v. Rice</u>, 453 F. Supp. 2d. 14,19 (D.D.C. 2006) <u>citing</u> <u>Swierkicz v. Sorema N.A.</u>, 467 U.S. 69,73 (2002).  Therefore a Court "may not dismiss a Complaint unless it appears to a certainty that the Plaintiff would not be entitled to relief under any theory which might plausibly be suggested by the facts alleged. " <u>Harrison v. U.S. Postal Service</u>, 840 F. 2d 1149,1152 (4th Cir. 1988).  It is clear since the Agency does not dispute Plaintiff's Complaint, the Rule 12(b)(6) motion should be denied.  The Complaint clearly states claims in which Plaintiff would prevail.

## II.    <u>MOTION IS AN IMPROPER RULE 56 SUMMARY JUDGMENT MOTION</u>

Defendants' motion is in reality a premature motion for summary judgment which asks the Court to conduct a mini-trial prior to discovery, and to dismiss the case based on Defendant's jaundiced view of disputed facts.  Presented as a combination Rule 12(b)(6)/Rule 56 motion, the Defendant seeks to view matters outside the pleadings taken into account.  The Defendant's Motion is in function a motion for summary judgment and thus the motion should be seen as a Rule 56 motion.  <u>Neal v. Kelly</u>, 963 F.2d 453, 455-456 (D.C. Cir. 1992).

Substantively, the motion is improper because it relies solely on the Agency's unproven claims as to undisputed facts.  Procedurally, Rule 56 motions contemplate the completion of discovery.  <u>See</u> <u>Koch v. U.S.</u>, 209 F.Supp. 89, 91 (D.D.C. 2002); Fed. R. Civ. Pro., Rule 56(f).  "Courts should consider Rule 56 motion only after 'all parties [are] given [a] reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" <u>Neal</u> at 455-56.  To the extent the motion may be heard at this time, the Plaintiff objects and moves for a continuance to conduct discovery on her allegations

pursuant to Fed R. Civ. Pro., Rule 56(f).  Plaintiff also seeks an answer and grounds of

defense to her claims.  Fed R. Civ. Pro., Rule 8.

### III.    <u>STANDARD OF REVIEW UNDER RULE 56</u>

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss

a complaint only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations.'" <u>Prince v. Rice,</u> 453 F.Supp.2d 14, 19

(D.D.C. 2006) <u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514, 122 S.Ct. 992

(2002) (<u>quoting</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S.Ct. 2229, (1984)).

Generally speaking summary judgment "should be awarded only when the truth is quite

clear." <u>Weiss v. Kay Jewelry Stores, Inc.</u>, 470 F.2d 1259, 1262 (D.C.Cir.1972) (internal

citations omitted).  Summary judgment is improper in this case since the timing of the

Plaintiff's contacts to invoke EEO laws, and the propriety and reasonableness of both the

Agency's and Messers Roy's and Hines' conduct remain disputed issues of material fact.

<u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548,

2552 (1986).  For a Defendant to prevail, "the record must show the movant's right to

[summary judgment] with such clarity as to leave no room for controversy," and must

demonstrate that his opponent "would not be entitled to [prevail] under any discernible

circumstances.'" <u>Williams v. WMATA</u>, 721 F.2d 1412, 1415 (D.C.Cir.1983) <u>quoting</u>

<u>Nat'l Ass'n of Gov't Employees v. Campbell</u>, 593 F.2d 1023, 1027 (D.C.Cir.1978)

(internal citations omitted).  The Defendant does not meet this standard and in fact fails to

address its burden.

### <u>ARGUMENT</u>

With respect to the first part of this Opposition, the Plaintiff disputes the claim

that her invocation of EEO laws was untimely. The second part of the Plaintiff's

Opposition addresses Counts IV and V, which outline the tortious conduct. The Agency

contends that the Plaintiff is unable to pursue these claims against the named Defendants

Roy and Hines because they have put forth a *prima facie case* that they were acting

within the scope of their authority, though neither individual defendant has denied any of

the allegations raised against him.

### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
### ON COUNTS I, II AND III: PLAINTIFF TIMELY INVOKED EEO LAWS

The sole allegation raised by the Agency with respect to the anti-discrimination

counts rests upon an unfounded proposition that the Plaintiff failed to timely initiate the

federal sector process under EEOC regulations. See 29 C.F.R. § 1614 et *seq*. On this

issue the Agency, not the claimant, bears the burden of proving untimely invocation.

Hernandez v. Runyon, App. No. 01972231, 1998 WC 156079*2 (EEOC, Mar. 31, 1998).

Whether or not Ms. Klugel timely initiated the federal sector process, and was "rebuked"

and "ignored" and "intentionally deprived of her access to the federal sector EEO

counseling process" is a central allegation to Ms. Klugel's Complaint and a question of

fact. See ¶ 22.

Under EEOC regulations, federal sector complaints of discrimination must be

brought within 45 days of the discriminatory event through process called "informal

counseling." As the name suggests, "informal counseling" does not envision a strict

requirement that would normally apply to other statute of limitations and "'[t]he [45] day

statute of limitations is not reasonable if agencies and courts do not liberally construe [ ]

exceptions.'" Johnson v. Runyon, 47 F.3d 911, 917 (7th Cir. 1995) citing Myles v.

Schlesinger, 436 F.Supp. 8, 18 (E.D.Pa.1976).

Informal counseling serves a remedial purpose, to allow Agencies to evaluate potential claims before they are formalized.  See generally EEOC Management Directive 110.  Whether or not informal counseling is invoked is determined in light of this remedial purpose, and is determined through evidence of the dialogue between the complainant and the Agency.  Thus, whether a litigant timely sought to notify the Agency of her claims under 42 U.S.C. § 1614.105 requires a fact-based review.

## I.    AGENCY FAILS TO SHOW LACK OF EVIDENCE

The burden on the Agency is affirmative: as "[t]he party seeking summary judgment, [the Agency] has the burden of showing there is no genuine issue of material fact, even on issues where the other party would have the burden of proof at trial, and even if the opponent presents no conflicting evidentiary matter." McKinney v. Dole, 765 F.2d 1129, 1135 (D.C. Cir. 1985) citing Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C.Cir.1980); see also Catrett v. Johns-Manville Corp., 756 F.2d 181, 185 n. 5 (D.C.Cir.1985). This Circuit has repeatedly directed that because it is difficult for a plaintiff to establish proof of discrimination, courts should view summary judgment motions with special caution.  Aka v. Washington Hosp. Ctr., 116 F.3d 876, 879-80 (D.C.Cir. 1997) rev'd on other grounds, 156 F.3d 1284 (D.C. Cir. 1988)(en banc); see also Johnson v. Digital Equip Corp., 836 F.Supp. 14, 18 (D.DC. 1993).  The Agency seeks summary judgment by showing there is *no* evidence that the Plaintiff can cite to support her claim that she timely sought to invoke the EEO process.  For the Agency to meet its "lack of evidence" standard, not only must the Agency meet its own evidentiary burden, but also, the Agency must shown that the evidence proffered by the nonmoving party does not prove the existence of a genuine issue of material fact. See Catrett v.

6

<u>Johns-Manville Corp.</u>, 756 F.2d 181, 184 (D.C.Cir.1985). The Agency fails in both instances.

## II.    <u>NO RECORD FOR COURT TO REVIEW</u>

The Agency produced no statement of undisputed fact as required under LCvR 7(h), and thus, there is no record for the Court to consider.  The Agency's request to dismiss the Plaintiff's claims based on untimliness should be denied as a matter of law because "the [Agency's record] does not contain [*any*] statement from the [Plaintiff], nor does the [A]gency's brief identify *what* the [Plaintiff] allegedly told the agency representative"  during the occasions in which they interacted.  <u>See</u> <u>Welch v. Witt</u>, App. No. 01970015, 1997 WL 792549 (E.E.O.C. Dec. 18, 1997).  The motion is based entirely, then, on mere speculation and the argument of counsel upon this speculation. Rule 56 and the local rules require more:

> "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h).

There is no known exception to this local rule and the Agency has not sought leave from this rule.  The only record before the Court is the Plaintiff's statement of undisputed facts, which was filed in support of the Plaintiff's Opposition to the Defendant's Motion, and the allegations in the Complaint, which for purposes of this motion must be considered *true* because they have not been denied Fed. R. Civ. Pro., Rule 8(d).

Moreover, the Complaint's allegations on the issue of timeliness were not addressed by the Defendant's Motion and remain unresolved:

> "Ms. Klugel's invocation of federal anti-discrimination protection was not only consciously ignored by the Smithsonian, but she was also subject to reprisal and retaliation for seeking such protection."  <u>See</u> ¶ 41 of Complaint;

"On April 18, 2005, Plaintiff invoked the federal sector EEO process. Prior to that point, Ms. Klugel has also otherwise invoked federal anti-discrimination laws when she was subject to the unwarranted scrutiny buy the Agency." See ¶ 42 of Complaint;

"The Agency intentionally refused to commence an examination of the conduct of its agents as required by federal sector EEO law." See ¶ 43 of Complaint;

"As an intended result, no EEO investigation was conducted, and the Plaintiff continued to suffer exacerbated working conductions unabated by the impartial investigation, required under the federal sector EEO process." See ¶ 44 of Complaint.

"The lack of investigation, refusal to accept and process Ms. Klugel's complaints and refusal to engage in mandatory EEO counseling furthermore, constitutes a separate cause of action against not only those agency officials who directed Ms. Klugel in the discriminatory workplace, but who also sought to protect such individuals through meritless legal posturing." See ¶ 45 of Complaint.

These allegations have neither been denied nor addressed by the Defendant's Motion.

Thus, these allegations remain contested, and whether Ms. Klugel initiated the EEO

process within 45 days of a discriminatory event, or was prevented from doing so,

remains disputed fact.

### III.    AGENCY SOLE EXHIBIT IDENTIFIED IN SUPPORT OF ITS CLAIM OF UNTIMELINESS SHOULD BE STRICKEN

The Agency offers only *one* exhibit as evidence in support of its claim that the

Plaintiff did not initiate informal counseling in a timely manner. Def. Ex. A. The

Agency offers *no* testimonial evidence in the form of an affidavit, or otherwise, in

support of the statements contained in Defendant's Exhibit A. Thus, Defendant's Exhibit

A is unreliable and inadmissible. Fed. R. Evid. Rules 801 and 802.

Defendant's Exhibit A purports to be a memorandum from EEO Counselor

Shadella Davis dated on May 15, 2006. The memorandum claims that the date of first

contact was on September 23, 2006. This statement does not make *any* reference to the

April 18, 2005 letter, a copy of which was forwarded to Ms. Davis contemporaneously and in response to the allegations contained in the report. Pl. Ex. 2, 7. The memorandum does not incorporate nor address the Plaintiff's amendment to the complaint which outlined the reasons why the April 18, 2005 letter was the first EEO contact, and why the EEO Counselor who drafted the memorandum, was negligent in addressing the contact.

The Agency's *only* evidence in support of its motion is Defendant's Exhibit A, and this exhibit is inadmissible, incomplete and self-serving. Defendant's Exhibit A states that Ms. Kulgel did not contact the Agency until September 23, 2005, although Ms. Davis can be impeached on such a claim given the contradictory documentary evidence. Pl. Ex. 2,7. Nevertheless, the Agency offers this statement as "proof" of something it knows Ms. Davis would be unable to testify to truthfully. Defendant's Exhibit A is hearsay that cannot be relied upon for the truth of the matter it asserts. It is precisely this reason why hearsay evidence is excluded generally, because it is inherently unreliable. See generally Fed. Rule Evid., Rule 401, 402; Pl. Ex. 2, 7.

Untimeliness may be an affirmative defense to the Plaintiff's anti-discrimination claims but the Defendant must make a showing that it is entitled to a summary disposition on this affirmative defense.[1] Defendant's Exhibit A is the *only* evidence

---

[1] The failure to exhaust administrative remedies, like other affirmative defenses, should be plead, because it requires a showing of proof and is subject to subject to the equities. Though often fatal to EEO claimant, the failure to administrative exhaustion is not a jurisdictional prerequisite, it is more like a statute of limitations subject to equitable modification. This applies equally to the 45-day deadline to seek Equal Employment Opportunity (EEO) counseling in the federal sector context. Kruger v. Principi, 420 F.Supp.2d 896 (N.D. Ill. 2006). It is a notice provision capable of tolling and other considerations. See e.g. Currier v. Radio Free Europe/Radio Liberty Inc., 159 F.3d 1363 (D.C. Cir. 1998). When claiming untimliness, the Agency bears the affirmative duty to show the untimliness. Hernandez v. Runyon, App. No. 01972231, 1998 WC 156079*2 (EEOC, Mar. 31, 1998).

identified in support of the Agency's argument that the Plaintiff is barred for untimliness,

and as discussed above, the exhibit is unreliable and, the hearsay contained within it is

contested.  Under Rule 56, the Agency "has the burden of showing there is no genuine

issue of material fact, even on issues where the other party would have the burden of

proof at trial, and even if the opponent presents no conflicting evidentiary matter."

McKinney v. Dole, 765 F.2d 1129, 1135 (D.C. Cir. 1985) citing Weisberg v. U.S. Dep't

of Justice, 627 F.2d 365, 368 (D.C.Cir.1980); see also Catrett v. Johns-Manville Corp.,

756 F.2d 181, 185 n. 5 (D.C.Cir.1985). The Defendant fails to meet this burden.

## IV.    THE FEDERAL SECTOR'S 45 DAY RULE AND CIRCUMSTANCES OUT OF PLAINTIFF'S CONTROL

EEOC Regulation 29 C.F.R. § 1614.105(a)(2) requires federal sector complaints

of discrimination to be brought to the attention of the Agency's EEO Counselor within 45

days of the matter alleged.  In this case, the last possible date Complainant could have

been subjected to discrimination was on May 12, 2005, the date of her constructive

discharge.  Thus, the latest date of contact to initiate the EEO process was July 2, 2005.

The record of evidence is undisputed that Ms. Klugel sought to invoke the EEO process

alone, through counsel, through the Smithsonian, through the Washington Field Office of

the EEOC, and through the D.C. Human Rights Commission and that these contacts

occurred for the most part on or before July 2, 2005.[2]

### A.    Section 1614.105: "Contact" and "Intent to Being EEO Process"

The Commission and federal courts have held that whether or not the informal

---

[2] See Pl. Ex. 1 at ¶s 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23 ,24, 25 (December 2004 to April 18, 2005); Pl. Ex. 2 (April 18, 2005); Pl. Ex. 3 (July 2, 2005); Pl. Ex. 4 (July 27, 2005).

EEO Counseling process is invoked, for purposes of 29 C.F.R. § 1614.105, is a test of whether the Plaintiff initiated "contact," and furthermore whether her intent was to seek EEO protection through this contact. Whether or not the April 18, 2005 letter and other contacts were sufficient under the circumstances to initiate the EEO process is a matter fact which is based primarily on the intent of the Plaintiff and there is no record disputing the Plaintiff's intent. Pl. Ex. 1.[3]

   If an employee puts the EEOC on notice of claim by contacting agency official logically connected with EEOC process, as the Plaintiff did with the April 18, 2005 letter and prior, that satisfies the EEOC regulation. "The Commission consistently has held that a complainant may satisfy the criterion of EEO Counselor contact by initiating contact *with any agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process.*" Kinan v. Department of Defense, EEOC Request No. 05990249 (May 6, 1999); Floyd v. National Guard Bureau, EEOC Request No. 05890086 (June 22, 1989)."[4] "[A]n employee's contact with a management official to make an allegation of discrimination may be, in effect, a request for EEO counseling and that the management official contacted has an obligation to advise the employee of exactly who to contact about the

---

[3] Whether the Plaintiff alleged discrimination on April 18, 2005, whether she initiated and/or attempted to initiate the EEO process at some other time before July 2, 2005, is in dispute and the only evidence submitted on this issue has been from the Plaintiff and is in her favor. For purposes of a summary judgment motion, the April 18, 2005 letter should be read in such a way so as to be afforded its plain meaning, and the Plaintiff's intent is based only upon her affidavit describing her intent regarding her other attempts to invoke EEO process contradict the sparse "evidence" of the Agency.

[4] Note 1 of Management Directive 110 , 2-1 (November 9, 1999)(emphasis added); Timely invocation of the EEO process requires that the EEO claimant establish "contact" with an agency official logically connected to the EEO process and exhibit intent to seek EEO protection. Allen v. United States Postal Service, EEOC Request No. 05950933 (July 9, 1996).

alleged discrimination." Id. Morgan v. Glickman, App. No. 01971556, 1998 WL 72421 (E.E.O.C. Feb. 13, 1998) citing Kemer v. General Services Administration, EEOC Request No. 05910779 (December 30, 1991). Federal courts have adopted the Commission's standard: "[c]ontact with management officials to make an allegation of discrimination [is] effectively a request for EEO counseling." Briggs v. Henderson, 34 F.Supp.2d 785, 786 (D. Conn. 1999) citing Guerra v. Runyon, App. No. 01944190, 1994 WL 744965 * 2 (E.E.O.C. Nov. 9, 1994).

Robert Gallagher was the administrative head of SERC at the time of the April 18, 2005 contact and was logically connected to the EEO process as the manager of the Edgewater Maryland facility.  Mr. Gallagher was in charge of personnel.  There was no EEO office or attorney at the SERC workplace. Pl. Ex. 8, 9.  The Agency received the April 18, 2005 protest letter, and retaliated against the Plaintiff based upon this letter and her other attempts to secure EEO protection. Pl. Ex. 1.  The Agency also failed to initiate the EEO process and notify the Complainant of her rights as is required under 29 C.F.R. § 1614 et seq. and Management Directive 110.  Pl. Ex.1.  Now in its Motion, the Agency unabashedly seeks to benefit from its own negligent or intentional omissions.

### 1. *Plaintiff Timely Contacted the Agency About her Complaint*

Unlike the "formal complaint" procedures in the private sector, the federal sector context is more fluid and drawn-out.  Invoking informal counseling, as the name suggests, is informal.  There are no rigid mechanics to gauge compliance.  The following facts, however, demonstrate that the Plaintiff complied with the regulation.

### a. *the April 18, 2005 letter to the Agency, Pl. Ex. 2*

Plaintiff, through counsel, sent a letter on April 18, 2005, to the chief

administrative officer of the Agency facility where the Plaintiff worked.  This letter protested the mandatory referral to an Employees Assistance Plan (EAP) for the Plaintiff. The April 18, 2005 letter unequivocally announced the Plaintiff's intent to seek EEO protection.  The April 18, 2005 letter on its face, and in plain unequivocal terms, refers to "federal anti-discrimination laws," "the Rehabilitation Act of 1973" and "the Americans with Disabilities Act" in relation to a mandatory EAP ordered by the Agency.  No response was given to the letter.  The April 18, 2005 letter is a sufficient invocation of the "informal" EEO process because it evidenced intent on the part of the Plaintiff to seek EEO protection.

### b.  *Agency refuses to respond to April 18, 2005 letter*

The Agency declined to respond to the April 18, 2005 letter.  Pl. Ex. 2.  The decision not to reply to the letter is now clearly an attempt to run-out-the clock on the Plaintiff, and was an improper tactical maneuver undertaken by the EEO Office in violation of the Agency's affirmative duty to its employees.  The April 18, 2005 letter, by invoking EEO protection,

> "gave rise to a duty on the Agency's part to direct [Ms. Klugel] to an EEO Counselor within the time limitation. There is no evidence in the record that this duty was fulfilled. Therefore, the complaint was improperly dismissed by the Agency" on the basis of untimeliness. Hernandez v. Runyon, App. No. 01972231, 1998 WL 156079 * 2(E.E.O.C. Mar. 31, 1998); see also Cox v. Cuomo, App. No. 01972354, 1998 WL 455064 (E.E.O.C. July 30, 1998)   ("Appellant claimed that … letters were all filed before she resigned, [and] yet she never received a response from agency officials.")

By law, the Agency is estopped from presenting any argument based on untimeliness because any delay was created intentionally and/or negligently by the Agency's refusal to respond to the Plaintiff's attempts to invoke the EEO process.

*c.   the May 19, 2006 letter*

The Agency did not respond to the Plaintiff's requests to invoke EEO laws. Because the Agency had abandoned the federal sector process, and flouted its duty to respond to the Plaintiff, the Plaintiff resorted to all other known means to carpet-bomb the Agency with notice. She filed a *formal* complaint with the DC Human Rights Commission (Pl. Ex. 2, July 2, 2005), a *formal* complaint with the Washington Field Office of the EEOC (Pl. Ex. 3, July 27 , 2005), and then, a *formal* complaint of discrimination with the Smithsonian's General Counsel (September 23, 2005) because no counseling had been offered and because the Smithsonian refused to acknowledge her prior contacts. See Pl. Ex. 1 at ¶s 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23 ,24, 25 (December 2004 to April 18, 2005). Where an employee filed a formal complaint, a dismissal of the complaint for failure to contact an EEO counselor is improper. Harris v. Dalton, App. No. 01955495, 1996 WL 159311 (E.E.O.C. Apr. 1, 1996)

After the General Counsel received the September 23, 2005 complaint, *and after waiting forty-five days from the date of her termination*, the Smithsonian elected to finally respond to the Plaintiff's counsel by supplying a questionnaire for "informal counseling." See Pl. Ex. 5. The Agency's attempted slight-of-hand did not go unnoticed and the Plaintiff protested this once it became apparent that the Agency sought to fabricate a record of untimeliness through its own delay. On May 19, 2006 the Plaintiff wrote the EEO Counselor disputing the date of initial contact as presented in her report. Def. Ex. A; Pl. Ex. 7. The EEO counselor *refused* to incorporate this protest within the complaint file and the Agency has curiously left out this part of the file in the instant motion. The May 19, 2006 letter stated,

14

"We wish to note that the counseling report incorrectly states the date the incidents leading up to the EEO contact were reported. Ms. Klugel's initial contact with the Agency occurred on April 18, 2005…. Additionally, Ms. Klugel, through counsel, communicated with the Agency regarding her resignation and the fact that it was involuntary in nature at the time Ms. Klugel resigned…. On July 2, 2005 Ms. Klugel filed a Complaint with the DC Human Rights Commission…. **Further, you may consider this letter and its attachments our formal filing of the complaint.** Pl. Ex. 7 (emphasis in original).

In that letter Plaintiff's counsel explains *how* contact was initiated on April 18, 2005 and asked the Agency to accept these issues. The Agency refused and never responded to this letter. This refusal *again* is without authority and is in dereliction of the Smithsonian's duties.[5] The EEO Counselor is not the judge of the merits of an employee's Title VII claims, but the EEO Counselor placed herself in the position as the clearing-house for employee's claims, as well as the facilitator for accepting and processing these claims – a clear conflict of interest. This continued dereliction of duties is the "factual" backdrop for the Agency's motion. See Section IV.B *infra*.

> d.    _Agency refuses to respond or incorporate May 19, 2006 Letter_

The EEO Counselor never responded to the May 19, 2006 letter and did not accept this letter as a part of the administrative record. Pl. Ex. 7. Under 29 C.F.R. § 1614.105(g)

"[t]he Counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint."

Additionally, under 29 C.F.R. § 1614.102(b)(6),

"[e]ach agency shall [e]nsure that full cooperation is provided by all agency employees to EEO Counselors and agency EEO personnel in the processing and resolution of pre-complaint matters and complaints within an Agency."

---

[5] See Hernandez v. Runyon, App. No. 01972231, 1998 WL 156079 * 2(E.E.O.C. Mar. 31, 1998); see also Cox v. Cuomo, App. No. 01972354, 1998 WL 455064 (E.E.O.C. July 30, 1998).

It is clear that the Agency's EEO Counselor decided to accept some complaints, and not

others.  This is, in fact, is likely a patter of misconduct at the Agency, and is consistent

with the Smithsonian's record of misconduct at the time. See Section IV.B *infra*.

### 2. *Plaintiff Demonstrated Intent to Begin EEO process*

"The employee must indicate *only* an intent to pursue the EEO process." Briggs v.

Henderson, 34 F.Supp.2d 785, 786 (D. Conn. 1999). The Agency offers *no evidence* to

contradict the Plaintiff's intent and her repeated contacts with Agency management.  The

Plaintiff's contacts are sufficient to evidence her intent to being the EEO process. Pl. Ex.

1.

### B. Evidence of Agency Bias and Failure to Follow Procedure Estopps Agency from Relying Upon a Claim of Untimliness

The Agency is estopped from relying upon a claim of timeliness by it own

misconduct, and by its repeated failure to provide reasonable access or notice to the

Plaintiff about the federal sector procedures the Agency itself did not comply with.

Simply put, the Agency cannot be rewarded for intentionally ignoring the Plaintiff's pleas

for assistance and EEO protection by claiming it did not listen to her when she made

them.

### 1. *Agency had Abundant Notice of Plaintiff's claims*

The purpose of the invocation of informal counseling is to give the *Agency* an

opportunity to informally resolve employee's complaint without resort to litigation. 29

C.F.R. § 1614.105(a)(1); Johnson v. Glickman, 155 F.Supp.2d 1240, 1246 (D.Kan.

2001). "The forty-five day time limit may be extended if the individual was unaware of

the time limits, if she did not know or could not reasonably have known that

discrimination had occurred, if she was prevented from timely contacting a counselor *by*

*circumstances beyond her control, or for any other reasons considered sufficient by the Commission.*" 29 C.F.R. § 1614.105(a)(2). Here, the Agency does not dispute that it received adequate notice because it received *abundant notice.* <u>See</u> IV., A., 1., 3.

> 2. *Agency failed to respond to Plaintiff' s repeated contacts*

The Agency relies upon an absence of proof to support a finding of an inference that the Plaintiff does not have proof. This is an inverted tautology. The Agency relies upon a record of its own unlawful inaction and silence as a basis for dispositive relief. This silence and inaction is contradicted by the plain and unequivocal evidence of the Plaintiff, who has articulated how and when she attempted to invoke her EEO rights, and how she was rebuked and was met with further retaliation as a result of these attempts. Pl. Ex., 1,2,3,4,5,6. Simply put, the Plaintiff has presented proof of her contacts and intent to invoke the EEO process, and the Defendant's have offered no proof to the contrary, nor can they.

> 3. *Agency Failed to Publicize EEO Counseling to Plaintiff and Her Counsel*

There was no EEO office at the Plaintiff's SERC work-site in Edgewater, Maryland. Pl. Ex. 1, 8. The Smithsonian did not identify an EEO counselor to the Plaintiff or to her counsel after the April 18, 2005 letter and after receiving the subsequent complaints from the Washington Field Office and the D.C. Human Rights Commission. Pl. Ex. 1. Moreover, there is no manner of learning the identity of the EEO Counselor through the Smithsonian's web-site. Pl. Ex. 9.

Under EEOC regulations, each Agency shall,

"[p]ublicize to all employees and post at all times the names, business telephone numbers and business addresses of the EEO Counselors (unless the counseling function is centralized, in which case only the telephone number and address need be publicized and posted, a notice of the time limits and necessity of contacting a

Counselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers." 29 C.F.R. § 1614.102(b)(7).

Since it is not discernable *who* the EEO counselor is at the Smithsonian, (and especially since the Smithsonian also appears unclear about what the functions are for this position, see Section IV., B., 4., *supra; IV., B., 1., infra.*), it is not reasonable for the Plaintiff to have uncovered the identity of the EEO Counselor.  No guidelines were offered to the Plaintiff about the federal sector process and/or how to initiate an EEO complaint after the Agency received notice of the Plaintiff's grievances.  Notwithstanding, these guidelines were flouted by the Smithsonian.

    4.   *Smithsonian's Pattern of Bad Faith and Unfair Dealing in the Informal EEO Counseling Process*

The Smithsonian's refusal to acknowledge or respond to the Plaintiff's repeated unanswered contacts demonstrates genuine bias and forms a part of the Plaintiff's case-in-chief for retaliation (Count III).  The reason for the Smithsonian's inactivity may be either benign, or part of an abusive pattern.  Either explanation estopps the Agency from relying upon a claim of untimeliness.

    a.   *benign neglect*

The Smithsonian only recently became a part of the federal sector EEO process.[6] Perhaps, a misunderstanding about the role of a federal government the Agency's EEO counselor's office, led to the failure in this instance.  The EEO counselor position is unlike a human resources position at a private company, whose job it is frankly to defend

---

[6] The time limit may be extended … if the individual was unaware of the time limits, if she did not know or could not reasonably have known that discrimination had occurred, if she was prevented from timely contacting a counselor by circumstances beyond her control, or for any other reasons considered sufficient by the Commission. 29 C.F.R. § 1614.105(a)(2).

the company from potential claims.  In the federal sector, the EEO counselor is

essentially a clerk of court, who facilitates the processing of discrimination claims.  The

EEO Counselor is not there to dissuade litigants as a gate-keeper or to assist the Agency

in making tactical litigation maneuvers.  The EEO Counselor's Office's negligence in

this matter may have been oversight, but the Smithsonian now seeks to use that error to

defeat a timely and valid claim which it had notice of and is not prejudiced by answering.

We also note that the Smithsonian as an Institution appears to have compromised its own

EEO office.

      b.     *improper "advocacy" by Smithsonian's EEO Office*

The negligence or intentional omissions of the EEO Office of the Smithsonian are

not an isolated occurrence.  In Compton v. Small, EEOC Appeal No. 01A50809 (March

9, 2005) the EEOC found that the Smithsonian EEO Counselor's Office's

misrepresentations and failure to advise a Complainant were the direct cause of her

alleged untimeliness, which the Agency then claimed was a bar to her Complaint.  The

Commission ruled that the Smithsonian could not rely upon an alleged untimeliness

defense, because the Agency's own negligence and/or misconduct created the issue in the

first instance.  It is indeed troubling that the Smithsonian's EEO Office continues to make

the same calculated non-responses that drew scorn from the Commission in Compton.

Aside from the relief sought, this Court should grant the Plaintiff a full opportunity to

conduct discovery on the issue of whether the Agency's EEO Office itself became

compromised, inadvertently or intentionally, so as to become the agent of the

Smithsonian's retaliation and reprisal.  The misconduct identified in Compton occurred at

the same time the Plaintiff's contacts with the Agency went unanswered.  See Pl. Ex. 1 compare Compton v. Small, EEOC Appeal No. 01A50809 (March 9, 2005).

*c.*   *29 C.F.R. § 1614 violated by Agency EEO's Office*

As with Compton, the Smithsonian cannot demand "contact" pursuant to 29 C.F.R. § 1614.105 by claiming ignorance through a feigned record based upon its own failure to *respond* to the Plaintiff.  The Agency's argument for dismissal is based solely upon a rigid and incorrect interpretation of an EEOC regulation and the one-sided facts which resulted from its misconduct.

Section 1614.102(a)(2) requires, "[e]ach agency shall "[p]rovide for the *prompt*, fair and impartial processing of complaints."  Also the EEO office of the Agency is tasked to ensure "that individual complaints are fairly and thoroughly investigated."  29 C.F.R. § 1614.102(c)(5). Not only were the regulations ignored by the Smithsonian, the Agency now seeks to be rewarded for their violation of the most basic fundamentals of the federal sector procedure: the fair, speedy and impartial resolution of claims.  See Management Directive 110. The Agency disputes her claims because it declined to process Ms. Klugel's requests.  In this respect, it must be noted that the Plaintiff has no ability to control whether or not the Agency complies with its own duties regarding *informal* counseling.  There is no interlocutory appeal mechanism available under 29 C.F.R. § 1614 et seq. to compel an Agency to abide by EEOC regulations.

*d.*   *Agency's conduct was "beyond [Plaintiff's] control"*

In this case, Ms. Klugel "was prevented from timely contacting a Counselor by circumstances beyond her control." 29 C.F.R. § 1614.105(a)(2).  The Agency refused to acknowledge her repeated attempts to invoke the EEO process, the EEO Counselor

20

refused her unqualified right to file a complaint and refused to accept her attempts to amend the complaint.  Moreover, the Smithsonian's demonstrated track-record before the Commission indicates that this is likely the result of an improper infection of Agency management prerogative into the EEO counseling functions.[7]  Clearly the unclean hands of the Agency are a factor that requires additional discovery and/or proof, before a summary judgment motion can be sustained.

### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON COUNTS III AND IV: DEFAMATION AND INVASION OF PRIVACY AND CLAIMS AGAINST DEFENDANTS ROY AND HINES INDIVIDUALLY

Plaintiff opposes the objection that the United States should be substituted as the sole Defendant regarding the common law tort claims.  Pleading in the alternative is a hallmark and a central right of notice pleading under the Federal Rules of Civil Procedure.  The Agency seeks to circumvent this standard and cause the Plaintiff to bind her election of remedy before discovery commences.  There is no confusion of the issues or multifariousness presented by the Plaintiff's alternative pleading, and the Agency's decision to substitute itself on behalf of other individual Defendants before discovery commences should not be permitted to render otherwise cognizable claims against Defendants Roy and Hines  moot.

The Plaintiff does not dispute that "[t]he United States still retains its sovereign immunity with respect to defamation." Wilcox v. United States, 509 F.Supp. 381, 387 (D.D.C.1981).  Also, the Plaintiff does not dispute that Defendants Roy and Hines have made a *prima facie* showing that they acted within their scope of authority when they was pried into the irrelevant details of the Plaintiff's sex life.  Def. Ex. F.; see also Koch v.

---

[7] Compton v. Small, EEOC Appeal No. 01A50809 (March 9, 2005).

United States, 209 F. Supp 2d 89, 92 (D.D.C. 2002) at Motion at p. 12, n. 4; compare Pl.

Ex. 1.  However, the Plaintiff does dispute the timing of the motion and the denial of her

due process rights to conduct discovery in this issue.

Forensic fairness and Rule 56(f) should permit the Plaintiff an opportunity to

rebut the litigants' self-serving statement about their conduct, and to determine to what

extent and what unreasonable and malicious efforts Defendants Roy and Hines made in

their "investigation" of the Plaintiff.  This is the burden-shifting framework envisioned

under the law.  Koch v. U.S., 209 F. Supp. 89, 91 (D.D.C. 2002).  To rule now, in favor

of the Agency on this matter, would render individual members of the IG office and

Smithsonian management immune from civil process entirely – including discovery.  The

individual Defendants' *prima facie case*, which consists solely a note from their

employer, should not be permitted to trump the law and rules of procedures which

envision a time for discovery into the motivation and other facts to determine whether or

not the *prima facie* case may be rebutted by facts.  Plaintiff concedes that as the burden

now rests on her.  But the Plaintiff cannot meet that burden if she is not entitled to *any*

*discovery*.

**OPPOSITION TO MOTION TO DISMISS ON COUNT IV AS AGAINST THE
UNITED STATES AS DEFENDANT FOR TORT OF INVASION OF PRIVACY**

The Motion's challenge to the Plaintiff's right to bring a tort of invasion of

privacy against the United States government is a legal argument, and is the only

argument capable of being reviewed under a Rule 12(b)(6) standard cited by the

Defendant's Motion.  Plaintiff disputes the Defendant's facile characterization that

Invasion of Privacy is a tort that is not actionable under the Federal Tort Claims Act

because it is a tort committed by the United States under the color of authority.  See Def. Ex. F.

The FTCA provides a limited waiver of the federal government's sovereign immunity when its employees are negligent within the scope of their employment. Under the FTCA, the government can only be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. S 1346(b).  Title 28 U.S.C. § 2680(h) provides that the government is not liable when any of its agents commits an intentional tort.[8] "To assure itself of subject matter jurisdiction, the court must determine the basis for a plaintiff's FTCA claims." Greene v. Nguyen 2005 WL 3275897 at * 5 (D.D.C. 2005, September 07, 2005).  The tort of invasion of privacy in this context is an actionable claim.

The common law of the District of Columbia recognizes the tort of invasion of privacy.  The tort of invasion of privacy is premised upon the rationale "[t]hat the individual shall have full protection in person and in property is a principle as old as the common law; but it has been necessary from time to time to define anew the exact nature and extent of such protection." Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harvard Law Review 193 (1890).  Invasion of privacy is not one tort, but a

---

[8] "One exception to the FTCA's sovereign immunity waiver is the intentional-torts exception, which provides that the United States retains sovereign immunity for any "claim[s] arising out of assault, battery, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." 28 U.S.C. § 2680(h). Given its "sweeping language," the exception excludes claims that sound in negligence but "aris[e] out of" an intentional tort. Greene v. Nguyen 2005 WL 3275897 at * 5 (D.D.C. 2005, September 07, 2005) citing Kugel v. United States, 947 F.2d 1504, 1507 (D.C.Cir.1991) (quoting United States v. Shearer, 473 U.S. 52, 55, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)).

complex of four, each with distinct elements and describing a separate interest capable of being invaded: (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit.  Wolf v. Regardie, 553 A.2d 1213 (D.C.App.,1989)

Danai v. Canal Square Associates, recognized the types of invasion intrinsic in the tort of intrusion upon seclusion 1) as harassment, 2) peeping through windows or into some other locations in which a plaintiff has chosen to seclude himself, 3) opening personal mail, 4) eavesdropping on private conversations, 5) entering a plaintiff's home without permission or searching his or her belongings, 6) examining a plaintiff's private bank account, or other invasions of that nature.  Danai v. Canal Square Associates, 862 A.2d 395 (D.C. Cir. 2004).   In this case, harassment is the most relevant.

The Restatement, Second of Torts § 652A provides that "one who invades the right to privacy of another is subject to liability for the resulting harm to the interests of the other. The right to privacy is invaded by the unreasonable intrusion upon the seclusion of another[.]" The Restatement position justifies a claim here because the acts and omissions of the Smithsonian were a patent "unreasonable intrusion" of Mr. Klugel's privacy interests.  Privacy rights listed in the Restatement include an unreasonable intrusion upon the seclusion of another and unreasonable publicity given to the other's private life.  § 652A (1977).  Ms. Klugel's case concerns infringements of her right to seclusion and to be free from *unreasonable* intrusion by another, namely, Messers. Roy and Hines.

The tort here concerns the infringement of a single right: the right to seclusion free from <u>unreasonable</u> intrusion by another.   This right is analogous to constitutionally secured rights.  One Court has acknowledged jurisdiction for the tort of intrusion under the FTCA.  <u>Birnbaum v. U.S.</u> 588 F.2d 319 (2nd Cir. 1978).[9]  The <u>Birnbaum</u> holding, in favor of the government, rested on a factual finding that the intrusion into the Plaintiff's privacy was reasonable.  For the Defendant to prevail, '"the record must show the movant's right to [summary judgment] "with such clarity as to leave no room for controversy," and must demonstrate that his opponent "would not be entitled to [prevail] under any discernible circumstances.'" <u>Williams v. WMATA</u>, 721 F.2d 1412, 1415 (D.C.Cir.1983) <u>quoting</u> <u>Nat'l Ass'n of Gov't Employees v. Campbell</u>, 593 F.2d 1023, 1027 (D.C.Cir.1978). The Agency has not offered a *particle* of evidence, much less a sufficient showing of the circumstances, in which it can cloak the conduct alleged to have occurred as "reasonable."

There has been no showing by the Agency that the intrusion by Messers Roy and Hines in this case was "reasonable," or that their conduct was reasonable under the facts and circumstances of the "investigation" of the Plaintiff.   The "reasonableness" of the "investigation" of Ms. Klugel remains an issue of fact and the only evidence before the court on this matter is that it was *unreasonable* Pl. Ex. 1.  These matters are issues of fact which cannot be resolved at this preliminary stage and without an evidentiary basis of some sort, the Defendant's Motion must fail, because there is no factual predicate for the

---

[9] The New York Appellate court observed in <u>Birnbaum v. United States</u>, 588 F.2d 319 (2d Cir. 1978), a case presenting a fact pattern based upon the intrusion tort, concluded that New York would likely recognize a "right to be free from an unreasonable intrusion" action.  558 F.2d at 326.  That case, however, involved the intentional opening of a federal employee's personal mail.

court to rest this conclusion.  The standard under Rule 56 is quite clear.  Because the Agency has identified no evidence as to the Plaintiff's intent Defendant has not met its burden, and the nonmoving party is, "without making any showing, is entitled to a denial of the motion." [10]

## **CONCLUSION**

For the foregoing reasons, the Plaintiff requests that the Defendant's Motion be denied, and alternatively, requests a stay of ruling so that the Plaintiff may conduct discovery into the issues of fact presents in the Defendant's Motion pursuant to Rule 56(f). Pursuant to LCvR 7(f), Plaintiff requests an Oral Hearing on this matter.

                                        Respectfully Submitted,
                                        DOROTHA KLUGEL
                                        By Counsel

WADE & BYRNES, P.C.


/s/ Kevin Byrnes
Kevin Byrnes, Esq.
616 North Washington Street
Alexandria, Virginia 22314
Phone: 703/836-9030
Fax: 703/683-1543
Counsel for Plaintiff

---

[10] McKinney v. Dole, 765 F.2d 1129, 1135 (D.C. Cir. 1985) (emphasis added) citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 161, 90 S.Ct. 1598, 1610 (1970).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was hand-delivered, faxed, emailed and/or mailed postage prepaid, this 12th day of February 2007 to:

Rudolph Contreras
Assistant United States Attorney
Civil Division
555 4th Street, N.W. – Room E4212
Washington DC  20530

Michele N. Johnson
Assistant United States Attorney
Civil Division
555 4th Street, N.W. – Room E4212
Washington DC  20530

/s/ Kevin Byrnes_____ ____
Counsel

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DOROTHA KLUGEL** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-1886 (RJL)** |
| | ) |
| **LAWRENCE M. SMALL, et al.** | ) |
| **Defendant.** | ) |

<u>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**</u>

Pursuant to LCvR 7, Plaintiff Dorotha Klugel hereby files her Statement of

Material Facts Not in Dispute in support of her Opposition to the Defendant's Motion to

Dismiss, or in the Alternative, for Summary Judgment.

1.       Plaintiff Dorotha Klugel (hereinafter "Plaintiff" or "Ms Klugel") is a female, a

member of a protected class pursuant to Title VII of the Civil Rights Act of 1964 and as

someone with a disability (anxiety) and perceived disability, protected under Section 503

of the Rehabilitation Act of 1973, as amended.  Pl. Ex. 1 at ¶ 1.

2.       Ms. Klugel employed at the Smithsonian Environmental Research Center in

Edgewater, Maryland 21037 until May 12, 2005 and during all of the relevant times

herein. Pl. Ex. 1 at ¶ 2.

3.       As a result of acts and omissions taken by the Smithsonian, Ms. Klugel suffered

retaliation for invoking her federal employment rights, sexual harassment, a hostile work

environment based upon perceived disability and her gender, and was subject to disparate

treatment on the basis of her perceived disability and gender. Pl. Ex. 1 at ¶ 3.

4.       The acts and omissions of the Agency that gave rise to harassment, a hostile work

environment, and disparate treatment based upon gender (female) and disability (anxiety

and perceived) included threats of termination for continuing a romantic relationship with

Ms. Klugel's then fiancé, and now husband, Mr. Phillip Yunger. The Agency pried unreasonably and asked questions about her relationship with Mr. Yunger, and also asked her questions regarding her sexual behavior with Mr. Yunger and others, and asked questions about the number of sexual encounters she has had. These questions were done with the intent to cause her to resign from the Smithsonian and to unduly embarrass her and intimidate her. Pl. Ex. 1 at ¶ 3

5.     During this time, and continuing until her last date of employment (May 12, 2005), the Agency removed Ms. Klugel from meaningful assignment and duties, demoted her without cause, denied her medial leave when properly requested, pretextually submitted her to unwarranted supervision, and made unwarranted threats of legal action and criminal prosecution against her. Pl. Ex. 1 at ¶ 5.

6.     The Smithsonian Institution's Inspector General's Office (hereinafter "IG Office"), undertook a campaign of harassment and unreasonable intrusion upon Ms. Klugel's seclusion by prying unjustly into my romantic relationship with her husband Mr. Yunger. Pl. Ex. 1 at ¶ 6.

7.     Specifically, in December 2004, Ms. Klugel was subject of an unreasonable investigation by the Smithsonian's Inspector General's office based on false claims that she had misused official travel to have liaisons with Mr. Yunger. Pl. Ex. 1 at ¶ 7.

8.     On December 14, 2004, a Special Agent of the IG Office, Special Agent Jerry Roy, questioned her about her travel and accommodation arrangements with Mr. Yunger, and asked her how many boyfriends she has. The Agency thereafter continued to make inappropriate and unreasonable inquiries into Ms. Klugel's personal life and her relationship with her husband. Pl. Ex. 1 at ¶ 8.

9.      During December 2004, Special Agent Roy continued to harass Ms. Klugel about Mr. Yunger. Pl. Ex. 1 at ¶ 9.

10.     Between December 14, 2004 and January 12, 2005, Ms. Klugel told her supervisor SERC Director Mark Haddon, that she believed she was been unfairly treated by the IG Investigator because of her gender. Pl. Ex. 1 at ¶ 10.

11.     Mr. Haddon took no action to initiate the EEO process.

12.     At this time, Mr. Haddon told Ms. Klugel that she was "angry, confrontational, and always had to be right." Mr. Haddon suggested to Ms Klugel that she suffered from a personality disorder and suggested she get psychological treatment for this disorder. Mr. Haddon offered Ms. Klugel a book of his on this matter at this meeting. Pl. Ex. 1 at ¶ 11.

13.     On January 12, 2005 Ms. Klugel contacted Ross Simmons, SERC's Director at the time. He stated that no action would be needed because he believed that SERC's Director Haddon's harsh dealing with Ms. Klugel was the result of Mr. Haddon being reprimanded himself. Pl. Ex. 1 at ¶ 12.

14.     Mr. Simmons took no action to initiate the EEO process. No action was undertaken by the Agency at this time to respond to Ms. Klugel's request to initiate the EEO process.

15.     On January 12, 2005, Mr. Simmons told Ms. Klugel that she was "one step away from being a marked employee" because of her protest. Pl. Ex. 1 at ¶ 13.

16.     On January 20, 2005, Ms. Klugel was questioned regarding previously submitted medical leave associated with an automobile accident. Ms. Klugel had a broken arm and

needed to see a doctor. Ms. Klugel was required to present evidence of her personal

medical condition based upon an unreasonable inquiry. Pl. Ex. 1 at ¶ 14.

17.     On February 22, 2005, SERC Administration Officer Tuck Hines questioned Ms.

Klugel about her supposed failure to document leave associate with her short term illness

(broken arm). At this meeting, Ms. Klugel informed Mr Hines that she had or would

retain counsel and that she believed she was being singled-out for her perceived disability

and was being retaliated against and was being discriminated against. Pl. Ex. 1 at ¶ 15.

18.     No action was undertaken by the Agency at this time to respond to Ms. Klugel's

request to initiate the EEO process.

19.     In March of 2005, Ms. Klugel's duties were reduced in retaliation for the above

referenced statements wherein she sought legal authority about whether she needed to

continue to answer unreasonable questions about her personal life and because she

informed Mr. Hines that she would retain counsel to protect her rights and to protect

herself from further discrimination. Pl. Ex. 1 at ¶ 16.

20.     No action was undertaken by the Agency at this time to respond to Ms. Klugel's

request to initiate the EEO process.

21.     On April 12, 2005, Mr. Hines directed Ms. Klugel to a mandatory EAP based

upon a claim that she was suffering from stress and anxiety. When Ms Klugel requested

to have her attorney present to protect her federal rights and privacy interests, she was

threatened again with adverse action. The referral for an EAP was unwarranted and

based on an improper and unfounded belief that Ms Klugel suffers from a mental

impairment, a rumor which was circulated by Smithsonian personnel and management as

a means to place me in a false light within the Smithsonian. Pl. Ex. 1 at ¶ 17.

22.     No action was undertaken by the Agency at this time to respond to Ms. Klugel's request to initiate the EEO process.

23.     On April 12, 2005, as retaliation for invoking Ms. Kluge's right to an attorney, her job assignments were significantly reduced, and assigned to a male co-worker. Pl. Ex. 1 at ¶ 18.

24.     On April 18, 2005, Ms. Klugel's attorney wrote Robert Gallagher, and informed him that my anti-discrimination workplace rights were being violated.  Pl. Ex. 1 at ¶ 19; Pl. Ex. 2.

25.     No action was undertaken by the Agency at this time to respond to Ms. Klugel's request to initiate the EEO process.

26.     There is no EEO office at the SERC and no other person at the SERC to contact regarding antidiscrimination laws. Pl. Ex. 1 at ¶ 20; see also Pl. Ex. 8.

27.     On May 2, 2005, the Smithsonian Institution placed Ms. Klugel on a "progress report" despite no documented performance deficiencies, in retaliation for her contact which sought EEO protection.  Ms. Klugel was denied any EEO protection after her requests, and she continued to be faced with a pervasive, hostile working environment and with further insults to her character, mental impairments or speculation thereon, and my relationship with her husband, Mr. Yunger.  Pl. Ex. 1 at ¶ 21.

28.     Ms. Klugel resigned under threat of further retaliation and termination. Pl. Ex. 1 at ¶ 22.

29.     Ms. Klugel was never contacted by the Smithsonian about an informal counseling. Pl. Ex. 1 at ¶ 23.

30.    On April 18, 2005 Ms. Klugel by counsel contacted the Agency to initiate the EEO process.  Pl. Ex. 2.

31.    On July 2, 2005 Ms. Klugel filed a formal complaint of discrimination with the D.C. Human Rights Commission because the Agency refused to respond to her attempts to invoke the internal EEO policies.  The Agency thereafter received a copy of the complaint and did not respond.  Pl. Ex. 3.

32.    On July 27, 2005, Plaintiff's counsel filed a Complaint of Discrimination with the Washington Field Office.  A copy of this complaint was received by the Agency shortly thereafter and the Agency did no respond.  Pl. Ex. 4.

33.    At the direction of the Washington Field Office of the EEOC, Plaintiff filed a formal complaint of discrimination with the Agency. Pl. Ex. 5.

34.    Frustrated that no one had contacted her, Ms. Kulgel's counsel on September 23, 2005 submitted a "Formal EEO Complaint" with the Agency.  In response, on September 28, 2005, after repeated attempts by my counsel to file a claim and have it acknowledged by the Smithsonian, the Smithsonian, for the first time, acknowledged Ms. Klugel's attempts to seek EEO protection and invoke the EEO process. Pl. Ex. 1 at ¶ 24.

35.    EEO Office of the Agency, for the first time ever, contacted the Plaintiff's counsel about filling out an informal questionnaire.  No indication is given by Agency regarding the previous contacts that went unanswered.  Pl. Ex. 6.

36.    On May 19, 2006, Plaintiff amended her complaint and clarified how the Agency failed to respond to her attempts to invoke the EEO process. Agency failed to amend the complaint and failed to respond to the letter seeking to amend the complaint.  PL. Ex. 7.

37.    The Agency did not respond to letter, and advanced a false claim to the

Commission that it did not receive any indication that the Plaintiff sought to contact the

Agency prior to September 23, 2005.

                                        Respectfully Submitted,
                                        DOROTHA KLUGEL
                                        By Counsel

WADE & BYRNES, P.C.


/s/ Kevin Byrnes
Kevin Byrnes, Esq.
616 North Washington Street
Alexandria, Virginia 22314
Phone: 703/836-9030
Fax: 703/683-1543
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was hand-delivered, faxed, emailed and/or mailed postage prepaid, this 12th day of February 2007 to:

Rudolph Contreras
Assistant United States Attorney
Civil Division
555 4th Street, N.W. – Room E4212
Washington DC  20530

Michele N. Johnson
Assistant United States Attorney
Civil Division
555 4th Street, N.W. – Room E4212
Washington DC  20530

                                        /s/ Kevin Byrnes
                                        Counsel

# Pl. Ex.1

## AFFIDAVIT OF DORATHA KLUGEL

My name is Doratha C. Klugel, and I am a resident of the District of Columbia, I am over 18 years of age and otherwise competent to make this affidavit.

1.      I am a female, a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964 and as someone with a disability (anxiety) and perceived disability, I am protected under Section 503 of the Rehabilitation Act of 1973, as amended.

2.      I was employed at the Smithsonian Environmental Research Center in Edgewater, Maryland 21037 until May 12, 2005 and during all of the relevant times herein.

3.      As a result of acts and omissions taken by the Smithsonian, I suffered retaliation for invoking my federal employment rights, sexual harassment, a hostile work environment based upon perceived disability and my gender, and was subject to disparate treatment on the basis of my perceived disability and gender.

4.      The acts and omissions of the Agency that gave rise to harassment, a hostile work environment, and disparate treatment based upon gender (female) and disability (anxiety and perceived) included threats of termination for continuing a romantic relationship with my then fiancé, and now husband, Mr. Philip Yunger. The Agency pried unreasonably and asked questions about my relationship with Mr. Yunger, and also asked questions regarding my sexual behavior with Mr. Yunger and others, and asked questions about the number of sexual encounters I have had. These questions were done with the intent to cause me to resign from the Smithsonian and to unduly embarrass me and intimidate me.

5.      During this time, and continuing until my last date of employment (May 12, 2005), the Agency also removed me from meaningful assignment and duties, demoted me without cause, denied me medial  leave when properly requested, pretextually submitted

1

me to unwarranted supervision, and made unwarranted threats of legal action and criminal prosecution against me.

6.     The Smithsonian Institution's Inspector General's Office (hereinafter "IG Office"), undertook a campaign of harassment and unreasonable intrusion upon my seclusion by prying unjustly into my romantic relationship with my husband Mr. Yunger.

7.     Specifically, in December 2004, I was subject of an unreasonable investigation by the Smithsonian's Inspector General's office based on false claims that I had misused official travel to have liaisons with Mr. Yunger.

8.     On December 14, 2004, a Special Agent of the IG Office, Special Agent Jerry Roy, questioned me about my travel and accommodation arrangements with Mr. Yunger, and asked me how many boyfriends I have. The Agency thereafter continued to make inappropriate and unreasonable inquiries into my personal life and my relationship with my husband.

9.     During December 2004, Special Agent Jerry Roy continued to harass me about Mr. Yunger.

10.     Between December 14, 2004 and January 12, 2005, I told my supervisor SERC Education Director Mark Haddon, that I believed I was been unfairly treated by the IG Investigator because of my gender.

11.     At this time, Mr. Haddon told me that I was "angry, confrontational, and always had to be right." Mr. Haddon suggested I suffered from a personality disorder and suggested I get psychological treatment for this disorder. Mr. Haddon offered me a book of his on this matter.

2

12. On January 12, 2005 I contacted Ross Simmons, SERC's Director at the time. He stated that no action would be needed because he believed that SERC's Education Director Haddon's harsh dealing with me was the result of Mr. Haddon being reprimanded himself.

13. On January 12, 2005, SERC Director Simmons told me that I was "one step away from being a marked employee" because of my protest.

14. On January 20, 2005, I was questioned regarding previously submitted medical leave associated with an automobile accident. I had a broken arm and needed to see a doctor and take medical leave. I was required to present evidence of my personal medical condition based upon an unreasonable inquiry.

15. On February 22, 2005, SERC Administration Officer Robert Gallagher questioned me about my supposed failure to document leave associate with her short term illness (broken arm). At this meeting, I informed the Mr. Gallagher that I had or would retain counsel and that I believed I was being singled-out for my perceived disability and retaliated against and was being discriminated against.

16. In March of 2005, my duties were reduced in retaliation for the above referenced statements wherein is sought legal authority about whether I needed to continue to answer unreasonable questions about my personal life and because I informed Mr. Gallagher that I would retain counsel to protect my rights and to protect my self from further discrimination.

17. On April 12, 2005, Mr.Gallagher directed me to a mandatory EAP based upon a claim that she is suffering from stress and anxiety. When I requested to have her attorney present to protect her federal rights and privacy interests, I was threatened again with

3

adverse action. The referral for an EAP was unwarranted and based on an improper and unfounded belief that I suffer from a mental impairment, a rumor which was circulated by Smithsonian personnel and management as a means to place me in a false light within the Smithsonian.

18.    On April 12, 2005, as retaliation for invoking my right to an attorney, my job assignments were significantly reduced, and assigned to a male co-worker.

19.    On April 18, 2005, my attorney wrote Robert Gallagher, the Administrative Officer of SERC and informed him that my anti-discrimination workplace rights were being violated.

20.    After attempts were made by me to obtain guidance on where to file a complaint in April, 2005, I was informed that there was no EEO office at the SERC and no contact person at the SERC to notify regarding violation of my rights. I was not referred to another Agency or section of the Smithsonian and was left to believe that the Smithsonian was not covered by the federal processing requirements as they pertain to antidiscrimination complaints.

21.    On May 2, 2005, the Smithsonian Institution placed me on a "progress report" despite no documented performance deficiencies, in retaliation for this contact which sought EEO protection. I was denied any EEO protection after my requests, and I continued to be faced with a pervasive, hostile working environment, and with further insults to her character, mental impairments or speculation thereon, and my relationship with my husband, Mr. Yunger.

22.    I resigned under threat of further retaliation and termination.

4

23.     I was not contacted by the Smithsonian about informal counseling and never

advised of my rights or the procedures under which I could file an EEO complaint.

24.     Frustrated that no one had contacted me, my counsel on September 23, 2005

submitted a "Formal EEO Complaint" with the Agency. In Response, on September 28,

2005, after repeated attempts by my counsel to file a claim and have it acknowledged by

the Smithsonian, the Smithsonian, for the first time, acknowledged my claims and

attempted to initiate the informal counseling session.

IN THE CITY/COUNTY OF:

I Doratha C. Klugel, having read the above, state that the statements contained
herein are true and correct to the best of my knowledge and belief.

_Doratha C. Klugel_

_____
Doratha C. Klugel

SUBSCRIBED AND SWORN to before me, this ___ day of _____, 2005.

_____
Notary Signature

My Commission Expires:  03 - 31 - 08

# Pl. Ex.2



LAW OFFICES

# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1991
Phone: (703) 836-9030
Fax: (703) 683-1543
Web-site: www.WadeandByrnes.com

Gregory M. Wade (VA, DC, MD)
Kevin Byrnes (VA, DC)
Matthew T. Sutter (VA)

E-Mail: gwade@wblawpc.com
E-Mail: kbyrnes@wblawpc.com
E-Mail: msutter@wblawpc.com

April 18, 2005

**By Fax: 443/482-2295 and Mail**
Robert Gallagher
Smithsonian Environmental Research Counsel
647 Wharf Road
Edgewater, MD 20137

Re: Dorotha Klugel

Dear Mr. Gallagher:

As you are aware, this firm represents Ms. Dorotha Klugel on all matters pertaining to her employment. It is our understanding that you have directed her to see the Employees Assistance Plan (EAP) Coordinator to discuss her work concerns and emotional state. A mandated EAP, following an employer raising concerns over the nature of their treatment in the workplace may implicate various anti-discrimination laws. Where that refusal is based on "fears" or on emotional state, the directive to see an EAP counselor triggers issues under the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

Ms. Klugel has no desire to be insubordinate or obstructive, nevertheless, I would remiss if I did not object to a mandatory EAP referral and request your basis for making that referral.

I am also advised that certain comments may have been made regarding Ms. Klugel securing counsel. Please be advised that it is her right to do so and any interference with that right is inappropriate. While I suspect no effort was made to dissuade Ms. Klugel from obtaining representation, I would caution agent officials from even commenting on the retention of counsel in the first instance. On the other hand, if I can assist you in resolving workplace disputes or misunderstandings I stand ready to do so.

To the extent Ms. Klugel does see the EAP counselor, she asserts all privacy rights and confidentiality limitations that arise from that discussion. Please not that we will request on behalf of my client all notes of the substance of any discussion between the EAP counselor and Ms. Klugel.

Again, we would like to know the basis for the referral, as it implicates the matters I have raised above.

Sincerely,

Kevin Byrnes

KB/klc
cc: Dorotha Klugel

# Pl. Ex.3



EXHIBIT
3
ALL-STATE LEGAL®

## COMPLAINT FORM

Information required the in will assist OHR staff to determine the nature and extent of discrimination as defined by the Federal/Local Discrimination Laws. Please complete the following form in its entirety and to the best of your knowledge. This form is subject to review and acceptance by the Office of Human Rights.

### Notice of Non-Discrimination

*In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Official Code Section 2-1401.01 et seq. (Act) the District of Columbia does not discriminate on the bases of actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, familiar status, family responsibilities, matriculation, political affiliation, disability, source of income, or place of residence or business. Sexual harassment is a form of sex discrimination, which is also prohibited by the Act. In addition, harassment based on any of the above-protected categories is also prohibited by the Act. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action.*

| Date: | OHR Docket No.: | EEOC No.: |
|---|---|---|
| Name: Doratha (Dottie) Klugel | | |
| Address: PO Box 29137 | | |
| City/State/Zip: Washington DC 20017 | | |
| Tel # (H): 202-854-3342 | Tel # (W): — | |
| Race: Caucasian | Social Security No.: 213 88 1159 | |
| Sex: F | Date of Birth: 10-30-70 | |

| CONTACT PERSON IF YOU CANNOT BE REACHED: | |
|---|---|
| Name: Kevin Byrnes, Wade + Byrnes PC | |
| Address: 616 North Washington St | |
| City/State/Zip: Alexandria VA 22314 | |
| Tel # (H): — | Tel # (W): 703 836 9030 |

DC Office of Human Rights
441 4th Street, NW, Suite 670N
Washington, DC 20001
202-727-4559  *Fax 202-727-9589
Complaint Form

1

rev 02/04

IF REPRESENTED BY COUNSEL, PLEASE PROVIDE THE FOLLOWING:

Name: Kevin Byrnes    Telephone/Fax: 703 836 9030

Address: _____

*Please note: If you are represented by counsel or retain counsel prior to your scheduled Intake interview, the counsel must either (1) be present with you for the duration of your Intake interview, or (2) withdraw his/her appearance from the interview by submitting a letter to the Office indicating that the interview may take place without his/her representation.

Name of company or organization: (SI)    (SERC)
Smithsonian Institution, Smithsonian Environmental

Name and Title of principal officer (i.e. President, Owner, Human Resources Manager): Research Center
SERC Acting Director - Dr. Tuck Hines

Nature of Business: Research and education

Address: (SERC) 647 Contees Wharf Rd

City/State/Zip: Edgewater MD 21037

Tel #: 443 482 2200    Fax #: 443 482 2380

Do you feel you were discriminated against because of your: (Please check appropriate box and provide detail, if necessary.)

☐ Race _____        ☒ Sex _____
☐ National Origin _____   ☐ Religion _____
☐ Color _____        ☐ Age _____
☒ Disability _____      ☐ Familial Status    ☐ Source of Income
☐ Matriculation  ☒ Marital Status   ☐ Personal Appearance   ☐ Sexual Orientation
☐ Place of Residence or Business   ☐ Political Affiliation   ☐ Family Responsibilities

specifically that I accusation arranging travel with boyfriend, IG agent
wasn't married. asking me how many boyfriends I have, etc

* Please note: Pursuant to the D.C Human Rights Act of 1977, as amended, the "familial status" and "source of income" bases are applicable only when alleging discrimination in housing, public accommodations and educational institutions. The basis of "place of residence or business" is applicable only if alleging discrimination in housing.

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559  *Fax 202-727-9589
Complaint Form

2

rev 02/04

☐ Alleged violation occurred in the District of Columbia.

☐ Alleged violation occurred 365 days or less (6 months or less for D.C. Government Employees).

☐ At least 1 employee. (More than 1 employees to cross file with EEOC).

☐ You have not commenced any other action, civil, criminal, or administrative in any other forum based on the same unlawful discriminatory practice described herein.

| ☑ Employment | ☐ Public Accommodation | ☐ Educational Institution |
|---|---|---|
| | ☐ DC Family and Medical Leave Act | |

☐ Family Medical Leave   ☐ Promotion   ☐ Transfer   ☐ Demotion   ☐ Discharge
☐ Retaliation  ☑ Sexual Harassment  ☑ Hostile Work Environment   ☐ Failure to Hire
☐ Equal Pay   ☐ Terms and Conditions   ☐ Failure to Accommodate  ☑ Discipline
☐ Denial of Service  ☐ Constructive Discharge  ☐ Admission or Admission Fees  ☐ Discounts
☐ Crowd Capacity  ☐ Personal Identification  ☐ Time of day/event  ☐ Restrictions/Rules
☐ Credit/Insurance  ☐ Complimentary Admission/Guest  ☐ Curriculum
☐ Membership Fee/Dues  ☐ Program Participation

Other: Removal of key duties; denial of leave; threats of legal action

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559  Fax: 202-727-9589
Complaint Form

rev 02/04

8

☐   You have filed an informal complaint with an agency assigned EEO Officer/ Counselor.

Counselor's Name: _____

Counselor's Agency: _____

Counselor's Telephone Number: _____

Date Filed: _____   Date of Exit Letter: _____

---

Date of Hire: ~~XXXXXX~~ Feb 2001   Title: ~~XXXXX~~ Distance Learning Coor

Salary at time of hire: $ 34,000 approx

Date of Last Performance Evaluation: Jan 27, 2005

Supervisor/Manager who performed the evaluation: Mark Haddon

Last Performance Evaluation Rating : ☐ Excellent ☐ Good ☐ Fair, ☐Poor "Highly Successful" between "Outstanding" and "Fully Success

Alleged adverse actions taken against you (i.e., written reprimand, suspension, denial of promotion) and the date the action was taken: Interview by IG

Action: ~~XXXXX~~ Special Agent   Date: Dec 14, 2004

Action: _____   Date: _____

☐   Current or ☑ Final position held with Respondent: Distance Learning Coor

Salary: $ 44,000 approx

What reason did Respondent give for your ☐termination or ☐denial of promotion:

☐ Work Performance ☐ Attendance ☐ Insubordination ☐ Gross Misconduct

Date of Termination/Denial of Promotion: _____

---

Date of alleged incident: _____

Service you requested: _____

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559  Fax 202-727-9589
Complaint Form

4

rev 02/04

9

Person who denied your service request

Name: _____ Title: _____

How is this person different from you (___ what is this person's protected basis?):

_____

Have you tried to resolve this matter with the Respondent? If so, please describe with whom you spoke and their response:

_____

_____

_____

_____

Have you been employed with this company for at least one (1) year and have worked at least one thousand (1,000) hours?
☐YES   ☐NO

Date(s) you requested: _____

Reason you requested: _____

Person who denied your request: _____

Title: _____

Others who have requested leave: _____

How are these persons different from you: _____

Have you tried to resolve this matter with Respondent? If so, please describe with whom you spoke and their response:
Name/Title: _____

_____

_____

_____

_____

_____

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4556  *Fax 202-727-9589
Complaint Form

5

rev 02/04

10

Name: Philip Yunger
Title: SERC volunteer
Telephone: 202 445 90
What s/he can attest to: details related/pertaining to IG investigation, retaliatory nature of employer

Name: Amy Erb
Title: STAR Coordinator, SERC
Telephone: 443 482
What s/he can attest to: details related/pertaining to IG investigation, disparity in treatment of me and her

Name: Anna van der Heijden
Title: former SERC employee
Telephone: 202 544 26
What s/he can attest to: retaliatory action taken against me by employer

Name: Diane Wilkins
Title: Teacher Special, Project VIEW
Telephone: 518 857 74
What s/he can attest to: retaliatory actions of employer hindered and/or jeopardized important projects with partner organizations (such as Project VIEW).

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559 *Fax 202-727-9589
Complaint Form

6

rev 02/04

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559  *Fax 202-727-9589
Complaint Form

rev 02/04

12

The D.C. Office of Human Rights provides mediation. Mediation is a process in which an acceptable, impartial third party attempts to assist disputing parties toward a mutual settlement. Two (2) mediators (co-mediators) are assigned to each case as a neutral third party to assist disputants in reaching a mutually acceptable resolution to their problem(s). The mediation process is mandatory and disputing parties design solutions to their own problems.

**Please Note:** In the event the Investigation reveals that your complaint should be dismissed you will receive a letter explaining the reasons for dismissal. Applicable regulations also require the OHR to send a copy of the dismissal notice to the Respondent.

_____                    _____
Complainant's Signature                          Date

I, _____, having read the above, state that the responses contained herein are true and correct to the best of my knowledge and belief.

_____
Signature

SUBSCRIBED AND SWORN to before me this _____ day of _____, of 20___.

_____
Notary Signature

My Commission Expires: _____

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559  *Fax 202-727-9589
Complaint Form

8

rev 02/04

13

☐ Alleged violation occurred in the District of Columbia.

☐ Alleged violation occurred 365 days or less (6 months or less for D.C. Government Employees).

☐ At least 1 employee (More than 15 employees to cross file with EEOC).

☐ Complainant has not commenced any other action, civil, criminal, or administrative in any other forum based on the same unlawful discriminatory practice described herein.

DC Office of Human Rights
441 4th Street, NW, Suite 570N
Washington, DC 20001
202-727-4559  *Fax  202-727-9589
Complaint Form

9

rev 02/04

14

## Complaint
December 2004 to May 200~~5~~

~~Slander~~   Retaliation

December 2004: Someone in Smithsonian Travel Office alleges to IG Office supposed irregularities in my impending travel to an education conference in Hawaii. All aspects of this travel (dates, expenses, and changes of), as well as that of Philip Yunger's, were approved, if not suggested by Supervisor.

Three supervisors told me the allegation against me to the IG was based on someone's dislike of my personality, not on any actual abuse or fraud of the travel system on my part. This was strictly a personal attack to "adjust my attitude." That is why this person purposefully did not go through proper channels to address any concerns about my travel.

### Sexual Harrassment
December 14, 2004: In the course of investigating me, IG Special Agent asks me "how many boyfriends I have" that I try to take along on official travel. Threatens me with arrest and that he will, at some later date, "crack me" like a "tough nut."

### *Hostile Work Environment*
### *Retaliation*
### *Gender Discrimination*
January 12, 2005: SERC Director tells me I am "one step away from being a marked employee," that I have a "bulls-eye" on me.

January 20, 2005: I retain Kevin Byrnes as counsel.

February 22, 2005: SERC Administrative Officer "dings" me for supposed failure to document leave in conjunction with disability (broken arm). [This meeting results from Supervisor telling my insurance company he doesn't read forms his employees put in front of him, so he can't verify my leave.] I inform them I am represented by counsel on employment issues.

March 2005: I am removed from official duties that are critical parts of my job description. Other male colleagues without commensurate experience are enlisted to take over these duties.

April 11, 2005: Leave request is denied.

April 12 and 13, 2005: SERC Administrative Officer *tells* me to attend counseling session through the OHR Employee Assistance Program. Tells me if I do not or insist on having my attorney present, the matter will be referred to SI's Office of Labor Relations.

3

April 12, 2005: Supervisor removes me from critical official duty (a critical element of my performance plan) based on my personality. Replaces me with a male colleague with no experience whatsoever on such a project.

April 25, 2005: Supervisor denies leave request and fabricates policy to support this denial. Later retracts the existence of this policy. Tells me I may no longer even ask to take leave, let alone take leave.

May 2, 2005: I am required to submit progress report to Supervisor (he has never required a progress report of any current employee before). I resign due to denial of leave, inappropriate review of my travel, discrimination based on gender, and the attempt to obstruct my ability to use and consult with counsel.

May 12, 2005: Last day at SERC.

### Result

*not based on actual conduct*

Several supervisors tell me the IG investigation is ~~based on someone's dislike of me, not anything I have done~~. IG Special Agent threatens and sexually harasses me during the investigation. I am told this particular investigation will go no further, but if the IG has any further reason to investigate me, I will be arrested based on *allegations* made against me. ~~This frightens me, especially after I am told people are making allegations against me based on their dislike of my personality.~~

My supervisor fails to document my absences (subsequent to a car accident). I am threatened with ~~disciplinary~~ action based on this; as a result, I notify my employer I have retained legal counsel for all matters concerning my employment. I am frightened the IG will be called in again and I will be arrested. ~~A quick~~ and intense campaign of retaliation begins against me by my employer. I am removed from critical ~~duties in my~~ performance plan, and unqualified ~~men are~~ recruited for these duties. Leave is denied; the ability to ~~apply for leave is denied.~~

I am intimated by how quickly and intensely my work environment turns hostile by my employer. I am not allowed to do my job. I am ~~frightened people who don't like me will notify the IG again, make false allegations,~~ and I will be arrested. This stress aggravates my medically diagnosed gastrointestinal and sleep disorders. The fear and stress caused by this hostile work environment necessitates my immediate resignation.

4

Pl. Ex.4

LAW OFFICES

# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1691
Phone: (703) 836-9030
Fax: (703) 683-0543
Website: www.WadeandByrnes.com

Gregory M. Wade (VA, DC, MD)
Kevin Byrnes (VA, DC)
Matthew F. Soren (VA)

E-Mail: gwade@wblawpc.com
E-Mail: kbyrnes@wblawpc.com
E-Mail: msorten@wblawpc.com

July 27, 2005

By Fax: 202-419-0740 and Mail
Dana Hutter, Director
Equal Employment Opportunity Commission
Washington Field Office
1801 L Street, NW, Suite 100
Washington, D.C. 20507

Re: COMPLAINT OF DISCRIMINATION BASED ON GENDER, PERCEPTION OF
DISABILITY BY DORATHA KLUGEL

DORATHA KLUGEL V. LAWRENCE M. SMALL, SECRETARY SMITHSONIAN
INSTITUTION

Dear Ms. Hutter:

Please be advised that this firm represents Ms. Doratha Klugel with respect to all matters
concerning her employment with the Smithsonian Institute.

Attached is a formal complaint signed by Ms. Klugel and designating myself and this
office as her counsel and representative in this matter.

I would appreciate the opportunity to speak with you regarding this matter. Once you
have reviewed the enclosed, please contact me.

Sincerely,

Kevin Byrnes

KB:smj
Enclosure: as noted
cc: Doratha Klugel

## COMPLAINT OF DISCRIMINATION BASED ON GENDER, PERCEPTION OF DISABILITY BY DORATHA KLUGEL

## DORATHA KLUGEL V. LAWRENCE M. SMALL, SECRETARY SMITHSONIAN INSTITUTION

Complainant, Doratha Klugel, is a 54 year old white female who was formerly employed by the Smithsonian Institution.

The Smithsonian Institution is a quasi federal agency, which by way of a Congressional Act, subject to Title VII of the Civil Rights Act. Workforce Investment Act; Pub. L No. 105-220, 112 Stat 936 § 341 (a). The EEOC has specifically held that the Smithsonian Institute is an Executive Agency within the meaning of Section 717 of Title VII. EEOC Dec. No. 89-5 (EEOC June 27, 1989).

It is unclear whether the Smithsonian is subject to the processing requirements set forth by the EEOC as it applies to federal agencies. See 29 CFR 1614 et. seq. Further, Ms. Klugel was never advised by the Smithsonian as to the filing procedures by the Agency; nor was she requested to or required to attend ERO counseling. It remains our understanding that the proper venue for filing an ERO claim lies with a complaint to the EEOC itself.

Complainant's underlying claims involve sexual discrimination, retaliation and reprisal. Additional claims under the Federal Tort Claims Act for slander and false imprisonment are being filed separately.

These claims arise out of Complainant's treatment by the Smithsonian Environmental Research Center (SERC). Specifically, Complainant alleges she was the subject of discrimination based on sex when she was questioned about her boyfriend escorting her on government sponsored trips, questioned about her sexual behavior, questioned about the number of boyfriends she had and the detained and arrested and prostitution for taking trips with her boyfriend. All such trips were properly requested and approved and Ms. Klugel's supervisor approved the expense for Ms. Klugel's boyfriend, who was also a volunteer with the Smithsonian. In January, 2005, Ms. Klugel's boyfriend accompanied the Smithsonian to Hawaii at his own expense, even though the Smithsonian had previously provided airfare for him on all other approved trips.

Ms. Klugel also contends she was subject to retaliation, reprisal and a hostile work environment following her retention of counsel and submission of a claim of inappropriate treatment based on her gender.

Chronologically, Ms. Klugel faced the following treatment:

December, 2004: Ms. Klugel is subject to an investigation by the Smithsonian's Inspector General's office based on false claims that she is misusing official travel or have liaisons with her boyfriend, now fiancé, Philip Yungar.

December 14, 2004: A Special Agent of the IG's office questions Ms. Klugel on her travel arrangements with Phillip Yunger and asks her how many boyfriends does she have. The Special Agent contends Ms. Klugel has committed fraud and threatens to have her arrested based on her bringing a boyfriend with her on travel. The Agency makes inappropriate inquiries into Ms. Klugel's personal life and her relationship with Mr. Yunger.

During the month of December, Special Agent Jerry Roy of the IG Office harassed Ms. Klugel about her boyfriend.

January 20, 2005, Ms. Klugel is questioned regarding previously approved medical leave associated with an automobile accident that produced medical documentation to substantiate her injuries.

March, 2005, Ms. Klugel has her duties reduced. Specifically SERC relieved her of writing a grant, this duty was given to male employee. As a result, SERC did not receive the grant.

April 12, 2005, SERC the Administrative Offices directs Ms. Klugel to a mandatory EAP based a claim that she is suffering from stress and anxiety. When Ms. Klugel insists on having her attorney present for any such examination, she is threatened with a referral of this matter for possible adverse action. The referral is based on the Smithsonian's improper and unformed belief that Ms. Klugel suffers from a mental impairment, thus implicating The Rehabilitation Act of 1973 and the Americans with Disabilities Act.

April 12, 2005, the day the EAP referral, Ms. Klugel was removed as producer and host of a live satellite broadcast and her duties were given to a male co-worker with no previous experience.

May 2, 2005, Ms. Klugel is placed on a "progress report" despite no documented performance deficiencies. Faced with a pervasive, hostile working environment, she resigns.

I hereby designation Kevin Byrnes and the firm of Wade & Byrnes, P.C to act as my legal counsel on all matters pertaining to my employment.

I authorize Kevin Byrnes to submit requests and receive information related to my employment.

DORATHA KLUGEL

This ___ day of July, 2005.

Pl. Ex.5

LAW OFFICES

# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1915
Phone (703) 836-9030
Fax (703) 836-1543
Web-site: www.WadeandByrnes.com

Gregory M. Wade (Va., DC, MD)                                    E-Mail: gwade@wbiawpc.com
Kevin Byrnes (Va., DC)                                          E-Mail: kbyrnes@wbiawpc.com
Matthew T. Sutter (VA)                                          E-Mail: msutter@wbiawpc.com

September 23, 2005

**By Mail and By Facsimile: (202) 351-4316**
Annette Fancher
Office of General Counsel
Smithsonian Institution Building Room 302
1000 Jefferson Drive, SW
Washington, DC 20560-0012

**By Mail and By Facsimile: (202) 786-2626**
Ms. Chandra Heilman
EEO Counselor
Smithsonian Institution
900 Jefferson Drive, SW, Room 2101
Washington, DC 20560-0425

**By Mail and by Facsimile: 443-482-2380**
Dr. Tuck Hines
Director of Smithsonian Environmental Research Center (SERC)
Smithsonian Institution,
647 Contees Wharf Road
Edgewater, Maryland 21037

Re: Formal EEO Complaint

Dear Ms. Fancher, Mr. Heilman and Ms. Hines:

I have been informed by the Washington Field Office of the Equal Employment Opportunity Commission to contact the Smithsonian directly to initiate Ms. Klugel's formal charge of discrimination attached Pursuant to 29 CFR 1614 and Management Directive 110, please inform me when the investigation of Ms. Klugel's charge is complete.

Sincerely,

Kevin Byrnes

## CHARGE OF DISCRIMINATION

By :              Doratha C. Klugel
First Position:   Distance Learning Coordinator, SERC

## CLAIMANT

1.    Doratha ("Dottie") C. Klugel (hereinafter "Ms. Klugel") resides at address  is P.O.

Box 1853, Edgewater Maryland, 21037. Her telephone number is 202-544-3342.  She is

represented by Kevin Byrnes, Esq., of Wade & Byrnes, P.C., 616 North Washington

Street, Alexandria, Virginia 22314.  Mr. Byrnes may be reached by telephone at 703-836-

9030.

2.    Ms. Klugel files this charge of employment discrimination against the

Smithsonian Institution (hereinafter "the Agency") located at 1000 Jefferson Drive, S.W.,

Washington D.C., 20506-0012, telephone number 202-357-2583,  which is a federal

agency covered by the processes of federal sector employment discrimination claims as

set forth in 29 C.F.R. 1614 pursuant to 29 C.F.R. 1614.103(b)(7).  Specifically, the head

of Ms. Klugel's department at the time of the incidents alleged herein was Dr. Tuck

Hines, Acting Director of SERC, Smithsonian Institution, Smithsonian Environmental

Research Center (SERC) located at 647 Contes Warf Road in Edgewater Maryland

21037; telephone: 443-482-2200.

## GENERAL STATEMENT OF FACTS

3.    Ms. Klugel, as a female, is a member of a protected class pursuant to Title VII of

the Civil Rights Act of 1964 and as someone with a disability (anxiety) and perceived

disability, is protected under Section 508 of the Rehabilitation Act of 1973, as amended.

4.    Ms. Klugel, as a result of acts and omissions taken by her employer, suffered

retaliation for invoking her federal employment rights, sexual harassment, a hostile work

environment based upon perceived disability and gender, and was subject to disparate treatment on the basis of her perceived disability and gender.

5.     The acts and omissions of the Agency that gave rise to harassment, a hostile work environment, and disparate treatment based upon gender (female) and disability (anxiety and perceived) include threats of termination for continuing a romantic relationship with her fiancé, unreasonable questions about her relationship with Mr. Yunger, questions regarding her sexual behavior with Mr. Yunger and others, and questions about the number of sexual encounters she has had. These questions were done with the intent to cause Ms. Klugel to separate herself from employment and to unduly embarrass her and intimidate her. During this time, and continuing until her last date of employment (May 13, 2005), the Agency also removed Ms. Klugel from meaningful assignment and duties, demoted her without cause, denied her leave when properly requested, pretextually subjected Ms. Klugel to unwarranted supervision, and made unwarranted threats of legal action against Ms. Klugel.

6.     The Smithsonian Institution, in coordination with the Smithsonian Institution's Inspector General's Office (hereinafter "IG Office"), undertook a campaign of harassment and unreasonable intrusion upon Ms. Klugel's seclusion by prying unjustly into her romantic relationship with her then-boyfriend, and now fiancé, Mr. Philip Yunger (hereinafter "Mr. Yunger").

## SPECIFIC ALLEGATIONS

7.     Specifically, in December 2004, Ms. Klugel was subject to an investigation by the Smithsonian's Inspector General's office based on false claims of misusing official travel to have liaisons with her boyfriend, now fiancé, Mr. Yunger.

8.    On December 14, 2004, a Special Agent of the IG Office questioned Ms. Klugel on her travel arrangements with Mr. Yunger, and asked her how many boyfriends does she have. The Agency thereafter continued to make inappropriate and unreasonable inquiries into Ms. Klugel's personal life and her relationship with Mr. Yunger.

9.    During December 2004, Special Agent Jerry Roy continued to harass Ms. Klugel about her boyfriend.

10.    On January 12, 2005, SERC Director tells Ms. Klugel that she is "one step away from being a marked employee."

11.    On January 20, 2005, Ms. Klugel was questioned regarding previously submitted medical leave associated with an automobile accident. Ms. Klugel was again required to present evidence of her personal medical condition based upon an unreasonable inquiry.

12.    On February 122, 20-05, SERC Administration Officer questions Ms. Klugel for a supposed failure to document leave associate with her short term illness (broken arm). At this meeting, Ms. Klugel informs SERC Administration Officer that she has retained counsel for employment issues at the workplace.

13.    In March of 2005, Ms. Klugel had her duties reduced in retaliation for her hesitancy to answer unreasonable questions about her personal life.

14.    On April 12, 2005, the Administrative Officer of SERC directed Ms. Klugel to a mandatory EAP based upon a claim that she is suffering from stress and anxiety. When Ms. Klugel expressed to have her attorney present to protect her federal rights and privacy interests, she is threatened again with adverse action. The referral for an EAP was unwarranted and based on an improper and unfounded belief that Ms. Klugel suffers

from a mental impairment, a rumor which was circulated by Smithsonian personnel and management as a means to place Ms. Klugel in a false light.

15.    On April 13, 2005, as retaliation for invoking her Sixth Amendment right to an attorney, Ms. Klugel's job assignments were significantly reduced, and assigned to a male co-worker.

16.    On May 2, 2005, the Smithsonian Institution placed Ms. Klugel on a "progress report" despite no documented performance deficiencies. Faced with a pervasive, hostile working environment, and faced with further insults to her character, mental impairments or speculation thereon, and her relationship with her fiancé, Ms. Klugel resigned under threat of further retaliation and termination.

WITNESSES

17.    For purposes of this charge of employment discrimination, Ms. Klugel hereby identifies the following persons as persons who may have knowledge of the acts and omissions identified in this charge: Amy Bab, SERC Employee, 443-482-2296; Anne van der Heijden, former SERC employee, 182-544-2642; Diane Wilmersen, Teacher Specialist, Project View, 518-857-7418; and Philip Yunger,

SERC Volunteer, 202-445-9014.

I Doretha C. Klugel, having read the above, state that the responses contained herein are true and correct to the best of my knowledge and belief.

_Doretha C. Klugel_
Doretha C. Klugel

SUBSCRIBED AND SWORN to before me, this ___ day of _September 2005._

_Notary Signature_
Notary Signature

My Commission Expires: _____

# Pl. Ex.6



EXHIBIT

6

ALL-STATE LEGAL®

# C O V E R

# FA X

# S  H  E  E  T

To:        Wade & Byrnes P.C.
Fax #:     703-836-9030 / 703·683.1543
Subject:   Request for Counseling
Date:      September 28, 2005
Pages:     5, including this cover sheet.

COMMENTS:
Please have your client complete and return the form to this office. Be sure to include any and all information and documentation that you believe will help your client support her claim. A copy of the form has also been mailed to Ms. Klugel at the address provided.

From the desk of...

Angela A. Roybal
EEO Specialist
Office of Equal Employment and Minority
Affairs

(202) 275-0158
Fax: (202) 275-2055

## SMITHSONIAN INSTITUTION
## OFFICE OF EQUAL EMPLOYMENT AND MINORITY AFFAIRS (OEEMA)

Employees or applicants for employment seeking the counseling services of OEEMA are requested to complete and return this form to 750 Ninth Street, NW, (MRC 0921), Washington, D.C. 20560, (ATTN: Complaints Program) or fax to 202-275-2055. Please complete and return this form within five (5) calendars days.

### 1. Please provide the following information.

Name: _____

Job Title: _____ Series _____ Grade _____

Place of Employment: _____

Work Phone No: _____ Ext _____ Home Phone No: _____

Mailing Address: _____

_____

_____

### 2. Primary Agency Witness (Individual(s) who discriminated)

Name: _____

Address: _____

Telephone Number: _____

Immediate Supervisor: _____

Telephone Number: _____

### 3. Please provide the base(s) on which you believe discriminatory actions were taken. (e.g. "Race: Asian American" or "Sex: Female")

a) [ ] Race (Specify i.e. Asian, African American) _____

b) [ ] Color (Specify i.e. black) _____

c) [ ] National Origin (Specify i.e Columbian) _____

d) [ ] Sex (Specify i.e. Female, Male) _____

e) [ ] Age (Date of Birth i.e. 8/10/52 ) _____

f) [ ] **Disability** (Specify i.e. mental or physical)_____

g) [ ] **Religion** (Specify i.e. Catholic )_____

h) [ ] **Reprisal** (Complete # 7 below)

i) [ ] **Sexual Harassment**

4. If you have an attorney or someone representing you concerning the matters raised in this complaint, please provided the following:

Name:_____

Address:_____

City:_____State_____Zip_____

Telephone Number:_____

5. On what date(s) did the alleged discrimination take place?_____

6. Please explain as clearly as possible: (use additional sheets, if necessary, and attach copies of all supporting materials pertaining to your claim.)

(a) **what happened**( how you were discriminated against and the date of each incident)_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) why you believe it happened

_____

_____

_____

_____

_____

_____

(c) explain who and how other persons were treated differently from you.

_____

_____

_____

_____

_____

7. If you are alleging reprisal for having filed or participated in an EEO complaint, please explain in detail:

(a) who did it

_____

_____

_____

(b) what was done

_____

_____

_____

_____

_____

(c) when was it done

_____

_____

_____

_____

8. What remedy are you seeking for the alleged discrimination?

_____

_____

_____

9. Do you want to remain anonymous?    [ ] No        [ ] Yes

If you want to remain anonymous, please clarify what you would like OEEMA to do.

_____

_____

_____

10. I have received a copy of the Alternative Dispute Resolution (ADR) Brochure and have been offered ADR. My decision is as follows:

   [ ] Yes, I would like to participate in OEEMA's ADR Program. I understand that OEEMA will contact management to request a representative and to offer management an opportunity to participate in ADR. I understand that participation in ADR is voluntary.

   [ ] No, I do not want to participate in OEEMA's ADR Program. I understand that my complaint will proceed through the traditional EEO counseling process.

_____

Signature and Date

# Pl. Ex.7

LAW OFFICES
# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1991
Phone: (703) 836-9030
Fax: (703) 683-1543
Web-site: www.WadeandByrnes.com

Gregory M. Wade (VA, DC, MD)
Kevin Byrnes (VA, DC)
Matthew T. Sutter (VA)

E-Mail: gwade@wblawpc.com
E-Mail: kbyrnes@wblawpc.com
E-Mail: msutter@wblawpc.com

May 19, 2006

By Fax: 202/275-0160 and
Certified Mail/Return Receipt Requested
Shadella Davis, EEO Counselor
Smithsonian Institute
750 9th Street, NE, Suite 8100
Washington, D.C. 20560-0921

Re: Doratha Klugel

Dear Ms. Davis:

We received your Notice of Final Interview in the above referenced matter yesterday.

Before filing our formal complaint, the grounds of which have already been set forth in Exhibits A & B filed with the Agency, we wish to note that the counseling report incorrectly states the date the incidents leading up to the EEO contact were reported.

Ms. Klugel's initial contact with the Agency occurred on April 18, 2005. See Exhibit 1. On that date, Ms. Klugel protested the mandatory EAP referral as a violation of the Rehabilitation Act of 1973.

Additionally, Ms. Klugel, through counsel, communicated with the Agency regarding her resignation and the fact that it was involuntary in nature at the time Ms. Klugel resigned.

The Agency was also requested to produce records from its Inspector General which, if produced, would have shed light on the nature and extent of Ms. Klugel's claims. This occurred on February 22, 2005.

On July 2, 2005, Ms. Klugel filed a complaint with the DC Human Rights Commission. See exhibit 2. The rationale behind this was that the Smithsonian is a private entity and not a federal agency. For this reason the Smithsonian has argued that it is not covered by the Privacy Act or Freedom of Information Act. See Exhibit 3.

After filing her DC Human Rights Act complaint, Ms. Klugel was advised, through counsel, that the Smithsonian utilizes the federal EEO Sector processing set forth at 29 CFR 1614 *et. seq.* On July 27, 2005, see Exhibit 4, Ms. Klugel filed a Formal Discrimination Complaint. On August 18, 2005, the EEOC advised us that the complaint against the Smithsonian should be filed pursuant to 29 CFR 1614.

On September 23, 2005, Ms. Klugel's complaint was filed with the Smithsonian. See Exhibit 5.

On September 28, 2005, your office submitted a form directing us to seek informal counseling. We complied with that request on October 11, 2005.

Given the above, we ask you to correct your May 15, 2006 memorandum. **Further, you may consider this letter and its attachments our formal filing of the complaint.**

Finally, we note the Agency has a number of forms and rights advisements which purport to direct Ms. Klugel on the law and procedure regarding complaint filings. We will utilize those procedures set forth in 29 CFR 1614 and reserve all legal rights accorded by the EEOC.

Sincerely,

Kevin Byrnes

KB/amj
Enclosures: as noted
cc: Doratha Klugel

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X D. King  ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )  C. Date of Delivery<br>5/24/06 |
| 1. Article Addressed to:<br><br>Shadella Davis<br>EEO Counselor<br>Smithsonian Institute<br>750 9th St. NE Suite 8100<br>Washington, D.C. 20560 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540



U.S. Postal
CERTIFIED MAIL™ RE...
(Domestic Mail Only; No Insurance Coverage Pro...
For delivery information visit our website at www.usps.com

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $ 5.84

Sent To  Shadella Davis
Street, Apt. No.;  EEOC
or PO Box No.
City, State, ZIP+4

7004 1160 0000 7726 2112

See Reverse for Instructions

...Form 3800, June 2002

Pl. Ex.8

# S | E | R | C

**Alphabetical Directory**

Smithsonian Environmental Research Center
PO Box 28
647 Contees Wharf Road
Edgewater, Maryland 21037
PHONE: 443-482-2200
FAX: 443-482-2380

**Telephone & Email**

Search SERC web

**Aguilar, Robert**
Fish & Invertebrate
Ecology
Biological Technician
443-482-2438

**Altman, Safra**
Fish & Invertebrate
Ecology
Graduate Fellow

**Ainwine, Ashley**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2478

**Auerbach, Jon**
Information
Technology
Computer Specialist
443-482-2204

**Badger, Christina**        **Baer, James**         **Beck, Kevin**

Photobiology & Solar
Radiation
Intern

Photobiology &
Solar Radiation
IT Management
Specialist
443-482-2496

Facilities
Maintenance
Technician
443-482-2469

**Bell, James Tyler**
Microbial Ecology
Physical Science
Technician
443-482-2469

**Benson, Sam**
Phytoplankton
Ecology Lab
Biological Science
Technician / Dive
Officer / Boat
Captain
443-482-2454

**Boehme, Jennifer**
Marine Invasions
Research Lab
Research Staff

**Boomer, Kathy**
Ecological Modeling
Ecologist
443-482-2310

**Boothe, Danny**
Security
Security Officer
443-482-2298

**Bostick, John**
Security
Security Officer
443-482-2298

Marine & Estuarine
Ecology
Senior Scientist (PI)
443-482-2308

**Brinley, William**
Photobiology &
Solar Radiation
Electronic Engineer
443-482-2490

**Brown, Christopher**
Marine Invasions
Research Lab
Biological Research
Technician
415-435-7128

**Butera, Denise**
Trace Metal
Biogeochemistry
Physical Sciences
Technician
443-482-2272

**Butler, David**
Security
Security Officer
443-482-2298

**Bykowsky, Spencer**
Marine & Estuarine
Ecology
Biological Technician

**Campbell, Nicole**
Administrative
Office Assistant
443-482-2206

**Chamberlain, Anne**
Animal Plant
Interaction
Research Assistant
443-482-2421

**Chapman,
Samantha**
Animal Plant
Interaction
Post Doctoral Fellow

443-482-2225

**Cheak, Sue**

**Clark, David A.**

Marine Invasions
Research Lab
Research Staff
443-482-2253

Facilities
Electrical Technician
443-482-2278

Protistan Ecology
Lab
Microbial Ecologist
443-482-2271

**Cooney, Sean**
Protistan Ecology
Lab
Graduate Student
443-482-2405

**Cutlip, Kimbra**
Administrative
Science Writer
443-482-2325

**Davies, Lori**
Marine & Estuarine
Ecology
Research Staff
443-482-2410

**Day, Derek**
Security
Security Officer
443-482-2298

**Deboy, Dennis**
Facilities
Custodial Inspector
443-482-2458

**Dorsey, Marvin**
Security
Lieutenant
443-482-2442

**Dove, Tony**
Facilities
Horticulturist
443-482-2230

CO2 Lab
Senior Scientist (PI)
443-482-2294

**Duis, James**
Biogeochemistry Lab
Hydrologic Technician

443-482-2276

**Duis, Karla**
Education
Volunteer

**Eissler, Yoanna**
Protistan Ecology
Lab
Post Doctoral
Fellow
443-482-2445

**Ellison, E. Arthur**
Photobiology & Solar
Radiation
Electronic Engineer

**Erickson, John**
CO2 Lab
Plant Biologist
443-482-2293

**Feinberg, Mathew**
Predation Ecology Lab
Research Staff
443-482-2482

**Feller, Rainer**
Animal Plant
Interaction
Technology manager
443-482-2342

Animal Plant
Interaction
Senior Scientist (PI)

443-482-2269

**Fofonoff, Paul**
Marine Invasions
Research Lab
Research Biologist
443-482-2837

**Franklin, Linda**
Photobiology &
Solar Radiation
Research Associate

443-482-2335

**Freestone, Amy**
Benthic Ecology
Post Doctoral Fellow
443-482-2224

**Fulford, Richard**
Marine & Estuarine
Ecology
Research Associate
443-482-2410

**Gallagher, Robert**
Administrative
Administrative Officer
443-482-2336

Phytoplankton
Ecology Lab
Phytoplankton
Ecologist
443-482-2240

**Gibson, William**
Security
Security Officer
443-482-2298

**Gilborn, Amanda C.**
Marine Invasions
Research Lab
Biological Research
Technician

Microbial Ecology
Senior Scientist (PI)
443-482-2496

**Goff, Nancy**
Nutrient Lab
Head Technician
443-482-2419

**Goodhue, Evan**
Facilities
Management Support
Assistant
443-482-2496

**Goodison, Michael**
Fish & Invertebrate
Ecology
Biological
Technician/Boat
Captain
443-482-2431

**Gunsalus, Suzan**
Information
Technology
Director of
Information
Technology
443-482-2220

**Gustafson, Dan**

**Gustavsen, Julia**

**Guy, William**

SERC - People & Contacts

Page 5 of 14

Professional Training

Internship
Coordinator
443-482-2217

Marine Invasions
Research Lab
Research Staff
443-482-2479

Facilities
Maintenance
Technician

Education
Director of Education
443-482-2218

**Haggins, Angela**
Administrative
Librarian
443-482-2273

**Hamill, Hannah
(Lisa)**
Administrative
Safety Officer
443-482-2422

**Hartge, Corliss**
Education
Volunteer
443-482-2336

**Hedrick, Sharyn**
Phytoplankton
Ecology Lab
Phytoplankton
Taxonomist
443-482-2408

**Hines, Jessica**
CO2 Lab
Graduate Student

Administrative / Fish
& Invertebrate
Ecology
Director and Senior
Scientist, Fish &
Invertebrate Ecology
443-482-2200

**Hitchcock, Natasha**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2458

**Holly, Jane**
Education
School Program
Coordinator
443-482-2216

**Howard, Larry**
Security
Security Officer
443-482-2453

**Howlin, Ronald**
Security
Security Officer
443-482-2432

**Hoyle, Milton**
Facilities
HVAC Mechanic
443-482-2474

**Jacinto, Susan**

**Johnson, David**

**Johnson, Eric**

Administrative
Executive Assistant,
Office of the
Director
443-482-2400

CO2 Lab
Site manager
321-861-6995

Fish & Invertebrate
Ecology
Senior Research Staff

443-482-2203

**Jones, Raymond**
Facilities
Constraint
Representative
443-482-3268

Nutrient Lab
Ecologist
443-482-2209

**Keisman, Jeni**
Forest Ecology
Pre Doctoral Fellow
443-482-2496

**Keifer, Jason**
Biogeochemistry
Lab
Post Doctoral Fellow

443-482-2351

**Kerin, Elizabeth**
Microbial Ecology
Ph.D. Student
443-482-2395

**Kittenring, Karin**
Plant Ecology
Post Doctoral Fellow
443-482-2266

**Kim, Hae-Cheol**
Phytoplankton
Ecology Lab
Post Doctoral Fellow

**Koelsch, Brian**
Security
Security Officer
443-482-2208

**Kramer, Margaret**
Fish & Invertebrate
Ecology
Head Biological
Technician
443-482-2434

**Langley, Adam**
Biogeochemistry Lab
Post Doctoral Fellow
443-482-2355

**Larson, Kristen**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2309

**Lawshe, Jaime**
Marine Invasions
Research Lab
Biological Research
Technician
443-455-2425

**Lee, Sunjae**
Protistan Ecology Lab

Volunteer

**Lewis, E. Amy**
Phytoplankton
Ecology Lab
Biological Science
Technician
443-482-2404

**Li, Jiahong**
CO2 Lab
plant physiologist
321-861-3057

**Li, Xuyong**
Ecological Modeling
Ecologist
443-482-2315

**Lion, Kelly**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2426

**Mathews, Dr. Robert**
Trace Metal
Biogeochemistry
Volunteer

**McCann, Linda**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2321

**McCormick, Melissa**
Plant Ecology
Plant Ecologist
443-482-2433

**McDonald, Karen**
Education
Outreach
Coordinator
443-482-2300

**McKinley, Duncan**
Biogeochemistry Lab

Post Doctoral Fellow

**McQueeney, Jim**
Security
Security Officer
443-482-2406

**Meed, Peter**
Facilities
HVAC Technician
443-482-2251

Biogeochemistry Lab

Senior Scientist (PI)
443-482-2346

**Miklas, Joe**
Nutrient Lab
Physical Science
Technician
443-482-2420

**Miller, Dawn**
Forest Ecology
Research Staff
443-482-2558

Marine Invasions
Research Lab
Assistant Director /
Ecologist
Marine Invasions
Research Lab
Program Coordinator
National Ballast
Information
Clearinghouse
443-482-2439

**Minton, Mark**
Marine Invasions
Research Lab
Research Staff
443-482-2307

**Morris, Rebecca**
Marine & Estuarine
Ecology
Head Biological
Technician
443-482-2332

**Morrow, Dale**
Forest Ecology
Volunteer
443-482-2234

**Mullady, Timothy**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2465

**Munguia, Pablo**
Benthic Ecology
Post Doctoral Fellow

443-482-2267

**Murphy, Kate**
Marine Invasions
Research Lab
Marine Ecologist

Photobiology & Solar Radiation

Photobiologist (PI)
443-482-2286

**Noble, Monaca**
Marine Invasions Research
Lab
Research Staff

**O'Neill, Jay**
Plant Ecology
Lab Supervisor
443-482-2417

Benthic Ecology
Senior Scientist (PI)
443-482-2218

Forest Ecology
Senior Scientist (PI)
443-482-2210

**Peresta, Gary**
CO2 Lab
Environmental
Engineer
410-867-3589

**Phillips-Kress,
Jesse**
Photobiology &
Solar Radiation
Research Staff
443-482-2418

**Powell, Tom**
CO2 Lab
Biological Technician

**Pritchard, Jerry**
Facilities
Maintenance

Technician
321-861-3050                    443-482-2259

**Quilez-Badia, Gemma**
Marine Invasions Research
Lab
Post Doctoral Fellow

**Reid, Claudetta**                                      **Riedel, Georgia S.**
Security                                                 Microbial Ecology
Security Officer         Trace Metal                     Physical Science
443-482-2298            Biogeochemistry                  Technician
                        Senior Scientist (PI)            443-482-2264
                        443-482-2499

**Rodgers, Paula**                                       **Russell, Marc**
Fish & Invertebrate     Marine Invasions                 Ecological Modeling
Ecology                 Research Lab                     Ecologist
Graduate Student        Senior Scientist (PI)            443-482-2297
                        443-482-2227

**Ryan, Kelly**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2339

**Sanford, Steve**     **Santagata, Scott**            **Schmitt, Edward**
Facilities              Marine Invasions                 Forest Ecology
Facilities manager      Research Lab                     Volunteer
443-482-2258           Post Doctoral Fellow             443-482-2234
                        443-482-2320

**Seiler, Troy**
CO2 Lab
Biological
Technician
321-861-1595

**Sellner, Kevin**
Phytoplankton
Ecology Lab
Research Associate
410-798-1265

Protistan Ecology
Lab
Plankton Ecologist
443-482-2352

**Sewall, Brent**
Benthic Ecology
Visiting Scientist
443-482-2266

**Sigrist, Marc**
Biogeochemistry Lab
Physical Technician
443-482-2304

**Smith, George**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2411

**Smith, Jim**
Security
Manager
443-482-2236

**Sobrino, Cristina**
Photobiology & Solar
Radiation
Post Doctoral Fellow
443-482-2828

**Sparks, Darrick**
Phytoplankton
Ecology Lab
Biological
Technician
443-457-2455

**Steves, Brian**
Marine Invasions
Research Lab
Biological Research
Technician
707-875-1970

**Stringer, Carin**
Marine Invasions
Research Lab
Administrative
Assistant
443-482-2324

**Suite, Kathleen
(Kathie)**
Administrative
Travel Manager
443-482-2201

**Sullivan, Kathryn**
Benthic Ecology
Research Staff
443-482-2207

**Tevel, Paul**
Facilities
Facilities manager
443-482-2279

**Taylor, William
(Jake)**
Facilities
Maintenance
Technician
443-482-3260

**Togan, Artis**
Facilities
Custodian
443-482-3104

**Tzortziou, Maria**
Photobiology & Solar
Radiation
Post Doctoral Fellow
443-482-2318

Ecological Modeling
Senior Scientist (PI)
443-482-2214

**Werner, Sarah**
Microbial Ecology
Research Staff
443-482-2472

Plant Ecology
Plant Ecologist (PI)
443-482-2226

**Winterbauer, Paul**
Marine Invasions
Research Lab
Biological Research
Technician
443-482-2437

**Young, Jeanine**
Administrative
Financial Administrator
443-482-2202

**Young-Williams, Alicia**
Fish & Invertebrate Ecology
Biological Technician
443-482-2446

**Zabin, Chela**
Marine Invasions Research
Lab
Research Staff
415-435-7128

Pl. Ex.9

 **Smithsonian**



Searched for 'EEO Counselor'                                                                                  Found

Advanced Search

| EEO Counselor | All Smithsonian Sites |
|---|---|

Office of 1996 (2 linkers); Director's Meetings, 1996, Equal Employment Opportunity
(EEO), 1996, ... Box 3 of 6: Latino Affairs, ... for (Ditetos), 1994 & 1996

for her strong personal commitment and involvement in ... Diversity at ... Marion Aye·le
(Equal Opportunity Officer), Ray Gonzalez (EO ... ...... ), and Smithsonian .

Memorandum 690 - Standards of Conduct " Smithsonian Board and Committees "
Smithsonian shuttle service " Telephone information " The ... complaints process ..

| EEO Counselor | All Smithsonian Sites |
|---|---|



Pl. Ex.10

*The U.S. Equal Employment Opportunity Commission*

# Attaining a Model Agency Program: Efficiency

## Table of Contents

MD-715, Essential Element: Efficiency and Monitoring System

Complaint

# INTRODUCTION

The United States Equal Employment Opportunity Commission's (EEOC) Management Directive 715 (MD-715) is the first directive issued by EEOC that identifies the Essential Elements for structuring model equal employment opportunity (EEO) programs. Attainment of a model EEO program provides an agency with the necessary foundation for achieving a discrimination-free work environment.

A discrimination-free work environment, characterized by an atmosphere of inclusion and free and open competition for employment opportunities, is the ultimate goal of MD-715 and the federal government. MD-715 provides a roadmap for creating effective EEO programs for all federal employees as required by Title VII, as amended, 42 U.S.C. § 2000e et seq., and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

There are six Essential Elements for maintaining model Title VII and Rehabilitation Act programs. They are as follows:

- Demonstrated commitment from agency leadership.
- Integration of EEO into the agency's strategic mission.
- Management and program accountability.
- Proactive prevention of unlawful discrimination.
- Efficiency.
- Responsiveness and legal compliance.

Each of these Essential Elements is thoroughly discussed in MD-715. In this report, the Commission focuses on complaint processing aspects of the Essential Element of "Efficiency."

As set forth in greater detail in MD-715, to achieve the Essential Element of Efficiency in complaints processing, agencies must, among other things, maintain a fair and impartial complaint resolution process which is conducted expeditiously with the necessary resources. By recognizing practices which the identified agencies achieve help achieve this goal and sharing with other federal agencies the information learned, EEOC seeks to improve EEO programs throughout the federal government and to further the goal that the federal government becomes a model employer.

# BACKGROUND

In its regulations, EEOC has identified timeliness benchmarks for some operations of the administrative complaints process. These benchmarks require agencies to complete the operations in as short a time as possible: 30 to 90 days to timely conduct and conclude EEO counseling (29 C.F.R. § 1614.105) and 180 days to conduct and conclude an investigation (29 C.F.R. § 1614.108). The acceptance and dismissal of complaints (29 C.F.R. § 1614.107) has no specific regulatory benchmark, but needs to be performed in as short a time frame as possible in order to meet the investigative deadline. Finally, regulations require that final agency actions that do not follow a decision by an administrative judge be issued within 60 days of receiving notification from complainant that s/he is requesting an immediate decision from the agency or from the end of the period for complainant to request a hearing when no response has been received from complainant. [1] 29 C.F.R. § 1614.110(b).

From agency data contained in EEOC's fiscal year 2003 Annual Report on the Federal Workforce, EEOC examined data for 95 agencies[...] to determine the extent to which they demonstrated timeliness in the way they performed complaint processing activities. EEOC also sought to determine if there were any commonalities or differences in how they performed their complaint processing activities based on the size of the agency, and focused the inquiry on size as follows:

    0 - 999 employees (38 agencies)
    1,000 - 9,999 employees (28 agencies)
    10,000 - 19,999 employees (14 agencies)
    20,000 - 99,999 employees (8 agencies)
    100,000 - 250,000 employees (3 agencies)

From this list, EEOC identified agencies of varying sizes who produced results in short time-frames in one or more factors (EEO counseling, dismissals, investigations and final actions)[...] and interviewed the appropriate agency officials to learn how the agencies achieved their success.[...] Based on these interviews, we report our survey results about case management in counseling, dismissals, investigations and final agency actions. Although agencies identified many practices which led to their success in the timely processing of EEO complaints, we learned that one trend was common to all areas of complaints processing for most agencies: vigilant management controls which focused on ensuring progress at each step of the complaints process led to shorter processing times.

# MAINTENANCE OF AN EFFICIENT COMPLAINT RESOLUTION PROCESS

## COUNSELING STAGE

Pursuant to 29 C.F.R. § § 1614.105(d) and (e), an EEO Counselor must conclude counseling within 30 days of the date the aggrieved person contacted the EEO Office to request counseling, unless the aggrieved person agrees to a longer counseling period or chooses ADR. Under no circumstances may counseling extend beyond 90-days.

In measuring success in timely counseling, we looked to whether an agency met the 30- day and 90-day standard, recognizing that the 30-day time frame could be exceeded at the complainant's request, and thus the agency could not always control its ability to meet the 30-day time frame.[...]

- **Performance-Based Accountability and Commitment to Early Resolution of Disputes Produced Results**

    Some agencies asserted they achieved success in completing timely EEO counseling by instituting performance-based accountability measures and receiving a strong commitment from the agency head and senior management to alternative resolution of disputes during the counseling stage. For example, the Smithsonian Institution (Smithsonian), which completed 97% of its counseling within the regulatory time frames in 2003, reported several factors that accounted for its success in this area:

    * First, a timeliness requirement was written into the EEO office performance goals. Office goals required meeting the regulatory 30- and 90-day limits. The counselors reported that this timeliness element helped them stay focused on time-frames.

    * Second, the Secretary embraced early complaint resolution and devoted resources to the early resolution of all employment-based complaints. As a result, Smithsonian reported that it was able to significantly increase the percentage of EEO counseling contacts that did not result in the filing of a formal complaint from 30% in FY 2002 to 50% in FY 2003.

- Third, Smithsonian reported that non-EEO related workplace controversies were diverted to an Ombuds office, which worked cooperatively with the EEO office to resolve these controversies before they resulted in EEO counseling pursuant to 29 C.F.R. § 1614.105.

- Finally, Smithsonian pointed to its efforts to communicate equality of opportunity throughout the agency, noting that it had in place updated diversity and anti-harassment policies signed by the Secretary; introduced the concept of non-discrimination and equality of employment opportunity at all new-employee orientation classes; provided all new supervisors with two days of EEO training; and required all employees to take an anti-harassment course once every three years.

The Department of State (State) consistently reported, from 2001 to 2003, that the percentage of its workforce seeking counseling was below the national average. State attributed this success to its Secretary's commitment to EEO. Dedication of resources to the agency's EEO office provided for early intervention through ADR, and also included an Ombud's program, which allowed non-EEO related workplace controversies to be diverted from the EEO counseling system. State reported that 90% of referrals to the Ombud's office were successfully resolved.

Additional techniques implemented by State to improve counseling included the following:

- State's collateral duty EEO counselors reported to a single manager whose performance plan included a timeliness component. Accordingly, that manager had an incentive to ensure that each counselor made every effort to comply with the statutory requirement.

- State implemented a "three strikes and you're out" policy, where a collateral duty counselor who turned in a tardy or inferior work product three times had his/her collateral duties terminated.

- State required that its volunteer EEO counselors be contributing members of the work force, respected by colleagues and experienced in the program where they worked. This effort was expected to enhance the agency's ability to ensure that competent staff assumed EEO counseling collateral duties.

- **Recognition of Good Performance For Collateral Duty Counselors Can Help Motivate Staff**

The Defense Finance and Accounting Service (DFAS), which uses collateral duty EEO counselors reported that it placed value on recognizing good performance in that function. Because the EEO office had no direct input into the performance appraisals of its collateral duty counselors, it had to devise an alternative way to reward and reinforce the counselors' good performance. DFAS did this by rewarding the counselors with on-the-spot cash awards, letters to supervisors, luncheon events and awards presentations. In 2001, DFAS completed 91% counselings in 90 days; by 2003, DFAS completed 97% of its counselings in 90 days, despite a 44% increase in the number of counselings conducted in 2003.

# DISMISSAL/ACCEPTANCE STAGE

After receipt of the EEO Counselor's report, an agency should either accept or dismiss a complaint within a reasonable amount of time. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, (EEO MD-110), Ch. 5, at 5-1 (Nov. 9, 1999). An investigation following acceptance must be completed within 180 days of the filing of the complaint. Clearly, the sooner the accept/dismiss decision is made, the sooner the investigation can begin.

- **Timeliness Requirements in Staff Performance Plans Produced Quicker Decisions to Accept/Dismiss a Complaint**

Smithsonian, State and Department of Veterans Affairs (VA) reported imposition of time elements in EEO professionals' performance plans, and believed that this kept staff focused on the goal. Smithsonian and State showed dramatic improvements from 2001 to 2003 in timely processing dismissals. In 2001, State dismissed 13 complaints in 344 days; by 2003, State dismissed 35 complaints in 86 days. Similarly, in 2001, Smithsonian dismissed 6 complaints in 346 days, and by 2003, it dismissed 4 complaints in 54 days. The VA's achievements in this area pre-dated 2001. From 2001 to 2003, VA consistently issued the bulk of its dismissal determinations in record time:

> 2001: 569 complaints dismissed in 66 days;
> 2002: 449 complaints dismissed in 54 days;
> 2003: 429 complaints dismissed in 82 days.

In addition, six agencies reported agency goals of accepting/dismissing a complaint within a short time frame:

> 10 days for Department of Transportation (DOT);
> 15 days for National Aeronautics and Space Administration (NASA), Department of the Air Force, and Department of the Army; 30 days for Tennessee Valley Authority (TVA); and 45 days for Department of the Treasury (Treasury).

Each of these agencies dramatically improved processing time for dismissals from 2001 to 2003:

|          | 2001 | | 2002 | | 2003 | |
|----------|------------|-----------|-------------|-----------|-------------|-----------|
|          | # Dismissals | Avg. Days | # Dismissals | Avg. Days | # Dismissals | Avg. Days |
| DOT      | 254 | 218 | 148 | 131 | 106 | 167 |
| NASA     | 4   | 356 | 11  | 221 | 17  | 200 |
| Air Force| 121 | 270 | 96  | 224 | 77  | 136 |
| Army     | 156 | 205 | 251 | 122 | 145 | 74  |
| TVA      | 7   | 383 | 7   | 225 | 15  | 154 |
| Treasury | 377 | 190 | 337 | 127 | 272 | 120 |

- **Emphasis on Legal Sufficiency of Decision Enhanced Affirmance Rate**

State reported two major reasons for a greatly improved processing time in accepting/dismissing complaints. In addition to imposing time elements in its EEO professionals' performance plans, this agency has full-time attorneys among its staff in the civil rights office to review all formal complaints for acceptance/dismissal and to write all dismissal decisions, and it provided EEOC case law in its analyses to support its dismissal decisions. As a result of these two actions, the agency saw a decrease in EEOC reversals of dismissals on appeal, from a 56% reversal rate in 1999 to 37% in 2003. State believes that its provision of sound legal advice enhanced its ability to produce an accurate product.

## INVESTIGATION STAGE

Long investigative delays may impede the primary goal of the investigative process: to gather sufficient evidence to permit a determination of whether unlawful discrimination occurred. Such delays can also result in stale witness memories or lost documents.

EEOC regulation 29 C.F.R. § 1614.108(e)(2) requires agencies to conduct an investigation and issue a report to the complainant within 180 days of the filing of the complaint unless the parties agree in

writing to extend the time period. If the parties agree to an extension, they can extend the investigative period by not more than an additional 90 days, to a maximum of 270 days to complete the investigation.

An amended or consolidated complaint can also add 180 days onto the processing of a complaint. In no event can an investigation continue beyond 360 days. 29 C.F.R. § 1614.106(e)(2).

The agency may also extend the time period or any period of extension for up to 30 days to sanitize a complaint file containing information classified pursuant to Executive Order No. 12356, or successor orders, in the interest of national defense or foreign policy. 29 C.F.R. § 1614.108(a).

The agencies in this survey largely used contract investigators. The 2003 Annual Report shows that 12 agencies conducted no investigations; 56 agencies used only contract investigators; 27 agencies (including the U.S. Postal Service) either investigated with their own staff or used a combination of in-house staff and contractors.

EEOC has identified several factors which it has found impact the quality and timeliness of EEO investigations. For each of the agencies identified below, investigations were either sharply reduced in average time from 2001 to 2003, or consistently averaged fewer than 180 days from 2001 – 2003:

* **Timely Contract Procurement Hastened the Start of the Investigation**

   A common problem which resulted in extended investigation times involved delays in the procurement stage for contract investigators. Among those agencies with success in conducting timely investigations, some the Federal Communications Commission (FCC), General Services Administration (GSA), the National Gallery of Art (NGA) and Smithsonian awarded contracts on a case-by-case basis, and usually within five days of acceptance of the complaint. The Department of Health and Human Services (HHS) and TVA benefited from executing blanket purchase agreements (one agreement provided for many investigations at a set rate).

* **Short Time Frames in Contracts Lead to Quicker Investigations**

   Ten agencies DFAS, FCC, GSA, HHS, National Archives and Records Administration (NARA), NASA, NGA, Smithsonian, State and TVA reported that their contract terms required a short turn-around for delivery of the report of investigation, ranging from 45 days to 120 days of assignment receipt.

   Additionally, complaints managers at NARA, Smithsonian, State and TVA had timeliness elements included in their performance plans for delivery of the completed investigation.

* **Agency Complaints Manager Involvement Essential to Vendor Performance**

   Some agencies (FCC, GSA, NGA, and State) laid the groundwork for the investigator by obtaining documents and calling employees to notify them that they would be interviewed by the investigator. Others (GSA and Smithsonian) required weekly status reports from investigators, including submission of an investigative plan and all investigative questions, along with a list of witness contacts and document requests. Coordination of these activities by the complaints manager, and constant monitoring of the vendor's progress helped the agency to produce a timely, quality work product.

* **Incentives/Penalties Motivate Vendors to Perform**

   Some agencies reported including penalty provisions in contract terms providing that the vendor would not earn as much if the investigation was untimely. One agency (HHS) applied an

"Interruption schedule" to contracts, to account for complainants who would amend or withdraw their complaints.

This "Interruption schedule" allowed the agency to account for the newly created or suddenly diminished work for the investigator without executing another contract. If a complaint was amended before the investigator completed the complainant's affidavit, the agency would pay an additional 15% on the contract, to account for the additional work the investigator would have to do to collect information on the amended claim. If a complaint was amended at a point beyond completion of the complainant's affidavit, the agency would pay an additional 60% to account for the additional work, and if the investigation was completed, but not yet copied or delivered, the agency would pay an additional 90% to account for the additional work to investigate the amended claim.

A similar schedule applied to withdrawals: If a complainant withdrew a complaint after the investigator completed the complainant's affidavit but before other work was completed, the agency would pay 15% of the contract. If the complainant withdrew the complaint beyond completion of the complainant's affidavit but before completion of the investigation, the agency paid 60% of the contract, and if the complainant withdrew the complaint after the investigation was completed but before copying and delivery was completed, the agency paid 90% of the contract.

- **Fees-for-Services Motivate Better Behavior By Program Managers**

A number of agencies (DFAS, GSA, NARA and Smithsonian) had a fee-for-service arrangement with the program offices from which the complaint arose. This arrangement allowed the EEO office to charge the cost of the investigation back to the program office. Three agencies (GSA, NARA, and Smithsonian) reported that, in their experience, this arrangement motivated the managers in the various program offices to think about their actions before they acted, and provided them an incentive to resolve matters early in the process before costs increased. State reported that while the EEO office absorbed the cost of the investigation, it charged the cost of a settlement or award to the program office where the complaint arose. By doing so, managers were able to see that settlement costs were low when compared with costs awarded by EEOC; this provided additional incentive for settlement.

- **Timely Legal Sufficiency Reviews Help Ensure A Quality Work Product**

All agencies reported that they reviewed investigations for the quality of the work product. FCC, GSA, HHS, NARA, NGA, Smithsonian, and TVA expected a 5-day turn-around on a rejected work product. DFAS and NASA gave the investigator up to 15 days to return a completed work product.

HHS did not pay the invoice until the investigation was completed satisfactorily, and State had its own legal staff in the EEO office to review, among other things, the quality of contractor work-product. GSA worked with an individual from its Office of General Counsel who was dedicated to the EEO Office as a "firewall counsel." This individual provided advice to GSA's EEO Office independent of the Office of General Counsel, and did not take an advocacy position on behalf of the agency.

## FINAL AGENCY ACTIONS

For a complaint which has not been amended, where the parties do not participate in alternative dispute resolution (ADR), and which does not go to hearing, the shortest amount of time for processing to final agency action would be approximately 270 days:

180 days for investigation,

30 days to determine if a complainant wants a hearing, and
60 days to issue a final agency decision.

- **Short Time Frames Produced Quick Results**

  Agencies in our survey which produced timely final decisions reported that they used a combination of in-house staff and contract workers to produce the final decisions. For example, DoDEA (15 final decisions issued within an average of 193 days of the regulatory trigger) divided the writing work between employees and contractors, and had check-writing authority for amounts under $2500. As a result, DoDEA was able to quickly contract with a vendor when necessary. The terms of the contract were 30 days.

- **One-Stop Shopping For Investigations and Final Decisions Produced Quick Results**

  FCC (16 final decisions issued within an average of 82 days of the regulatory trigger) reported that the same contractor who investigated the complaint also wrote a draft of the final decision. FCC routinely paid investigators an extra 16% of the contract to draft a final decision which was then delivered along with the report of investigation. If the complaint requested a hearing, the final decision was not used, but if the complainant requested a final decision, then after review and consideration by appropriate staff within the agency, the agency could issue the final decision quickly.

- **Eliminating Backlog Key to Improved Average Processing Times**

  Several agencies reported that their success in eliminating the backlog was key to producing timely decisions. These agencies focused their resources on backlog projects, and once the very oldest cases were cleared from the docket, average processing times reduced dramatically.

## EFFECTIVE COMPLAINTS TRACKING AND MONITORING SYSTEM

Under 29 C.F.R. § 1614.602(a), federal agencies have an obligation to report to EEOC information concerning pre-complaint counseling and the status, processing, and disposition of complaints at such times and in such manner as EEOC prescribes. The Commission has mandated that agencies report to the EEOC all data relating to the EEO process in their Annual Federal Equal Employment Opportunity Statistical Report of Discrimination Complaints (the "462 Report").

As such, it is essential that agencies have a case tracking system to capture data for the 462 Report. Moreover, EEOC has found that an accurate, accessible, verifiable and comprehensive case tracking system is essential for managing an effective and timely program complaint processing program.

Development of internal time frames for each step of the complaint process and regular monitoring of them for compliance reduces complaint processing times. The lack of an effective and accurate data collection system increases complaint processing time, impairs management's ability to identify and correct deficiencies in complaint processing, and obscures the actual work load of the EEO staff.

Almost all agencies reviewed in this study used a complaints tracking system. Some used elementary data bases such as spread sheets (DoDEA, FCC, NGA, TVA, and Treasury), one built its own data bases (Smithsonian), and some contracted with vendors to produce custom EEO complaint tracking systems with pull-down menus (Air Force, Army, DFAS, NARA, and NASA).

Several were in the process of acquiring more efficient tracking systems (Air Force, DFAS, NASA, DOT, and Treasury). Almost all agencies reported that constant monitoring of the tracking system helped their complaints managers follow the progress of a complaint and monitor for problems. No agency interviewed for this study reported sufficient satisfaction with a complaints tracking system that we

could recommend its use here.

An agency should regularly analyze the information captured by its complaint tracking system to determine where processing times exceed the applicable regulatory time frame. Such an analysis will enable the agency to effectively target and utilize its resources, hold relevant management officials accountable for their performance, and reduce complaint processing times.

# CONCLUSION

Each of the agencies reviewed in this study established management controls over complaints processing. The tools used by agencies were:

> (1) timeliness controls (timeliness elements in performance plans, short time frames, incentives, and penalties in contracts, inclusion of timeliness elements in office goals, use of blanket purchase agreements and interruption schedule agreements to eliminate the need to execute amended contracts);

> (2) creative management (employment of early intervention resolution techniques, rewards for employees who performed well and production of final agency action simultaneously with report of investigation); and

> (3) quality controls (report of investigation sufficiency reviews completed immediately upon receipt of report of investigation);

Additionally, use of an efficient complaints monitoring and tracking system helped the agencies follow cases and identify problems as they arose. Use of these tools appears to greatly enhance an agency's ability to produce a timely, quality work product, and improve the likelihood that the agency will meet its goal of maintaining an efficient, fair and impartial complaint resolution process.

Interestingly, this study revealed that the size of the agency did not make a difference in how, or whether, an agency achieved success. Rather, the imposition of management controls was essential for effective performance for all agencies of all sizes.

## Footnotes

1. Additionally, a final decision should be issued within 60 days of notice from an administrative judge that a complainant has withdrawn a hearing request. Id.

2. The United States Postal Service was not considered in this study.

3. It should be noted that some of the agencies selected marginally exceeded regulatory time-frames, but the volume of their complaint processing suggested that they be consulted about their practices.

4. Success in one or more areas did not necessarily result in overall success in achieving an efficient complaint processing system. For instance, an agency may have excelled in producing a large number of investigations in a short time frame, but may not have been timely in conducting EEO counselings, dismissing complaints or writing final decisions.

5. Data prior to 2004 did not delineate counselings by those in ADR or those for which extensions were granted by the complainant so it is difficult to be completely certain whether an agency was actually timely if counselings continued beyond 30 days. Therefore, in assessing agencies, we looked at both

the 30-day and the 90-day maximum to determine which agencies to examine in more depth.

6.

|  | % Workforce Seeking Counseling | | |
|---|---|---|---|
|  | 2001 | 2002 | 2003 |
| State | 1.3 | 1.2 | 0.8 |
| National Workforce | 1.74 | 1.63 | 1.41 |

7. At the Smithsonian, the complaints manager must accept or dismiss a claim within 30 days; at the State Department, the legal staff in the EEO Office must do so within 10 days; and at the VA, the intake specialist will accept or dismiss a claim within 45 days.

8. Generally, an investigation of a mixed case complaint conducted pursuant to 29 C.F.R. § 1614.302 must be completed before the 120-day time period expires for the agency to issue its final decision.

*This page was last modified on December 1, 2004.*


Return to Home Page