UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DORATHA KLUGEL,

    Plaintiff,

  v.

LAWRENCE M. SMALL, et al.,

    Defendants.

Civil Action 06-01886 (HHK)

**MEMORANDUM OPINION AND ORDER**

Doratha Klugel, a former employee of the Smithsonian Institute ("Smithsonian"), brings this action against Lawrence M. Small, in his official capacity as the Secretary of the Smithsonian, alleging claims of sex and disability discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. § 720 *et seq*. ("Rehabilitation Act"), as well as tort causes of action for invasion of privacy and defamation. Klugel also asserts the tort causes of action against two Smithsonian employees. Before the court is defendants' motion to dismiss or, in the alternative, for summary judgment, and to substitute the United States as the sole defendant for Klugel's tort claims [# 9]. Upon consideration of the motion and the record of this case, the court grants the motion in part and denies it in part.

**I. BACKGROUND**

Klugel was employed at the Smithsonian's Education Research Center ("Research Center") as an education specialist until she resigned on May 12, 2005. According to Klugel,

beginning in December 2004, she experienced several incidents of discrimination, retaliation, and other wrongful conduct on her job that created a work environment so hostile that she was forced to resign.

It appears that Klugel's difficulties at the Smithsonian began in December 2004 when she became the subject of an investigation by the Smithsonian Inspector General regarding allegations that she improperly used official travel to have liaisons with her husband. According to Klugel, the allegations were false and during the course of the investigation, Gerald Roy, a Special Agent with the Smithsonian's Office of the Inspector, and Tuck Hines, the Acting Director of the Research Center, made comments and asked her questions about her sexuality that were defamatory, invaded her privacy, and constituted sex discrimination.

Sometime between December 14, 2004 and January 12, 2005, Klugel told her supervisor, Mark Haddon, that she had been subjected to sex discrimination during the Inspector General's investigation. Haddon did not respond appropriately to what Klugel told him and Klugel reported her conversation with Haddon to Ross Simmons, a Director of the Research Center, who allegedly told her that no action would be necessary on her discrimination complaint and that she was "one step away from being a marked employee" due to her protest.

On January 20, 2005 and February 22, 2005, Klugel was asked about medical leave she had taken due to a broken arm.[1] According to Klugel, these questions were improper because

---

[1] Klugel does not specify who asked her questions on January 20, 2005. *See* Klugel Aff. ¶ 14. She also submits contradictory statements about who questioned her on February 22, 2005. In her affidavit, she attests that Robert Gallagher, a Research Center Administration officer, questioned her. *Id.* ¶ 15. However, in her Stmt. of Mat. Facts Not in Dispute, Klugel states that Hines questioned her. *Id.* ¶ 17. Because the affidavit is a sworn document, the court relies on Klugel's statement that her report on February 22 was to Gallagher.

they were motivated by a perception that she was disabled. On February 22, 2005 she informed Robert Gallagher, a Research Center Administration officer, that she believed the inquiries into her medical leave constituted disability discrimination and that she had retained counsel to protect her rights. Thereafter, in March and April 2005, the Smithsonian reduced her job duties. Klugel charges that these reductions in her job duties constituted retaliation for her discrimination complaints.

On April 12, 2005, Klugel was referred to a mandatory Employee Assistance Program ("EAP") because, Klugel charges, there was a rumor that she suffered from a mental impairment. According to Klugel, the referral constituted disability discrimination, and on April 18, 2005, her attorney wrote to Gallagher objecting to the referral. Thereafter, on May 2, 2005, Klugel was placed on a "progress report." Klugel charges that this action was retaliatory and not justified by any deficiency in the performance of her work.

Klugel's complaint sets forth the following causes of action: (1) the Smithsonian violated Title VII by subjecting her to disparate treatment based on sex and creating a hostile work environment during the December 2004 Inspector General investigation; (2) the Smithsonian violated the Rehabilitation Act by asking Ms. Klugel questions about her medical leave; (3) the Smithsonian violated the Rehabilitation Act by referring her to an EAP; (4) the Smithsonian violated Title VII and the Rehabilitation Act by retaliating against her for complaining about discrimination; (5) the Smithsonian violated Title VII and the Rehabilitation Act by constructively discharging her on May 12, 2005; (6) the Smithsonian and the individual defendants invaded her privacy during the December 2004 Inspector General investigation by asking her unreasonable questions about her husband and her sexuality; and (7) the Smithsonian

and the individual defendants defamed her by making statements about her husband, sexuality, and mental condition.[2]

## II. ANALYSIS

Defendants move to dismiss Klugel's Title VII and Rehabilitation Act claims or, in the alternative, for summary judgment on the grounds that she did not exhaust her administrative remedies. With respect to Klugel's tort claims, defendants move to substitute the United States as the sole defendant and then to dismiss those claims because the United Sates is shielded from suit by its sovereign immunity.

### A.    Legal Standards

The parties have submitted matters outside the pleadings that are not excluded by the court. Therefore, the court shall treat the motion as one for summary judgment under Fed. R. Civ. P. 56. *Carroll v. England,* 321 F.Supp. 2d 58, 67 n.4 (D.D.C. 2004); *Polk v. Dist. of Columbia,* 121 F.Supp. 2d 56, 60 (D.D.C. 2000).

Pursuant to Fed. R. Civ. P.56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[2] Klugel's complaint names the Smithsonian as a defendant with respect to all of her claims, and Roy and Hines as defendants solely with respect to her defamation claim. Compl. ¶¶ 9-10. However, the parties' briefs assume that Roy and Hines are also defendants with respect to Klugel's invasion of privacy claim. Defs.' Mot. 10; Pl.'s Opp'n 22. For purposes of this memorandum opinion, the court assumes that Roy and Hines are defendants for both the invasion of privacy and defamation claims.

and the individual defendants defamed her by making statements about her husband, sexuality, and mental condition.[2]

## II. ANALYSIS

Defendants move to dismiss Klugel's Title VII and Rehabilitation Act claims or, in the alternative, for summary judgment on the grounds that she did not exhaust her administrative remedies. With respect to Klugel's tort claims, defendants move to substitute the United States as the sole defendant and then to dismiss those claims because the United Sates is shielded from suit by its sovereign immunity.

### A.    Legal Standards

The parties have submitted matters outside the pleadings that are not excluded by the court. Therefore, the court shall treat the motion as one for summary judgment under Fed. R. Civ. P. 56. *Carroll v. England,* 321 F.Supp. 2d 58, 67 n.4 (D.D.C. 2004); *Polk v. Dist. of Columbia,* 121 F.Supp. 2d 56, 60 (D.D.C. 2000).

Pursuant to Fed. R. Civ. P.56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[2] Klugel's complaint names the Smithsonian as a defendant with respect to all of her claims, and Roy and Hines as defendants solely with respect to her defamation claim. Compl. ¶¶ 9-10. However, the parties' briefs assume that Roy and Hines are also defendants with respect to Klugel's invasion of privacy claim. Defs.' Mot. 10; Pl.'s Opp'n 22. For purposes of this memorandum opinion, the court assumes that Roy and Hines are defendants for both the invasion of privacy and defamation claims.

The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To meet its burden, the non-moving party must show that "'the evidence is such that a reasonable jury could return a verdict'" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting *Anderson*, 477 U.S. at 248). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. In considering a summary judgment motion, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

B.    **Exhaustion of Administrative Remedies**

Before filing a lawsuit under Title VII or the Rehabilitation Act, a plaintiff must exhaust her administrative remedies. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). The first step that a federal employee must take to avail herself of her administrative remedies is to timely initiate contact with an EEO Counselor for informal counseling. The pertinent regulation requiring timely contact with an EEO Counselor provides in relevant part:

>    (A)  Aggrieved persons who believe that they have been discriminated against on the basis of . . . sex . . . or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>        (1)  An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally, the aggrieved employee may then file a formal administrative complaint against the agency within 15 days of receipt of notice from the EEO Counselor. *Id.* § 1614.105(d).

The Smithsonian argues that Klugel may not prosecute her Title VII or Rehabilitation Act claims because she did not contact an EEO Counselor until September 23, 2005,[3] substantially more than 45 days after the alleged discriminatory treatment upon which her discrimination claims are based. Klugel rejoins that the premise which underlies the Smithsonian's exhaustion defense, that she was required to timely initiate contact with an EEO Counselor *directly*, is incorrect and that whenever a federal employee reports discriminatory conduct to a manager, as she did, the employee initiates contact with a Counselor.[4] Klugel also argues that the Smithsonian fails to show that she did not initiate contact with a Counselor regarding her discrimination claims as required.

The D.C. Circuit has not addressed the meaning of the phrase "initiate contact with a Counselor." Other courts, however, have done so and have adopted the EEOC's interpretation of

---

[3] The Smithsonian relies on a May 15, 2006 memorandum written by an EEO counselor that states, "Date of First Contact: September 23, 2005," as support for its argument that Klugel did not contact the EEO until September 2005. Klugel argues that this document is hearsay and should be stricken as it is not admissible evidence. *See* Pl.'s Opp'n 8-10; Def.'s Ex. A. The court does not reach this issue because the Smithsonian also submits an EEO decision in Klugel's administrative proceedings, which is admissible pursuant to Fed. R. Evid. 803(8) as a public record or report. This report also gives the date of first contact as September 23, 2005.

[4] There is simply no support for this argument and the court rejects it.

the phrase. *See Nygren v. Ashcroft*, 109 Fed. Appx. 816, 819 (8th Cir. 2004) (deferring to the EEOC's interpretation); *Lane v. Tschetter,* Civ. Action 05-1414, 2007 WL 2007493, *4 (D.D.C. July 10, 2007) (same); *Cox v. Rumsfeld,* No. 02-C-500-C, 2003 WL 21691044, *6 (W.D. Wisc. June 19, 2003) (same); *Johnson v. Glickman*, 155 F.Supp. 2d 1240, 1247-48 (D. Kan. 2001) (same).[5] Under the EEOC's interpretation, an employee who believes that she has been the subject of discrimination must timely (1) contact an agency official "logically connected" with the EEO process (not necessarily a Counselor) and (2) demonstrate an intent to begin the EEO process. *See, e.g., Cox v. Cuomo*, App. No. 01972354, 1998 WL 455064 (E.E.O.C. July 30, 1998); *Allen v. USPS,* App. No. 01952557, 1996 WL 391224 (E.E.O.C. July 8, 1996).

This court finds the rationale of the courts that have adopted the EEOC's interpretation to be persuasive and shall do likewise for several reasons. First, the phrase "initiate contact" is ambiguous, and where a regulation is ambiguous, the court should defer to the agency's interpretation. *Lane*, 2007 WL 2007493, at *4 ("when a regulation is ambiguous . . . courts should defer to an agency's interpretation") (quotations omitted) (citing *Christensen v. Harris County*, 529 U.S. 576 (2000)). Second, the Smithsonian's position that an employee must directly contact an EEO counselor in order to comply with 29 C.F.R. § 1614.105(a)(1) would inappropriately turn the informal counseling requirement into an unwarranted procedural hurdle. An employee should not be powerless to pursue an EEO complaint simply because she

---

[5] Some courts have interpreted the EEOC's rulings as requiring a third element, an allegation that the incident in question is based on discrimination. *Johnson v. Cohen*, 6 Fed. App. 308, 311 (6th Cir. 2001); *Pauling v. Sec'y of Interior*, 960 F. Supp. 793, 803 (S.D.N.Y. 1997). This court concludes that such an element is subsumed within the second element of the EEO's formulation. Therefore, in determining whether an employee intended to initiate the EEO process, the court takes into consideration whether the employee reported that the conduct about which she complains was discriminatory.

mistakenly reports her complaint to the "wrong" agency employee even though she has every intent of pursuing the EEO process.

Having determined that Klugel was not required to timely contact an EEO Counselor directly in order to comply with 29 C.F.R. § 1614.105(a)(1), the court next addresses whether the Smithsonian has carried its burden of showing that Klugel did not exhaust her administrative remedies with respect to her Title VII and Rehabilitation Act claims.

Klugel claims that:

> (1) the Smithsonian violated Title VII by subjecting her to disparate treatment based on sex and creating a hostile work environment during the December 2004 Inspector General investigation;
>
> (2) the Smithsonian violated the Rehabilitation Act by asking Ms. Klugel questions about her medical leave;
>
> (3) the Smithsonian violated the Rehabilitation Act by referring her to an EAP;
>
> (4) the Smithsonian violated Title VII and the Rehabilitation Act by retaliating against her for complaining about discrimination; and
>
> (5) the Smithsonian violated Title VII and the Rehabilitation Act by constructively discharging her on May 12, 2005.

The summary judgment record reveals that the Smithsonian has not carried its burden of showing that Klugel did not exhaust her administrative remedies with respect to claims (1) and (2), which are Klugel's disparate treatment and hostile environment claims involving the December 2004 Inspector General investigation and the Smithsonian's questioning of Klugel

regarding her medical leave. With respect to all of her other discrimination claims, however, Klugel failed to timely initiate the EEO process and thus failed to exhaust her administrative remedies.

With respect to claim (3), the court agrees with defendants that her attorney's April 18, 2005 letter to her superior cannot be reasonably construed as an effort by her to initiate the EEO counseling process regarding her EAP referral. The letter, in pertinent part, states that *if* the referral is based on "'fears' or on emotional state [sic]" then "the directive to see an EAP counselor triggers issues under the Rehabilitation Act." Pls.' Ex. 2. The letter neither charges discrimination nor evidences Klugel's intention to initiate the EEO process.

As for claim (4), Klugel does not respond to defendants' argument that she did not exhaust her administrative remedies with respect to this claim. It is well established in the D.C. Circuit that when a party does not address arguments raised by a movant, the court may treat those arguments as conceded. *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)). Thus, this court will treat defendants' argument with respect to claim (4) as conceded.

Finally, Klugel may not prosecute claim (5) because her July 2, 2005 administrative complaint to the D.C. Human Rights Commission regarding her alleged constructive discharge was untimely. As the Smithsonian correctly explains, July 2, 2005 was more than 45 days after Klugel's alleged constructive discharge on May 12, 2005.

### C. **Equitable Estoppel**

Klugel argues that the doctrine of equitable estoppel operates to preclude the Smithsonian from arguing that she failed to exhaust her administrative remedies. Klugel relies on 29 C.F.R. § 1614.105(a)(2), which provides that the 45-day limit for initiating the EEO process "shall [be] extend[ed] if . . . despite due diligence, he or she was prevented by circumstances beyond his or her control from contacting the counselor." Klugel argues that the Smithsonian did not provide her with information about the EEO process and that the Smithsonian website did not identify the appropriate EEO counselor. Klugel's position cannot be sustained.

In order to avail herself of the doctrine of equitable estoppel, a plaintiff must come forward with specific proof of an employer's affirmative acts or misleading statements that prevented her from filing an EEO complaint. *See Chung v. U.S. Dep't. of Justice* 333 F.3d 273, 279 (D.C. Cir. 2003) ("we agree that [plaintiff's] failure to allege any specific act or misleading statement by the defendant is problematic" to a claim of equitable estoppel); *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (it "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time"). Klugel's assertions that the Smithsonian failed to provide her with information about the EEO process reflect passive rather than affirmative conduct by the Smithsonian. Moreover, Klugel's statement that she was told that there was no Research Center EEO Counselor, Klugel Aff. ¶ 20, without indicating when the statement was made or who made it, is not the kind of specific showing that entitles a plaintiff to the relief afforded by the equitable estoppel doctrine. *Chung*, 33 F.3d. at 279.

**D.     Substitution of the United States as Sole Defendant and Sovereign Immunity**

The Westfall Act, 28 U.S.C. § 2679, immunizes federal employees from liability for torts committed within the scope of their employment.  The Act provides that, upon certification by the U.S. Attorney General or his designee that an employee acted within the scope of her employment at the time of an allegedly tortious incident, the United States will be substituted as the defendant.  28 U.S.C. § 2679(d)(1).  Based upon the certification of the designee of the U.S. Attorney General, Assistant United States Attorney Rudolph Contreras, that Roy and Hines were acting within the scope of their employment at the time of their conduct which gives rise to Klugel's tort claims, defendants move to substitute the United States as the sole defendant. Following the substitution, the United States asserts that the tort claims must be dismissed because of its sovereign immunity as to these claims.

**1.     Substitution**

Klugel contests defendants' assertion that the Attorney General's certification, by his designee, requires the substitution of the United States as the sole defendant with respect to her tort claims.  She also argues that she is entitled to conduct discovery to inquire whether Hines and Roy acted within the scope of their employment.  The court agrees with Klugel that the Attorney General's certification is not conclusive on the question of whether Roy and Hines acted within the scope of their employment but is only *prima facie* evidence that they did so. However, the court disagrees with Klugel's assertion that she is entitled to discovery with respect to the issue.

The Attorney General's certification that a federal employee acted within the scope of his employment is not conclusive.  *Stokes v. Cross*, 327 F.3d 1210, 1213 (D.C. Cir. 2003)

(citing *Gutierrez de Martinez v. Lamangno*, 515 U.S. 417, 436 (1995)).  The certification is only *prima facie* evidence that the employee's conduct was within the scope of his employment.  *Atherton v. D.C. Office of the Mayor*, Civil Action No. 04-0680, 2007 WL 1041659, *6 (D.D.C. April 5, 2007) (slip copy) (stating that the certification is prima facie evidence that employees acted within the scope of their employment).  If a plaintiff "allege[s] sufficient facts that, taken as true, would establish the defendants' actions exceeded the scope of their employment," then the court may order discovery and an evidentiary hearing regarding the scope-of-employment issue.  *Stokes*, 327 F.3d at 1214-15.  An employee acts within the scope of his employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master."[6]  Restatement (Second) of Agency § 228.[7]

    Klugel does not allege any facts to rebut defendants' *prima facie* evidence that Roy and Hines acted within the scope of their employment.  She alleges that "*[d]uring* the IG investigation . . . [defendants] repeated and published statements about Ms. Klugel's sexual relationship with her then boyfriend, and current husband."  Compl. ¶ 54 (emphasis added).  She also alleges that Roy and Hines "unjustly pried into [her] romantic relationship." Compl. ¶ 48.  Lastly, Klugel alleges that Roy and Hines made false statements about her mental condition.

---

[6] The Restatement (Second) of Agency also provides "if force is intentionally used by the servant against another, the force is not unexpectable by the master." § 228.  This element is not relevant here because no force was used.

[7] The court's inquiry into the scope-of-employment issue is governed by District of Columbia law.  *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003)  ("The scope issue is governed by District of Columbia law.").  The District of Columbia, in turn, looks to the Restatement (Second) of Agency (1958).  *Id.*

Compl. ¶ 55. She does not allege that these incidents occurred in any context other than during the Inspector General investigation or that they occurred outside the workplace or working hours. Furthermore, she offers nothing to suggest that the Inspector General's investigation was motivated by anything unrelated to their employer's interests.

Finally, with respect to Klugel's request for discovery on the scope of employment issue, Fed. R. Civ. P. 56(f) could not be clearer.

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavits facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). As defendants correctly observe, Klugel has not set forth in an affidavit either the basis for her request for discovery or the particular matters on which discovery would be warranted. Her general unsubstantiated request for discovery on her "allegations" – not supported by an affidavit – is insufficient. *See Atherton*, 2007 WL 1051659, at *7 ("Plaintiff simply has not alleged sufficient facts to rebut the government's certification.").

For the foregoing reasons, and based on the Attorney General's certification, the United States is substituted as the sole defendant with respect to Klugel's tort claims of defamation and invasion of privacy.

  **2. Sovereign Immunity**

Having determined that the United States is the proper defendant for Klugel's defamation and invasion of privacy claims, the court next address the United States' argument that this court is without subject matter jurisdiction with respect to these claims because of its

sovereign immunity.

The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States with respect to some, but not all, torts. Those torts for which the United States retains immunity are enumerated in 28 U.S.C. § 2680(h). Among such claims are those for slander and libel. Therefore, as Klugel appears to concede, Pl.'s Opp'n at 21, her claim of defamation cannot survive the United States' motion to dismiss.

Klugel contests the United States' assertion that it is immune from her claim of invasion of privacy. The United States argues that it is immune not just for the claims enumerated in 28 U.S.C. § 2680(h), but also for "any claim arising out of" these claims. 28 U.S.C. § 2680(h); *see Koch v. United States*, 209 F.Supp. 2d 89, 94 (D.D.C. 2002) ("that section does not exclude from coverage 'any claim *arising out of'* any of the enumerated torts."). Thus, the United States argues that because Klugel's invasion of privacy claims arise out of the same nucleus of facts as her defamation claim, it is immune from her invasion of privacy claim as well. The position of the United Sates cannot be sustained.

To determine whether a non-enumerated claim "arises out of" an enumerated claim, the court must examine the actual conduct upon which the claims are based. *Kugel v. United States*, 947 F.2d. 1504, 1507 (D.C. Cir. 1991) (the court must "scrutinize the alleged cause of [plaintiff's] injury"); *Truman v. United States*, 26 F.3d 592, 595 (5th Cir. 1994) ("the focus of the inquiry is on the conduct on which [plaintiff] bases her claim."). An examination of the tort claims here reveals that they do not arise from the same underlying conduct. While there are several different kinds of invasion of privacy claims, Klugel alleges invasion of privacy by

intrusion on seclusion.[8]  That is, she alleges that defendants *asked* her unreasonable questions about her boyfriend and about her sexuality, and that these questions intruded on her private affairs.  This is different than the alleged conduct underlying her defamation claim.  The conduct underling the defamation claim is that the employees involved with the Inspector General's investigation wrongly *disseminated* information about her.  While there is some factual overlap between the two claims – both involve information about Klugel – the "partial overlap . . . does not support the conclusion that if one is excepted [under the FTCA] the other must be as well." *Block v. North Dakota,* 460 U.S. 273, 299 (1983).  Therefore, there is no basis to dismiss Klugel's invasion of privacy claim on sovereign immunity grounds.

## III.  CONCLUSION

For the forgoing reasons, it is this 25th day of October, 2007, hereby

**ORDERED** the motion to dismiss or, in the alternative for summary judgement, is granted as to Klugel's Title VII and Rehabilitation Act claims except the claim that the Smithsonian violated Title VII by discriminating against her on the basis of her sex in connection with the Inspector General's December 2004 investigation and her claim that the Smithsonian violated the Rehabilitation Act by asking her questions about her medical leave;

---

[8]  The three other kinds of invasion of privacy torts are: (1) public disclosure of private facts; (2) publicity that places one in a false light in the public eye; and (3) appropriating one's name or likeness for another's benefit.  *Wolf v. Regardie*, 553 A.2d. 1213, 1217 (D.C. 1989).  Just like a defamation claim, a "false light" claim relies on dissemination of information about an individual.  Thus, to the extent Ms. Klugel asserts invasion of privacy by "false light in the public eye," as defendants' opposition assumes, this claim is barred.  *See, e.g., Edmonds v. United States*, 436 F. Supp. 28, 35 (D.D.C. 2006) ("Courts consistently have held that claims for 'false light' invasion of privacy are barred by the libel and slander exception.").

and it is further

      **ORDERED** that the motion to substitute the United States as the sole defendant for Klugel's tort claims is **GRANTED**; and it is further

      **ORDERED** that the motion to dismiss, or in the alternative for summary judgment, is **GRANTED** as to Klugel's claim of defamation and **DENIED** as to her claim of invasion of privacy.

                                            Henry H. Kennedy, Jr.
                                            United States District Judge