**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
--------------------------------
DORATHA KLUGEL,                  )
                                 )
         Plaintiff,              )
                                 )
                                 )  Civil A. No. 06-1886 (HHK)
v.                               )
                                 )
G. WAYNE CLOUGH, Secretary,      )
Smithsonian Institution,[1]      )
                                 )
and                              )
                                 )
THE UNITED STATES OF AMERICA,    )
                                 )
         Defendants.             )
                                 )
--------------------------------  )
```

## DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO PRODUCE SIGNED MEDICAL RELEASES

Defendants, G. Wayne Clough, Secretary of the Smithsonian Institution, and the United States of America hereby submit their motion for an order compelling plaintiff to provide signed medical releases.  The parties have conferred pursuant to Local Civil Rule 7(m) and have not been able to reach agreement on the matters raised herein.

In support of this motion, defendants hereby submit a memorandum of points and authorities with exhibits, and a proposed order.

---

[1]Pursuant to Fed. R. Civ. P. 25(d) Mr. G. Wayne Clough has been automatically substituted for defendant Cristian Samper.

Respectfully Submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/_____
Rudolph Contreras, D.C. Bar #434122
Assistant United States Attorney

_/s/ Michelle Johnson_____
MICHELLE N. JOHNSON, D.C. Bar #491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, NW – Room E4212
Washington, DC 20530
(202) 514-7139 (Telephone)
(202) 514-8780 (Facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
---------------------------------
DORATHA KLUGEL,                    )
                                   )
          Plaintiff,               )
                                   )
                                   )  Civil A. No. 06-1886 (HHK)
v.                                 )
                                   )
G. WAYNE CLOUGH, Secretary,        )
Smithsonian Institution,           )
                                   )
and                                )
                                   )
THE UNITED STATES OF AMERICA,      )
                                   )
          Defendants.              )
                                   )
--------------------------------- )
```

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFF TO PRODUCE SIGNED MEDICAL RELEASES

Defendants, G. Wayne Clough, Secretary of the Smithsonian Institution, and the United States of America hereby submit their memorandum of law in support of their motion for an order compelling plaintiff to produce signed medical releases.

## FACTUAL BACKGROUND[1]

Plaintiff, Doratha Klugel, has filed an action against the Smithsonian Institution and the United States of America in which she alleges that she was subjected to discrimination on the basis of her sex and alleged disability in violation of Title VII. Plaintiff also contends that the defendants invaded her privacy

---

[1] On July 9, 2008, defendants filed a motion for summary judgment setting forth the facts pertinent to this action. Defendants now therefore only recite the facts relevant to this current motion.

and seeks damages against the United States for the tort of
intrusion upon seclusion pursuant to the Federal Tort Claims Act
("FTCA").

   In her complaint, plaintiff seeks "compensatory damages
arising from . . . [defendants'] conduct, including but not
limited to . . . pain and suffering, medical expenses and other
losses as may be discovered during discovery and at trial."
Complaint ("Compl.") at 11.  At her deposition in this case
plaintiff testified to having suffered "extensive emotional
distress" as a result of the defendants' alleged conduct.  Ex. 1,
Excerpts from the Deposition of Doratha Klugel dated May 8, 2008
("Klugel Depo. Vol. II), at 32.  Specifically, plaintiff
testified:

> Q. Were there any kind of emotional stresses or -
> any claims for emotional distress stemming from
> the allegations in your complaint?
>
> A. Yes.  I suffered, yeah, extensive emotional distress
> starting with the IG [Inspector General] investigation
> and then the hostility and retaliation from Mr.
> Haddon and Mr. Gallagher.  That continued for months
> until having to resign so as not to be fired.  It
> was a terribly emotionally stressful time.  I would
> come home and cry and was miserable, and [suffered]
> emotional disturbance/emotional distress from
> realizing that my career at the Smithsonian was gone,
> had been destroyed by two people deciding that they
> didn't like my attitude and the way to adjust my
> attitude was to go over every supervisor's head and go
> straight to the IG. . . . I was distraught by how
> quickly it had all unraveled and come to an end,
> and nobody was doing anything about it.

Ex. 1 (Klugel Depo. Vol. II), at 33-34; See also Ex. 2, Excerpts

from the Deposition of Phillip Yunger ("Yunger Depo.") at 34 (plaintiff's husband, who was her boyfriend at the time relevant to the complaint and was living with plaintiff, testified that "When this stuff started to happen, it almost destroyed our relationship because of how upset she was about this.").

Plaintiff also testified that she sought counseling from a social worker, Dr. Chen, "throughout" the period of time relevant to her complaint and afterwards "to deal with the emotional distress of that period of time and then no longer being able to work at the Smithsonian." Id. at 35. See also Ex. 2 ("Yunger Depo.") at 35 ("[W]e did have counseling on several occasions with her therapist just to keep things on an even keel.").

Despite the fact that she seeks damages for "pain and suffering" as well as "medical expenses" and the fact that she testified during her deposition that she suffered "extensive emotional distress," to date plaintiff has refused to execute medical releases that would permit defendants to obtain her medical records.

## PROCEDURAL BACKGROUND

On February 28, 2008, defendants propounded their First Request to Plaintiff for Production of Documents. Ex. 3, Defendants' Request to Plaintiff for Production of Documents ("Defs.' Doc. Requests"). Document request number 15 asked plaintiff to sign medical releases, which were attached. Id. at

4.

On March 20, 2008, plaintiff responded to defendant's first set of document requests. Ex. 4, Plaintiff's Response to Defendant's Request for Production of Documents ("Pl.'s Resp."). Plaintiff objected to providing signed medical releases, indicating that it was not "proper" for defendants to ask plaintiff to create a document as part of a document request. <u>Id.</u> Specifically plaintiff objected as follows:

> <u>Response to Production Request No. 15</u>:  Objection. Defendants may not use a production demand to create a document, nor are Defendants entitled through discovery to force Plaintiff to sign any form of release.  A production demand may be used only to obtain existing records; and it is improper to seek to have Plaintiff waive legal rights.  Plaintiff will not surrender her medical records without the Defendants establishing a nexus between any specific treatment and the claims or defenses in this case and, if that is established, agreeing to a protective order concerning the use, dissemination and retention of such records.
> If the Defendant will provide a justification for seeking a release, legal authority supporting that position and then agree to a protective order, Plaintiff will reconsider this objection.

<u>Id.</u> at 3-4.  Notably, plaintiff did not make any unduly burdensome objections; nor did she claim that such records do not exist.

In a letter dated April 9, 2008, defendants wrote to plaintiff identifying several deficiencies in plaintiff's discovery responses. Ex. 5, Letter to Mr. Byrnes dated April 9, 2008.  Concerning defendants' request for plaintiff to sign medical releases, defendants cited case law from this district in

4

which courts have recognized the relevance of medical information where, in cases such as this, plaintiff has alleged pain and suffering. Ex. 5, at 5. Defendants again requested that plaintiff provide the requested medical releases. Id.[2]

Thereafter, the parties exchanged emails regarding discovery and had a meet and confer discussion, pursuant to Local Civil Rule 7(m), on June 5, 2008, during which time plaintiff's counsel agreed to supplement certain areas of plaintiff's discovery responses. See Ex. 9 (Letter dated June 30, 2008 referring to meet and confer discussion on June 5, 2008). Plaintiff's counsel emailed counsel for defendant indicating that supplementation would be provided by Monday, June 9. Ex. 6 (Email dated June 6, 2008). On Thursday, June 12, 2008, plaintiff's counsel wrote to inform defendant's counsel that plaintiff was "pulling together . . . any remaining medical records" and would be producing any "remaining" records the following week. Ex. 7 at 2 (Email dated June 12, 2008). On Tuesday, June 17, 2008, defense counsel wrote to plaintiff's counsel to inquire whether plaintiff would be signing the requisite medical releases to enable defendant to receive all pertinent medical records. Id. at 1. Plaintiff's counsel responded on the same date indicating that he believed that plaintiff intended on giving him the records which would be

_____

[2]On March 25, 2008, the Court entered the parties' Stipulated Protective Order governing sensitive and confidential information in this case.

5

"faster [because] doctors give low priority to record production." Id.  Defense counsel wrote to plaintiff's counsel indicating that she believed that an agreement had been reached regarding plaintiff providing signed medical releases, and she anticipated issuing a subpoena to the pertinent doctor[s] to ensure that the records were received timely.  Id.  Defense counsel reiterated defendants' position that defendants are entitled to receive medical releases to ensure that all pertinent medical records are received, "as opposed to relying on Ms. Klugel to provide the records."  Id.

        In a letter dated June 23, 2008, plaintiff supplemented her production, providing additional medical records[3] that pertain to plaintiff's neurological follow-ups.  Ex. 8, Letter dated June 23, 2008.  In a letter dated June 30, 2008, defense counsel wrote a letter to plaintiff's counsel again explaining defendants' justification for requesting signed medical releases from plaintiff.  Ex. 9, Letter dated June 30, 2008.  To date, plaintiff has failed to produce any medical records from any mental health providers she saw during the period relevant to her allegations and she continues to refuse to sign the medical releases furnished by defendant.[4]

---

        [3]Plaintiff had previously provided some records pertaining to her Irritable Bowel Syndrome ("IBS").

        [4]On July 3, 2008, defense counsel and plaintiff's counsel's assistant contacted the Court's law clerk to arrange a time to discuss this discovery dispute with the Court, per the Court's scheduling

## ARGUMENT

_____Defendants move, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), for an order compelling plaintiff to provide signed medical releases to enable defendants to obtain the records reflecting any mental health treatment plaintiff received during the time relevant to her complaint.  As further discussed below, courts in this district have recognized that such information is relevant where a plaintiff, such as here, seeks damages for alleged mental distress arising from alleged discrimination. Plaintiff has not provided any justifiable basis for continuing in her refusal to provide signed medical releases and therefore defendants' motion to compel should be granted.

**I.    Plaintiff's Mental Health Records Are Relevant to Her Claims in this Action.**

The federal rules authorize this Court to compel production of information that is requested but improperly withheld.  <u>See</u> Fed. R. Civ. P. 37(a)(2).[5]  A party is entitled to information

---

order.  On Monday, July 7th, the law clerk contacted the parties to indicate that the Court had availability on Tuesday, July 8th between 11 a.m. and 1 p.m. to conduct a telephone call with the parties.  The law clerk indicated that if the parties were unavailable at that time defendant should be prepared to file a motion.  Plaintiff's counsel was unavailable for a call on Tuesday with the Court and therefore defendant is filing this motion in accordance with the law clerk's instructions.  Ex. 10 (Emails dated July 7, 2008).

[5]Pursuant to Federal Rule 37(a)(5)(A), if the Court grants such a motion it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

sought in discovery so long as it is "relevant to the claim or
defense of any party." <u>See</u> Fed. R. Civ. P. 26(b)(1). Here, the
information sought by defendants is plainly "relevant" within the
meaning of Rule 26(b).

In actions alleging discrimination, compensatory awards are
intended to "compensate victims of intentional discrimination,"
and to provide an effective deterrence to an employer who engages
in such conduct. <u>Nyman v. Chairman, FDIC</u>, 967 F. Supp. 1562,
1572 n. 7 (D.D.C. 1997) (<i>citing</i> HR. 1, 102nd Cong. § 2(b)(2)
(1991)). However, "compensatory damages must be proven and
cannot be presumed[.]" <u>Peyton v. DiMario</u>, 287 F.3d 1121, 1126
(D.C. Cir. 2002) (<i>quoting</i> <u>Carey v. Piphus</u>, 435 U.S. 247, 263-64
(1978)); <u>Nyman</u>, 967 F.Supp. at 1571 (same). Thus, any award of
compensatory damages must be "supported by evidence, and . . .
not shock the conscience, or . . . not [be] inordinately large so
as to be obviously unreasonable." <u>Peyton</u>, 287 F.3d at 1127. <u>See
also</u> <u>Gipson v. Wells Fargo Bank N.A.</u>, 460 F. Supp. 2d 12, 12-13
(D.D.C. 2006) (evidence may be introduced to demonstrate what
emotional and physical injuries were caused by the employer's
conduct, and which were not).

Once a plaintiff has introduced evidence of recoverable
damages, the defendant remains free to challenge the amount of a
damages award, or to establish an affirmative defense that a
plaintiff failed to mitigate his damages. <u>Barbour v. Merrill</u>, 48

F.3d 1270, 1279-80 (D.C. Cir. 1995) (citations omitted), <u>cert.</u>
<u>dismissed</u>, 516 U.S. 1155 (1996).  Failure of a defendant to
present relevant evidence[6] to challenge a plaintiff's evidence of
compensatory damages or a causal connection between the injuries
alleged and the employer's actions will severely limit, or even
bar, a defendant from challenging the amounts requested.  <u>See,</u>
<u>e.g.</u>, <u>Nyman</u>, 967 F. Supp. at 1572.

     In the present matter, the medical records defendants seek
are relevant to the claims at issue in this case.  Plaintiff
seeks compensatory damages, notably for "pain and suffering" and
"medical expenses." Compl. at 11.  Furthermore plaintiff has
testified that she suffered "extensive emotional distress
starting with the IG investigation and then the hostility and
retaliation . . . ."  Ex. 1 (Klugel Depo.) at 33.  By making this
allegation and requesting this relief, plaintiff has put her
mental condition squarely in controversy and has made her medical
records relevant to determine the existence and extent of such
alleged damages.  <u>Benham v. Rice</u>, 238 F.R.D. 15, 28-29 (D.D.C.
2006); <u>Moore v. Chertoff</u>, No. Civ.A. 00-953, 2006 WL 1442447, at
*3 (D.D.C. May 22, 2006) (holding that plaintiffs had to produce
medical records because "[r]eview of [such] . . . records could

---

     [6]     Under the Federal Rules of Evidence, all "relevant
evidence," which is defined as "evidence having any tendency to make
the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without
the evidence," is admissible.  Fed. R. Evid. 401 and 402.

lead to the discovery of facts not related to employment discrimination that contributed to plaintiffs' alleged injuries . . . Plaintiffs may not withhold from defendant as irrelevant medical records that could be probative of potential causes contributing to plaintiffs' alleged injuries."); Smith v. Koplan, 215 F.R.D. 11 (D.D.C. 2003) ("[A]n employee who seeks compensatory damages for emotional pain suffered as a result of the employer's action has placed the existence and extent of their alleged mental injury in controversy, giving the employer good cause to seek an examination [pursuant to Fed. R. Civ. 35(a)]").[7]

In this case, provided there is a trial, plaintiff will undoubtedly testify about the extent of the emotional distress she alleges to have suffered as a result of the defendants' alleged actions.  Plaintiff's own testimony on this issue, however, is self-serving and unreliable, and her credibility is a major issue in this case.[8]  Therefore defendants are entitled to

---

[7]Due to plaintiff's refusal to produce any medical records pertaining to her mental health, defendants in this case have not been in a position to demand an independent medical examination as they have received no evidence pertaining to the nature and severity of plaintiff's alleged mental distress.  After receipt of such records defendants may well seek to move the Court for leave to conduct an independent medical examination pursuant to Fed. R. Civ. P. 35(a).

[8]Specifically, plaintiff claims she was asked inappropriate questions by IG special agent Gerard Roy, a fact defendants have accepted as true for purposes of summary judgment.  See Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' MSJ") at 9 & n.6.  However, defendants expect that plaintiff's credibility will be a central issue in any trial on her claims.

view the medical records of the doctors who allegedly treated plaintiff for this emotional distress.  Ex. 1, at 35 (testifying that she began seeing a social worker "throughout" the period of time at issue in this case and "afterwards to deal with the emotional distress of that period of time and then no longer being able to work at the Smithsonian.")

**II.  Defendants are Entitled to Signed Medical Releases.**

Plaintiff has objected to defendants' request for signed medical releases, arguing that defendants are not entitled to "create" documents or "force" plaintiff to sign a release.  Ex. 4, at 3.  Plaintiff's objections are without merit.

Courts in this district have ordered plaintiffs to provide signed medical releases authorizing defendants to obtain medical records where such records are relevant to the claims asserted by the plaintiff.  See, e.g., Roberson v. Bair, 242 F.R.D. 130, 136 (D.D.C. 2007) (ordering plaintiff to produce medical records in her possession and to sign a medical authorization for her doctors to release medical information where plaintiff failed to meet "her burden of demonstrating that the medical records are not relevant or that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."); Lebron v. Powell, 215 F.R.D. 72, 77 (D.D.C. 2003) (ordering plaintiff in discrimination and retaliation lawsuit to provide signed medical authorizations for the release of

11

plaintiff's "unexpurgated records" for each provider and noting that "[w]ithout these records, the prejudice to the government of not having all necessary information pertaining to plaintiff's medical treatment is obvious."). Furthermore, defendants should not have to rely upon plaintiff to produce whatever documents she deems to be relevant.[9] Defendants are entitled to medical releases so they may obtain any pertinent records directly from plaintiff's treating mental health providers. In the alternative, the Court should preclude plaintiff from presenting any evidence concerning her mental condition if there is a trial in this matter.

## CONCLUSION

For the reasons set forth above, defendants ask this Court for an order compelling plaintiff to provide signed medical releases for each of the mental health care providers she has seen between the years of 2004 and the present.[10]

---

[9]Here, it is not apparent whether plaintiff actually contacted her former/current mental health providers for documents. Certainly none have been produced.

[10]The events at issue in the complaint occurred in late 2004, however, defendants are entitled to determine if there were any stressful events immediately prior to that time that may have been affecting plaintiff. In addition, plaintiff testified that she continued to receive mental counseling after her departure from the agency in May 2005, but has not specified when that treatment ended.

Respectfully Submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/_____
Rudolph Contreras, D.C. Bar #434122
Assistant United States Attorney

_/s/ Michelle Johnson_____
MICHELLE N. JOHNSON, D.C. Bar #491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, NW – Room E4212
Washington, DC 20530
(202) 514-7139 (Telephone)
(202) 514-8780 (Facsimile)

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
---------------------------------
DORATHA KLUGEL,                  )
                                 )
          Plaintiff,             )
                                 )
                                 )  Civil A. No. 06-1886 (HHK)
v.                               )
                                 )
G. WAYNE CLOUGH, Secretary,      )
Smithsonian Institution,¹        )
                                 )
and                              )
                                 )
THE UNITED STATES OF AMERICA,    )
                                 )
          Defendants.            )
                                 )
--------------------------------- )
```

**[PROPOSED] ORDER**

This matter having come before the Court on defendants' Motion to Compel Plaintiff to Produce Signed Medical Releases, plaintiff's opposition to the motion, if any, and defendants' reply, it is hereby

**ORDERED** that defendants' motion is hereby **GRANTED**.  And it is further

**ORDERED** that plaintiff shall provide signed medical releases for each of the medical providers she saw for treatment dating from 2004 until the present no later than five (5) business days after the date of this Order.  And it is further

**ORDERED** that plaintiff shall pay to defendants' attorneys

---

[1]Pursuant to Fed. R. Civ. P. 25(d) Mr. G. Wayne Clough is automatically substituted for defendant Cristian Samper.

reasonable expenses incurred in filing their motion.  <u>See</u> Fed. R.
Civ. P. 37(a)(5)(A).

**SO ORDERED** on this \_\_\_\_ day of _____, 2008.


_____
_____Henry H. Kennedy
                                       UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4 DORATHA KLUGEL,              *

 5           Plaintiff,    * Civil Action 06-01886

 6 vs.                          *

 7 CHRISTIAN SAMPER, et al,  *

 8           Defendants.   * Pages 1 - 107

 9

10

11

12                  (VOLUME II)

13        Deposition of Doratha C. Klugel

14              Washington, D.C.

15            Thursday, May 8, 2008

16

17

18

19

20

21 Reported by:  Carla J. Briggs, RPR-RMR-CRR

22 Job No. 187245a
```

**Doratha C. Klugel**

Page 30

1 outreach ministries.

2   Q   That's a long title.

3   A   I have really big business cards.

4   Q   Okay. What are your job responsibilities?

5   A   My job responsibilities as the student

6 associate is to seek funding for diversity training

7 between Capitol Hill United Methodist Church and

8 Ebenezer United Methodist Church, to plan and

9 coordinate and implement the diversity training

10 between the two congregations, to sit on the

11 Ebenezer Capitol Hill Cooperative Parish Council --

12 yes, Ebenezer Capitol Hill Cooperative Parish

13 Council -- and to help facilitate and organize the

14 outreach ministries of Capitol Hill United Methodist

15 Church.

16   Q   How long have you been in this position?

17   A   Two-and-a-half years roughly. Since

18 December 2005, I believe.

19   Q   What's your annual salary there?

20   A   $15,000.

21   Q   Are you working anywhere else?

22   A   As of a week or two ago, I am also doing

Page 31

1 some contract work for the Animals and Religion

2 Department of the United States Humane Society.

3   Q   I'm assuming since it's only been a week,

4 you don't really know what your earnings are, but do

5 you have any kind of agreement in place as to how

6 much you will be paid?

7   A   $20 an hour, 10 hours a week.

8   Q   Are you taking any classes or anything

9 right now?

10   A   Yes.

11   Q   Where are you taking classes?

12   A   Wesley Theological Seminary.

13   Q   When did you start classes there?

14   A   I began as a special student at Wesley

15 Theological Seminary fall of '04.

16   Q   And what will be your -- I'm very ignorant

17 when it comes to seminary, so is there a degree that

18 you're looking to obtain?

19   A   I am seeking a Master's of Divinity

20 degree.

21   Q   Do you plan to preach or teach or -- what

22 does one do -- what do you plan to do with your

Page 32

1 Master's of Divinity I guess I should ask?

2   A   I am obtaining a Master's of Divinity

3 degree to be ordained as a United Methodist

4 minister.

5   Q   Okay.

6   A   Preaching periodically and teaching

7 periodically are also part of my duties as student

8 associate at Capitol Hill United Methodist Church.

9   Q   Okay. Are you enjoying your work now?

10   A   Yes.

11   Q   Now, are there medical expenses that you

12 will seek as damages in this lawsuit, medical bills

13 that you feel stem from the treatment you allege in

14 your complaint?

15   A   No.

16   Q   Were there any kind of emotional stresses

17 or -- any claims for emotional distress stemming

18 from the allegations in your complaint?

19   A   Yes. I suffered, yeah, extensive

20 emotional distress starting with the IG

21 investigation and then the hostility and retaliation

22 from Mr. Haddon and Mr. Gallagher. That continued

Page 33

1 for months until having to resign so as not to be

2 fired. It was a terribly emotionally stressful

3 time. I would come home and cry and was miserable,

4 and emotional disturbance/emotional distress from

5 realizing that my career at the Smithsonian was

6 gone, had been destroyed by two people deciding that

7 they didn't like my attitude and the way to adjust

8 my attitude was to go over every supervisor's head

9 and go straight to the IG.

10     It was all I'd ever wanted to do was to be

11 a marine biologist and to work for the Smithsonian.

12 I remember my parents taking me to the Natural

13 History Museum and I was walking in the Sea Life

14 Hall under the big blue whale and thinking "I want

15 to do this and I want to work here." And then in

16 1993 after graduation from college, I was there. I

17 was working at the Smithsonian and was terribly

18 proud of that and worked very, very hard at my job

19 and was recognized for my hard work by special

20 awards and acts, and then all of a sudden -- all of

21 a sudden -- my credibility had been questioned, I

22 was on the Inspector General's radar screen, I'd

9 (Pages 30 to 33)

Page 34

1 been physically threatened, I'd been threatened with
2 arrest, and Mr. Haddon was mad at me because, in his
3 words, "I wouldn't let it go." And from that place,
4 he then began reacting to me by denying leave and
5 taking away my assignments, assignments that he
6 himself had recommended me for awards for. It
7 didn't make any sense, and I was distraught by how
8 quickly it had all unraveled and come to an end, and
9 nobody was doing anything about it. Nobody and no
10 one could protect me from Kathie Suite and Carol
11 Ailes not doing it to me again.
12    Q   During this period, did you consult with a
13 psychologist or psychiatrist about the stress you
14 were feeling?
15    A   I believe at that time, I was seeing a
16 psychologist.
17    Q   Could you tell me his or her name?
18    A   Jade Chen, C-H-E-N, is her name.
19    Q   Is Miss Chen in Washington, D.C.?
20    A   She is in Greenbelt, Maryland.
21    Q   Do you know how often you were seeing her
22 and what -- well, let me first ask what period of

Page 35

1 time it would have been that you were talking to her
2 about the stress at work?
3    A   I don't remember. I had seen her on and
4 off for a period of time. I believe I was seeing
5 her once a week or so during that particular time,
6 so after December 2004, I may have been seeing her
7 before then, but then was seeing her throughout that
8 period of time and then afterwards as well to deal
9 with the emotional distress of that period of time
10 and then no longer being able to work at the
11 Smithsonian.
12    Q   Did Dr. Chen -- was she a psychologist or
13 psychiatrist?
14    A   I think she's a social worker technically,
15 but she's not a psychiatrist. She is Dr. Chen, so
16 it must be a degree -- Ph.D -- in social work, but
17 not a medical degree.
18    Q   Did she ever tell you you were -- like
19 give you a diagnoseable condition?
20    A   If she did have a diagnosis for me, she
21 did not share that with me.
22    Q   And did she ever recommend that you start

Page 36

1 taking any medication to deal with the stress that
2 you were feeling?
3    A   She was not a doctor, and so we did not
4 discuss medication.
5    Q   Okay. Did you ever start taking any kind
6 of medication to deal with the stress?
7    A   I do believe that Dr. Chen already knew
8 that I was on Celexa, which is an antidepressant.
9    Q   How long have you been on Celesta?
10 Celesta?
11    A   Celexa, C-E-L-E-X-A.
12    Q   Okay. Thank you.
13    A   That was prescribed by my
14 gastroenterologist, Dr. Trujillo, to help deal with
15 my irritable bowel syndrome, which is also
16 exacerbated by emotional stress. Clearly, that was
17 an emotionally stressful period of time that
18 contributed to my irritable bowel syndrome.
19    Q   Were there any other drugs that you may
20 have been taking in this period in 2004? And we can
21 actually refer to -- there was that list that you
22 had printed out. I think you said those were all

Page 37

1 the drugs -- let me find it so I'm not just
2 referring in a vacuum. I think it was Exhibit --
3 yeah, Exhibit 13.
4         Was the Gabitril -- I think we had talked
5 about the others except for the Gabitril and the
6 Temazepam.
7    A   Right. The Gabitril and Temazepam were
8 for the sleeping disorder that I was diagnosed with
9 during that period of time.
10    Q   When you say this period, this is all,
11 like, December of '04?
12    A   Yes.
13    Q   And did Dr. Trujillo prescribe you that
14 medication?
15    A   No. I saw a neurologist for that. I just
16 blanked on her name.
17    Q   Was it someone in D.C.?
18    A   Yes.
19    Q   Did you see the neurologist specifically
20 for the sleeping issues that you were having?
21    A   Yes.
22    Q   Did you have to start seeing him or her on

10 (Pages 34 to 37)

# EXHIBIT 2

**Philip G. Yunger**

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4 DORATHA KLUGEL,                *

 5            Plaintiff,    * Civil Action 06-01886

 6 vs.                            *

 7 CHRISTIAN SAMPER, et al,  *

 8            Defendants.   * Pages 1 - 45

 9

10

11                                   COPY

12

13          Deposition of Philip G. Yunger

14               Washington, D.C.

15           Thursday, May 8, 2008

16

17

18

19

20

21 Reported by:  Carla J. Briggs, RPR-RMR-CRR

22 Job No. 187245b
```

**Philip G. Yunger**

Page 34

```
1       A    No.

2       Q    Did you notice any changes in how

3  Miss Klugel was behaving at home?

4       A    Did you not --

5            MR. BYRNES:  Objection; asked and

6  answered.

7       Q    Well, I understand what you said, that she

8  was coming home crying.  I want to know is this

9  different from how she was acting before, before the

10 investigation, how was your interaction so I can

11 compare it to what you've said now happened after

12 the questioning.  Do you understand?

13      A    I understand.

14      Q    Okay.

15      A    I mean, we have a perfectly happy

16 existence together and we're very much in love with

17 each other.  That's why I asked her to marry me 38

18 times.  When this stuff started to happen, it almost

19 destroyed our relationship because of how upset she

20 was about this.  These folks basically called her a

21 whore and destroyed her career as a marine

22 biologist, and so I sought counsel because that's
```

**Philip G. Yunger**

1 just not the right thing to do.

2     Q     Did you and Miss Klugel have to attend any

3 relationship counseling during this period?

4     A     Not -- we did have counseling on several

5 occasions with her therapist just to keep things on

6 an even keel.

7     Q     Did Miss Klugel ever tell you during this

8 period that she was considering leaving her job?

9     A     Yes.

10     Q     When do you first remember her telling you

11 that?

12          THE WITNESS:  When did I hire you?

13          MR. BYRNES:  You can't really ask me

14 questions.

15          THE WITNESS:  Okay.

16     A     It got so bad at work -- I mean, this is a

17 person who, if you look at her evaluations from the

18 Smithsonian, has excellent evaluations for the seven

19 years she worked there.  All of a sudden, somebody

20 gets a bug up their ass and starts to torture her

21 this way, and she asked me if she could quit.  She

22 asked me should I -- you know, did I think it was

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DOROTHA KLUGEL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1886 (HHK) |
| **CRISTIAN SAMPER, et al.,** ) | |
| Acting Secretary, Smithsonian ) | |
| Institution, ) | |
| ) | |
| Defendants. ) | |

|  |  |
|---|---|
| **PROPOUNDING PARTY:** | **Defendants THE UNITED STATES OF AMERICA & CRISTIAN SAMPER** |
| **RESPONDING PARTY:** | **Plaintiff DOROTHA KLUGEL** |
| **SET NUMBER:** | **ONE** |

## DEFENDANT'S REQUEST TO PLAINTIFF FOR PRODUCTION OF DOCUMENTS

TO:   Dorotha Klugel
c/o Kevin Brynes, Esq.
Grad, Logan & Klewans, P.C.
3141 Fairview Park Drive
Suite 350
Falls Church, VA 22042

Consistent with Rule 34, Federal Rules of Civil Procedure, you are hereby requested to answer, and provide documents within 30 days, the following Requests for Production of Documents.  Please serve your response on defendants' counsel, Michelle N. Johnson, Assistant United States Attorney, 555 Fourth Street, N.W., Room E4212, Washington, D.C. 20001.

## DEFINITIONS AND INSTRUCTIONS

The definitions and instructions set forth in Defendants' First Set of Interrogatories to Plaintiff are hereby incorporated by reference and made applicable to the following requests for production of documents.

Please organize and label all documents submitted in a manner which clearly indicates the particular request to which each document is responsive.

## REQUESTS

1.    Please produce each and every document identified in your response to Defendants' First Set of Interrogatories and label them to indicate the interrogatory or interrogatories to which the documents relate.

2.    Please produce each and every document prepared by you which relates or refers to the incidents, conduct or work environment giving rise to your claims, including, but not limited to any and all handwritten or typed notes, diaries, logs, letters, memoranda and other documents, regardless of when such documents were prepared.

3.    Please produce each and every document provided to each person who is acting or has acted as a consultant, treating physician, treating health care provider, or expert on your behalf regarding the claims upon which this action is based, or who will testify as an expert at trial.

4.    Please produce any and all documents you intend to use as exhibits at the trial in this matter.

2

5.     Please produce each and every document that substantiates the allegations contained in the Complaint and indicate to which paragraph in the Complaint the documents relate.

6.     Please produce each and every document relevant to any claim raised in your Complaint that has not been produced in response to Requests Nos. 1 through 5, above.

7.     Please produce copies of any and all written statements, and transcripts of recorded statements, identified in your Answer to Interrogatory No. 5.

8.     Please produce any and all documents which support your claim for damages, including but not limited to records that support your Answer to Interrogatory No. 19.

9.     Please provide copies of any documents evidencing any treatment you have received for any physical and emotional pain, embarrassment, humiliation, mental anguish, anxiety, and/or depression.

10.     Please produce copies of your resume as it appeared from January 1, 2004 until the present.

11.     Please produce a copy of the current job position description relating to any position you currently hold.

12.     Please produce a copy of any employment application(s) or letters in which you expressed an interest in employment that you have sent to any prospective employers since 2003.

13.    Please provide copies of your Federal income tax returns for the years 2004-present.

14.    Please provide copies of any curriculum vitae from any experts you have retained or consulted with regarding the claims in your complaint.

15.    Please sign the enclosed medical release authorization form and return it to counsel for defendant.


DATED: this __28th__ day of February, 2008.


Respectfully submitted,

_Jeffrey Taylor (fmj)_
JEFFREY TAYLOR, D.C. Bar #498610
United States Attorney

_Rudolph Contreras (fmj)_
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_Michelle N. J._
MICHELLE N. JOHNSON, D.C. Bar #491910
Assistant United States Attorney
555 Fourth Street N.W., Rm E4212
Washington, D.C.  20530
(202) 514-7139

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **28th** day of February, 2008, a true and correct copy of

the above and foregoing Defendant's Request for Production of Documents to Plaintiff

were served by first-class mail to:


     Kevin Brynes, Esq.
     Grad, Logan & Klewans, P.C.
     3141 Fairview Park Drive
     Suite 350
     Falls Church, VA 22042



                              MICHELLE N. JOHNSON
                              Assistant United States Attorney

| TO: | PATIENT: | RELEASE TO: |
|---|---|---|
| | Name: Doratha Klugel | Michelle Johnson<br>Assistant U.S. Attorney<br>U.S. Attorney's Office, |
| | Birth Date: | 555 4th Street, N.W., rm. 10911 |
| | SSN: | Washington, DC 20530 |

**INFORMATION REQUESTED:** I request and authorize the above-named person or class of persons to release the information specified below to representatives of the United States Attorney's Office or the Department of Justice.

**Any and all documents**, whether in electronic or other format, regarding the treatment of Dorotha Klugel, including but not limited to:

1. Copy of complete chart, progress notes & interview notes, intake form, discharge summaries, operative reports, x-ray & all imagery, laboratory tests, pathology tissue, and all diagnostic studies.

2. Billing records

**PURPOSE(S) OR NEED FOR WHICH INFORMATION IS TO BE USED:**

Klugel v. Samper, Civ. No. 06-1886 (HHK) (D.D.C.) is an ongoing litigation. This information is part of the discovery process. Documents received with be designated as "Confidential Medical" and will be subject to the provisions of the Court's Stipulated Protective Order.

**CERTIFICATION:** I certify that this request has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this Authorization at any time, provided that revocation is in writing, except to the extent that action has already been taken in reliance this Authorization. I understand that the doctor, health care provider, or health plan from whom my medical information is requested in this authorization, may not condition treatment, payment, enrollment or eligibility for benefits on whether I sign this authorization. I understand the potential for the information disclosed pursuant to this Authorization to be subject to redisclosure by the recipient and no longer be protected by the Standards for Privacy of Individually Identifiable Health Information, set forth at 45 CFR Parts 160 and 164.

**EXPIRATION:** Check one:

__X__ This Authorization will automatically expire upon completion of <u>Klugel v. Samper</u>, Civ. No. 06-1886 (HHK) (D.D.C.) now pending in U.S. District Court for the District of Columbia, including the exhaustion of all appeals.

__ This Authorization will automatically expire upon completion of the administrative claim of _____ filed on _____.

__ This Authorization shall be effective until _____.

**OTHER CONDITIONS:**

__X__ A copy of this Authorization or my signature thereon shall be used with the same effectiveness as an original.

__ Communications between provider and any representative of the U.S. Attorney's Office / Department of Justice are authorized.

_____

**SIGNATURE OF PATIENT:**_____

**OR PERSON AUTHORIZED\* TO SIGN FOR PATIENT:**_____

_____         _____
MONTH/DAY/YEAR                    PRINT OR TYPE NAME

\*Provide basis of Authorization: <u>Attorney of Record for Doratha Klugel</u>

<u>**AUTHORIZATION TO RELEASE MEDICAL INFORMATION, PAGE 2 OF 2**</u>

EXHIBIT 4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DORATHA KLUGEL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1886 (HHK)** |
| | ) | |
| **CHRISTIAN SAMPER, Acting Secretary,** | ) | |
| **Smithsonian Institution,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **The UNITED STATES OF AMERICA,** | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUEST
### FOR PRODUCTION OF DOCUMENTS

COMES NOW the Plaintiff, Doratha Klugel, and hereby responds to the

Defendants' Request for Production of Documents as follows:

### RESPONSES TO DOCUMENT REQUESTS

<u>Response to Production Request No. 1</u>:        Ms. Klugel does not possess any

documents other than those documents provided to her in the Agency's investigation or

which involve electronic mail communications by and between Ms. Klugel and members

of the Agency, to which the Agency already has access as legal custodian. Ms. Klugel

presumes the Agency has the report of investigation and all of its own records.

Nevertheless, she is turning over certain documents related to her travel which she has in

her possession.

Chronology and other materials produced for counsel are privileged and,

thus, are subject to the attorney client privilege.

Without waiving the above, Ms. Klugel is producing certain emails between her and her supervisor.

Response to Production Request No. 2:    See Plaintiff's response to Interrogatory No. 1.

Response to Production Request No. 3:    Objection, Ms. Klugel is not claiming any medically related damages, and has brought her claim because the Agency perceived her as disabled. All medical records bearing on any leave request or injury that occurred while Ms. Klugel was employed are already in the Agency's possession. Additionally, expert disclosures are governed by the court's scheduling order; and at this time, Plaintiff has not identified or retained an expert.

Response to Production Request No. 4:    Exhibits will be produced pursuant to the Court's scheduling order and the rules of Court.

Response to Production Request No. 5:    Objection. Plaintiff is not required to provide Defendants with her order of proof nor arrange evidence for Defendant to peruse. The request invades Plaintiff's trial strategy. Defendants are entitled to responsive documents, not to have them tabbed so as to correspond to allegations raised in the Complaint. The request is also overbroad, burdensome and oppressive.

Response to Production Request No. 6:    The request is unintelligible and is phrased in the negative.

Response to Production Request No. 7:    See Response to Production Request No. 1.

Response to Production Request No. 8:    These records are publicly available and in the possession of the Agency. Plaintiff is claiming back pay, front pay, pain and

suffering, reputational damages and attorney fees. Pain and suffering and reputational damages can be determined by the trier of fact, based on Plaintiff's testimony alone.

Response to Production Request No. 9:    Objection. It is the Defendants who claimed Plaintiff had a mental illness, not Plaintiff. Thus, any such documents are not relevant. Without waiving said objection, Plaintiff has no responsive documents.

Response to Production Request No. 10:    Objection. The request is not calculated to lead to admissible evidence, not is it relevant to any issue in Plaintiff's Complaint or Defendants' Answer. Additionally, the request is vague and subject to multiple meanings.

Response to Production Request No. 11:    Plaintiff will produce such a document if it exists.

Response to Production Request No. 12:    Plaintiff will produce records to the extent she has retained them.

Response to Production Request No. 13:    Objection. Defendants are entitled to know only Plaintiff's wages from any subsequent employee and are not entitled to Plaintiff's tax returns. If Defendants will limit their request to a request for documents evidencing Plaintiff's yearly salary, Plaintiff will comply with that request.

Response to Production Request No. 14:    Plaintiff has not yet identified any experts.  If Plaintiff selects experts, that will be disclosed in accordance with the Court's scheduling order and the rules of Court.

Response to Production Request No. 15:    Objection. Defendants may not use a production demand to create a document, nor are Defendants entitled through discovery to force Plaintiff to sign any form of release. A production demand may be used only to

obtain existing records; and it is improper to seek to have Plaintiff waive legal rights.

Plaintiff will not surrender her medical records without the Defendants establishing a

nexus between any specific treatment and the claims or defenses in this case and, if that is

established, agreeing to a protective order concerning the use, dissemination and

retention of such records.

If the Defendant will provide a justification for seeking a release, legal

authority supporting that position and then agree to a protective order, Plaintiff will

reconsider this objection.

Respectfully submitted

DORATHA KLUGEL
*Plaintiff by Counsel*

GRAD, LOGAN and KLEWANS, P.C.

Kevin Byrnes, DC Bar #480195
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone: 703-548-8400
Direct Line: 703-535-5393
Facsimile: 703-836-6289
Email: kbyrnes@glklawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of March, 2008, a true copy of the foregoing
Plaintiff's Response to Defendants' Request for Production of Documents was delivered
via U.S. Mail to the Defendant, as follows:

Michelle Nicole Johnson
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, NW
Room E-4212
Washington, DC 20530
(202) 514-7139
(202) 514-8780 (fax)

_____
Counsel

EXHIBIT 5



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center
555 Fourth St., N.W.
Washington, D.C. 20530*

April 9, 2008

VIA U.S. & ELECTRONIC MAIL

Mr. Kevin Byrnes
Grad, Logan & Klewans, P.C.
3141 Fairview Drive, Suite 350
Falls Church, VA 22042

Dear Mr. Byrnes:

I write in response to plaintiff's responses to defendants' first set of interrogatories and request for production of documents. As will be further discussed below, plaintiff's responses are deficient and must be remedied. Failure to remedy each of the deficiencies identified below may result in defendants filing an appropriate motion to compel with the Court.

### Plaintiff's Responses to Defendants' First Set of Interrogatories

Interrogatory No. 3:   This interrogatory sought the name and title of each and every person who plaintiff contends allegedly discriminated against her. Plaintiff does not identify any one person; rather she refers generally to the persons identified by both plaintiff and defendants in their initial disclosures and her complaint. This is not sufficient. Defendants are unwilling, and not required, to guess as to whom *plaintiff* believes discriminated against her. Therefore please respond to this interrogatory by indicating the name and title of each employee plaintiff contends discriminated against her.

Interrogatory No. 4:   Plaintiff also fails to respond to this interrogatory. This request specifically requires plaintiff to "describe in detail" the alleged discriminatory actions she contends were taken against her. It is insufficient for plaintiff, when responding to a contention interrogatory, to refer to other documents generally. See, e.g., Williams v. Johanns, 235 F.R.D. 116, 123 (D.D.C. 2006) (holding that "noting the existence of a file is obviously not a sufficient answer" to defendants' request for "legal or factual support for particular, well-defined contentions."); Byrd v. Reno, No. Civ.A. 96-2375, 1998 WL 429676, at *16 (D.D.C. Feb. 12,

1998) (holding that party that referred generally to deposition testimony would be required to designate the pages in the testimony where the topic was discussed). Plaintiff is required to set forth the actions she believes supports her claims and cannot refer generally to documents that have been filed/served previously.

Interrogatory No. 6:    Plaintiff fails to give any substantive response to this interrogatory, which sought the identification of documents referring to/relating to the allegations raised in the complaint. Rather, plaintiff contends that she "relies on documents provided to her or her counsel by the agency." This is not sufficient. Furthermore, to the extent that you object to this interrogatory on attorney-client and work product grounds, you have failed to provide a privilege log as required by the federal rules. See Fed. R. Civ. P. 26(b)(5); see also Williams v. Johanns, 235 F.R.D. 116, 124 (D.D.C. 2006).

Interrogatory No. 7:    This interrogatory required plaintiff to detail all the facts upon which she relies in support of her claim that she is disabled. In response, plaintiff contends that she "has never claimed she is disabled; Plaintiff contends the Agency claimed she was disabled." However, this assertion is belied by plaintiff's complaint wherein she asserts that "she suffers from a recognized disability (anxiety) . . . ." Compl. ¶ 36. If plaintiff in fact no longer contends that she suffers from a recognized disability she must state so in unequivocal terms.

Interrogatory No. 8:    This interrogatory simply asks plaintiff to identify the major life activities that *she contends* are limited by the two alleged disabilities she identified in response to interrogatory no. 7 – irritable bowel syndrome and ideopathic hypersonomia. In responding to this request, plaintiff refers to her answer to request no. 7. However, that answer provides no description of the major life activities *plaintiff contends* are "significantly limited" by her alleged disabilities. Plaintiff's statement that ideopathic hypersonomia is a "form of sleep interference" does nothing to inform defendants if plaintiff contends that she suffers significant limitations in her ability to sleep. And there is no description of any major life activity that plaintiff contends is affected by her irritable bowel syndrome. Plaintiff must provide this information.

Interrogatory No. 14:    This request required plaintiff to "describe in detail" those facts in support of her contention that there was a campaign of harassment and reprisal against plaintiff, allegedly causing her to resign. In response, plaintiff refers generally to the complaint, the pleadings, the administrative file and her prior affidavit and contends that the "acts listed above and in the pleadings and administrative file support a conclusion that the purpose of the investigation was to force Ms. Klugel to leave the Agency." Obviously, this response is insufficient. See, e.g., Williams, 235 F.R.D. at 123 (holding that "noting the existence of a file is obviously not a sufficient answer" to defendants' request for "legal or factual support for particular, well-defined contentions."); Byrd v. Reno, No. Civ.A. 96-2375, 1998 WL 429676, at *16 (D.D.C. Feb.. 12, 1998) (holding that party that referred generally to deposition testimony would be required to designate the pages in the testimony where the topic was discussed). Please supplement this response to provide the specific facts upon which plaintiff relies in support of paragraph 33 of her complaint.

<u>Interrogatory No. 16</u>: Plaintiff's response to this interrogatory suffers from the same deficiencies as plaintiff's response to Request No. 14. This request sought all the facts that plaintiff contends supports paragraph 47 of the complaint. In responding, plaintiff contends "[t]he facts supporting this issue have already been litigated in the various summary judgment motions and are set forth in detail in the pleadings, the administrative file, Ms. Klugel's affidavit and the answers provided above." Again, pointing to plaintiff's responses to other discovery requests, and dispositive motions filed in this case, is no substitute for plaintiff's identification of the specific facts that she contends support her claims. Defendants are entitled to this information and should not have to surmise from the various documents referred to by plaintiff which allegations *she believes* support her claims.

<u>Interrogatory No. 18</u>: Plaintiff fails to provide any response to this interrogatories, which seeks information concerning any medical treatment plaintiff has received since 2002. Plaintiff contends that this information need not be provided because she is not "claiming any medical expenses as damages other than pain and suffering." However, this response is clearly belied by reference to plaintiff's complaint wherein she claims that she seeks "medical expenses and other losses . . . ." Compl. at 11. Furthermore, plaintiff's response to this interrogatory further shows why the information being sought is relevant. Obviously if plaintiff has suffered from medical/mental conditions that could have contributed to any alleged mental pain and suffering she claims arose from the facts alleged in the complaint, defendants are entitled to this information as such evidence could lessen the amount of damages plaintiff would be entitled to recover, should she prevail. <u>See Roberson v. Bair</u>, 242 F.R.D. 130, 137 (D.D.C. 2007) ("A defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to a plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so.") (citation omitted). Plaintiff must therefore provide a full response to interrogatory no. 18. In addition, defendants require this information so they may determine whether to seek an independent medical examination of the plaintiff. Therefore, promptly supplement your response to this request.

### <u>Plaintiff's Responses to Defendants' Requests for Production of Documents</u>

<u>Request No. 1</u>:        This request required plaintiff to produce every document identified in her responses to defendant's first set of interrogatories and to indicate the interrogatory(ies) to which the documents relate. While plaintiff has produced documents, there is no indication which documents relate to which interrogatories. Furthermore, to the extent that plaintiff asserts that "chronology and other materials produced for counsel are privileged and, thus, subject to the attorney client privilege[,]" plaintiff has wholly failed to produce a privilege log substantiating that claim. Furthermore, the fact that the agency has access to documents does not alleviate the necessity of plaintiff producing the precise documents identified in her interrogatories. Plaintiff's response is therefore obviously inadequate, and as there were *no* objections lodged in this responding to this request, plaintiff is without any basis for refusing to produce the relevant documents.

Request No. 3:    This request sought documents provided to plaintiff's consultants, treating physicians, treating health care provider, or expert. In response, plaintiff contends that she "is not claiming any medically related damages . . . ." Yet this fact is belied by plaintiff's complaint wherein she seeks compensatory damages for, "pain and suffering, [and] medical expenses . . . [,]" as well as plaintiff's interrogatory response wherein she indicates that she is claiming damages for "pain and suffering." (See Response to Interrogatory No. 19). Therefore, absent plaintiff withdrawing her claim for any and all damages for pain and suffering and medical expenses, such documents are relevant to this action. See Roberson, 242 F.R.D. at 136 (ordering the plaintiff to produce medical records in her possession and to sign an authorization for her doctors to release medical information where plaintiff failed to meet "her burden of demonstrating that the medical records are not relevant or that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

Request No. 5:    This request seeks each document that plaintiff believes substantiates the allegations in the complaint and to indicate which allegation to which each document relates. Plaintiff has objected that this request is "overbroad, burdensome and oppressive" and contends that it invades her "trial strategy." Plaintiff's objections are without merit. Furthermore, to the extent that plaintiff has failed to produce *any* documents responsive to this request, which are clearly relevant, even absent identifying the particular paragraphs of the complaint to which they refer, plaintiff has a duty to supplement her response.

Request No. 6:    This request asked for plaintiff to produce "each and every document relevant to any claim raised in your Complaint that has not been produced in response to Request Nos. 1 through 5, above." In response, plaintiff contends that "[t]he request is unintelligible and is phrased in the negative." These are not valid objections. Clearly this request seeks, in plain and common sense language, those documents that are relevant to the claims made in the complaint that had not been previously produced in response to requests 1 through 5. Plaintiff's refusal to respond substantively to this request is obstructionist and without any legitimate basis.

Request No. 8:    This request seeks "any and all documents which support your claim for damages, including but not limited to records that support your Answer to Interrogatory No. 19." In response, plaintiff contends that the records are "publicly available and in the possession of the Agency." However, it is not apparent how the agency is in possession of evidence of the alleged "medical expenses" plaintiff contends in her complaint she is seeking. Plaintiff contends that "[p]ain and suffering and reputational damages can be determined by the trier of fact, based on Plaintiff's testimony alone." This statement is simply inaccurate, notably where there is documentary evidence demonstrating, for example, that there were multiple causes of any alleged pain and suffering and/or reputational injuries. See Roberson, 242 F.R.D. at 137 ("A defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to a plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so.") (citation omitted). Therefore, plaintiff must

supplement her response to this request.

Request No. 10:    This request sought copies of plaintiff's resume "as it appeared" from January 1, 2004 to the present. In response, plaintiff contends that this request is "not calculated to lead to admissible evidence, is not relevant to any issue in Plaintiff's Complaint or Defendant's Answer. Additionally, the request is vague and subject to multiple meanings." Plaintiff's alleged objections are without merit. Clearly, defendants are entitled to view plaintiff's resume where, as here, she is claiming that she suffered lost wages and benefits as it relates to her attempts to mitigate her damages.

Request No. 13:    This request sought copies of plaintiff's tax returns for the years 2004-present. Clearly this information is relevant in this case as plaintiff seeks

> all earnings, compensation and benefits [s]he would have received
> but for the [d]efendant's discriminatory and otherwise wrongful actions,
> including, but not limited to, wages, supplements, bonuses, sales commissions,
> pension, severance benefits, benefits that would have otherwise been included in
> [p]laintiff's pension plan(s), medical insurance, medical leave and persona[l]
> leave, insurance policies, and other lost benefits[.]

Compl. at 10. Defendants are not limited, as plaintiff suggests, to merely obtaining "documents evidencing plaintiff's yearly salary." They are entitled to evidence demonstrating how much compensation plaintiff was earning for the years that she contends she is entitled to the panoply of damages set forth above. See, e.g., Houlihan v. Anderson-Stokes, Inc., 78 F.R.D. 232, 234 (D.D.C. 1978) (ordering plaintiffs to produce tax returns where the tax returns contained "information that *may be relevant* to the subject matter of th[e] litigation . . . .").

Request No. 15:    This request required plaintiff to sign enclosed medical releases permitting defendants to obtain relevant medical information directly from plaintiff's physicians. Plaintiff has objected that defendants "may not use a production demand to create a document, nor are [d]efendants entitled through discovery to force [p]laintiff to sign any form of release." Plaintiff's objections are not legally sound. Courts in this district have recognized the relevance of medical information where, in a case such as this, the plaintiff has alleged pain and suffering, and have ordered plaintiffs to sign a medical release authorizing her physicians to release relevant medical information. See, e.g., Roberson, 242 F.R.D. at 136 (ordering the plaintiff to produce medical records in her possession and to sign an authorization for her doctors to release medical information where plaintiff failed to meet "her burden of demonstrating that the medical records are not relevant or that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."). Furthermore, courts have recognized that such records are relevant where a plaintiff is seeking damages for emotional distress allegedly caused by discrimination. See, e.g., Moore v. Chertoff, No. Civ.A. 00-953, 2006 WL 1442447, at *3 (D.D.C. May 22, 2006) (holding that plaintiffs had to produce medical records because "[r]eview of plaintiff's medical records could lead to the discovery of facts not related to

employment discrimination that contributed to plaintiff's alleged injuries . . . Plaintiffs may not withhold from the defendant as irrelevant medical records that could be probative of potential causes contributing to plaintiffs' alleged injuries."). Given that the clear weight of authority weighs in favor of defendants obtaining this information, defendants again request that plaintiff sign the provided medical authorizations.

Finally, I note that in response to Requests Nos. 11 and 12 you indicate that plaintiff "will" produce certain documents if they exist/have been retained. However, plaintiff's response to defendants' request for the production of documents was due thirty days after service of the request. Therefore, if there are any further documents responsive to these requests that have not been produced, please produce them immediately.

Sincerely,

JEFFREY A. TAYLOR
United States Attorney

By:  MICHELLE N. JOHNSON
Assistant United States Attorney

cc:  Christine Nicholson
     Epin Christensen

Page 6 of 6

# EXHIBIT 6

**Johnson, Michelle (USADC)**

| | |
|---|---|
| **From:** | Johnson, Michelle (USADC) |
| **Sent:** | Friday, June 06, 2008 3:34 PM |
| **To:** | 'Kevin Byrnes' |
| **Subject:** | RE: Letter mailed to you this evening |

Thanks Kevin. Have a good weekend.

Michelle

**From:** Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
**Sent:** Friday, June 06, 2008 2:50 PM
**To:** Johnson, Michelle (USADC)
**Subject:** RE: Letter mailed to you this evening

I will have Dottie come in on Monday and hope to get you everything then.

Sincerely,

Kevin Byrnes
Grad, Logan & Klewans
3141 Fairview Park Drive
Falls Church, VA 22042
Direct (703) 535-5393
Fax (703) 836-6289

**From:** Johnson, Michelle (USADC) [mailto:Michelle.Johnson@usdoj.gov]
**Sent:** Tuesday, June 03, 2008 6:52 PM
**To:** Kevin Byrnes
**Cc:** echristensen@oig.si.edu; Nicholson, Chris
**Subject:** Letter mailed to you this evening

<<6-3-08 ltr.pdf>>

Michelle N. Johnson

Assistant United States Attorney

for the District of Columbia

555 4th Street, NW

Room E4212

Washington, DC 20001

Telephone: 202-514-7139

Fax: 202-514-8780

1

EXHIBIT 7

**Johnson, Michelle (USADC)**

| | |
|---|---|
| **From:** | Johnson, Michelle (USADC) |
| **Sent:** | Tuesday, June 17, 2008 11:00 AM |
| **To:** | 'kbyrnes@glklawyers.com' |
| **Subject:** | RE: |

Kevin:  I really appreciate your concern.  It is very hard seeing my mom sick but hopefully the treatment the doctors are proposing will buy her some relief.

I thought we had reached an agreement regarding Ms. Klugel providing the medical release.  I don't have a concern regarding the doctor not giving my request priority attention because I can subpoena the records and require the doctors to comply timely.  As we have discussed, defendant's position is that we are entitled to receive the release so defendant can receive the records directly from the doctor as opposed to relying on Ms. Klugel to provide the records.  Although I understood you previously to agree to provide the release, if we now disagree on this point I recommend we raise the dispute with the Court.

Thanks,
Michelle

-----Original Message-----
From: kbyrnes@glklawyers.com [mailto:kbyrnes@glklawyers.com]
Sent: Tuesday, June 17, 2008 9:49 AM
To: Johnson, Michelle (USADC)
Subject: Re:

I think she plans to give me the records and I will then give them to you frankly this is faster doctors give low priority to record production

-----Original Message-----
From: "Johnson, Michelle \(USADC\)" <Michelle.Johnson@usdoj.gov>

Date: Tue, 17 Jun 2008 09:28:24
To:"Kevin Byrnes" <kbyrnes@glklawyers.com>
Subject: RE:

Thanks Kevin.  It's very hard dealing with the illness of a parent, but unfortunately it's something we all probably experience.

BTW, is Ms. Klugel going to sign the medical release?  I understand she's pulling together what she has but how do I ensure I receive everything the doctor has?

Thanks,
Michelle

From: Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
Sent: Monday, June 16, 2008 5:04 PM
To: Johnson, Michelle (USADC)

1

Subject: RE:

I hope you are doing well.


Sincerely,

Kevin Byrnes
Grad, Logan & Klewans
3141 Fairview Park Drive
Falls Church, VA 22042
Direct (703) 535-5393
Fax  (703) 836-6289


----------------

From: Johnson, Michelle (USADC) [mailto:Michelle.Johnson@usdoj.gov]
 Sent: Monday, June 16, 2008 5:00 PM
 To: Kevin Byrnes
 Subject: RE:

Thanks Kevin.  I appreciate your consent re: defendant's enlargement of time.

I'm attaching errata sheets that I've forwarded to Anderson.

Thanks,
Michelle




From: Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
 Sent: Thursday, June 12, 2008 10:58 AM
 To: Johnson, Michelle (USADC)
 Subject:

Dottie is pulling together her tax returns and any remaining medical records. I want to look
at the records and make sure they are related to the issues in the suit and I hope to forward
everything to you by early next week. Thanks for your patience

Sincerely,

Kevin Byrnes
Grad, Logan & Klewans
3141 Fairview Park Drive
Falls Church, VA 22042
Direct (703) 535-5393
Fax  (703) 836-6289

# EXHIBIT 8

LAW OFFICES

## GRAD, LOGAN & KLEWANS, P.C.

SUITE 350

3141 FAIRVIEW PARK DRIVE

FALLS CHURCH, VIRGINIA 22042

TELEPHONE

(703) 548-8400

FACSIMILE

(703) 836-6289

E-MAIL

glklawyers@glklawyers.com

WEBSITE

WWW.GLKLAWYERS.COM

June 23, 2008

**Via U.S. Mail**

Ms. Michelle N. Johnson

Asst. U.S. Attorney

United States Attorney's Office

Civil Division

555 4th Street, N.W., Room E4212

Washington, DC 20530

Re: Doratha Klugel

Dear Ms. Johnson:

Enclosed please find a copy of the medical records you requested and my client's tax returns. We have turned over to you all the documents provided us in their unredacted form. All of these materials are, of course, subject to the protective order we submitted and which the parties have entered. The material contained in these documents is highly sensitive in nature. It should be shared only by and between counsel and not with Agency witnesses.

We trust this addresses all remaining discovery matters.

Sincerely,

Kevin Byrnes

Enclosures

KB/sp

cc: Doratha Klugel

EXHIBIT 9



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

June 30, 2008

Mr. Kevin Byrnes
Grad, Logan & Klewans, P.C.
3141 Fairview Park Drive
Suite 350
Falls Church, VA 22042

VIA FACSIMILE (703-836-6289) & U.S. MAIL

  Re: Klugel v. Samper, Civil Action No. 06-1886

Dear Mr. Byrnes:

   I am in receipt of your letter dated June 23, 2008, enclosing supplemental discovery from plaintiff. This production does not satisfy defendant's discovery concerns.

   First, while you have produced some medical records regarding treatment received by your client, noticeably absent from your production are any records from Dr. Chen, or any other psychologist, that your client saw for treatment during the relevant time period. As you are undoubtedly aware, Mrs. Klugel has testified that she suffered "extensive emotional distress" as a result of the actions complained of in the complaint. As a result, defendant has the right to obtain medical releases to obtain the medical records that substantiate these claims, as well as information that may detract from these claims. See Roberson v. Bair, 242 F.R.D. 130, 136 (D.D.C. 2007) (ordering the plaintiff to produce medical records in her possession and to sign an authorization for her doctors to release medical information where plaintiff failed to meet "her burden of demonstrating that the medical records are not relevant or that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."). During our most recent meet and confer conversation on June 5, 2008, we discussed defendant's request for Mrs. Klugel to sign the medical releases at length and I believed we were in agreement that Mrs. Klugel would sign those releases. Furthermore, I have emailed you several times in the past two weeks to request that the medical releases, not just the medical records in Ms. Klugel's possession, be produced. Because plaintiff has continued in her

Page 1 of 2

refusal to provide signed medical releases, at this juncture defendant intends to seek relief from the Court. I will be calling you today to arrange a joint call to chambers to raise this issue with the Judge's law clerk, as is required by Judge Kennedy's scheduling order.

Second, during our conversation on June 5, 2008, you indicated you would supplement interrogatory numbers 3, 4, and 14. No supplementation has been provided. Please inform me immediately if plaintiff will supplement these interrogatories or whether defendant will need to seek relief from the Court concerning this matter as well.

Sincerely,

JEFFREY A. TAYLOR
United States Attorney

By: _____

MICHELLE N. JOHNSON
Assistant United States Attorney

cc:     Christine Nicholson
        Epin Christensen

EXHIBIT 10

**Johnson, Michelle (USADC)**

| | |
|---|---|
| **From:** | Johnson, Michelle (USADC) |
| **Sent:** | Monday, July 07, 2008 3:41 PM |
| **To:** | 'Kevin Byrnes' |
| **Subject:** | RE: Klugel/Call with Court |

Yes, the clerk told me that if we are not available tomorrow then defendant should just go ahead and file its motion. So I will do that this week.

Thanks,
Michelle

**From:** Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
**Sent:** Monday, July 07, 2008 2:56 PM
**To:** Johnson, Michelle (USADC)
**Subject:** RE: Klugel/Call with Court

I will be in a prepaid CLE ethics class tomorrow. I can not attend a session at this time. The Court informed me that if I could not attend we would need to send written pleadings. I am available all day Wednesday.
Sincerely,

Kevin Byrnes
Grad, Logan & Klewans
3141 Fairview Park Drive
Falls Church, VA 22042
Direct (703) 535-5393
Fax  (703) 836-6289

**From:** Johnson, Michelle (USADC) [mailto:Michelle.Johnson@usdoj.gov]
**Sent:** Monday, July 07, 2008 2:44 PM
**To:** Kevin Byrnes
**Subject:** Klugel/Call with Court

Mr. Byrnes:  The judge's law clerk called to inform me that Judge Kennedy is available for a call with the parties to discuss the parties' discovery dispute tomorrow between the hours of 11-1.  The clerk indicated he would also be calling you.  Please indicate whether you are available during that time and I will let the clerk know we will be calling chambers.

Thank you,

Michelle N. Johnson

Assistant United States Attorney

for the District of Columbia

555 4th Street, NW

Room E4212

Washington, DC 20001

Telephone:  202-514-7139

Fax:  202-514-8780